Case Nos. 24−1427 and 24–1426

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

Aida Elzagally, Abdulhameed Al-Harramah, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli, *Plaintiffs/Appellants*

v.

Khalifa Hifter, *Appellee*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA, ALEXANDRIA DIVISION NO. 1:19-cv-00853-LMB-JFA

**CORRECTED JOINT APPENDIX**

Asim AR Ghafoor
Law Office of Asim Ghafoor
23645 Rock Haven Way
Suite 100
Dulles, VA 20166
(202) 330-1469
asim@glawoffice.com
*Attorney for Appellants*
*Elzagally, et al.*

Robert H. Cox
Madison A. Beatty
James W. Hundley
Briglia Hundley, P.C.
1921 Gallows Road, Suite 750
Tysons Corner, VA 22182
rcox@brigliahundley.com
mbeatty@brigliahundley.com
jhundley@brigliahundley.com
*Attorneys for Appellee*
*Khalifa Hifter*

Corrected Joint Appendix
Consolidated Appeals 24−1427, 24–1426
Aida Elzagally, et al., *Appellants* v. Khalifa Hifter, *Appellee*

District Court Docket Reports as of July 5, 2024............................................. JA001

Amended Complaint dated July 9, 2021 (ECF No. 69) .................................. JA076

Hifter Motion to Dismiss dated August 20, 2020 (ECF No. 32) ................... JA086

Hifter Amended Answer dated July 11, 2021 (ECF No. 71).......................... JA088

Proposed Joint Discovery Plan by Khalifa Hifter dated
March 10, 2021 (ECF No. 57) …………………………………………....... JA098

Transcript of Motions Hearing dated September 13, 2021 (ECF No. 85)...... JA105

Joint Motion to Consolidate Cases dated October 22, 2021 (ECF No. 117…JA131

District Court Order to Consolidate Cases dated October 22, 2021 (ECF No.
118)………………………………………………………………………..JA136

Proposed Findings of Facts and Recommendations dated June 10, 2022 (ECF No.
149)………………………………………………………..……............... JA138

District Court Order dated October 14, 2022, holding Defendant's Motion to Set
Aside Default Judgment in abeyance until Defendant appeared for a deposition
(ECF No. 175)……………………………………………………..……JA157

District Court Order dated September 8, 2023 (ECF No. 227)……………..JA158

Virginia property …………………….............................................................. JA181

Motion for Summary Judgment by Khalifa Hifter dated
February 23, 2024 (ECF No. 244) …………………………………............. JA159

Exhibit A to Defendant's Memorandum of Law in Support of His Motion for Summary Judgment (ECF No. 245-1)……………………..……….…..JA194

Exhibit B to Defendant's Memorandum of Law in Support of His Motion for Summary Judgment (ECF No. 245-2)………………………………………JA195

Exhibit C to Defendant's Memorandum of Law in Support of His Motion for Summary Judgment (ECF No. 245-3)…………………………….………JA196

Exhibit D to Defendant's Memorandum of Law in Support of His Motion for Summary Judgment (ECF No. 245-4)……………………….…………..…JA197

Exhibit E to Defendant's Memorandum of Law in Support of His Motion for Summary Judgment (ECF No. 245-5)…………………………….…………JA201

Exhibit F to Defendant's Memorandum of Law in Support of His Motion for Summary Judgment (ECF No. 245-6)…………………………….…………JA208

Exhibit G to Defendant's Memorandum of Law in Support of His Motion for Summary Judgment (ECF No. 245-7)…………………………….…………JA213

Exhibit H to Defendant's Memorandum of Law in Support of His Motion for Summary Judgment (ECF No. 245-8)…………………………….…………JA217

Exhibit I to Defendant's Memorandum of Law in Support of His Motion for Summary Judgment (ECF No. 245-9)……………………………….…………JA218

Memorandum in Opposition to Defendant's Motion for Summary Judgment dated March 22, 2024 (ECF No. 264)………………………….……………..... JA228

District Court Order dated April 12, 2024 granting Defendant's Motion for Summary Judgment (ECF No. 280) ...............................................................JA241

Transcript of Hearing on Defendant's Motion for Summary Judgment dated April 12, 2024 (ECF No. 282)……………………………………...……..... JA243

Plaintiff's Notice of Appeal (ECF No. 283).......................................................JA258

Defendant's Notice of Appeal (ECF No. 284).................................................JA260

Elzagally v. Hifter (1:19-cv-00853)
District Court, E.D. Virginia
Last Updated: July 5, 2024, 6:42 a.m.
Assigned To: Leonie M. Brinkema
Referred To: John F. Anderson
Citation: Elzagally v. Hifter, 1:19-cv-00853, (E.D. Va.)
Date Filed: June 26, 2019
Date Terminated: April 12, 2024
Date of Last Known Filing: May 13, 2024
Cause: 28:1331 Fed. Question: Wrongful Death
Nature of Suit: 890 Other Statutory Actions
Jury Demand: Plaintiff
Jurisdiction Type: Federal Question

Document Number

Date Filed
Description

1

Jun 26, 2019

Complaint ( Filing fee $ 400, receipt number 0422-6710489.), filed by Muhammad Tunalli, Alaa Tunalli, Abduladeem Tunalli, Ayah Tunalli, Mais Ahmed Mayouf, Abdulhameed Tunalli, Abdulrrauf Tunalli. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Gill, Faisal) (Entered: 06/26/2019)

Main Doc

Complaint

Att 1

Civil Cover Sheet

Att 2

Exhibit

Att 3

Exhibit

Att 4

Exhibit

Jun 26, 2019

Initial Case Assignment

Jun 26, 2019

Initial Case Assignment to District Judge Leonie M. Brinkema and Magistrate Judge Michael S. Nachmanoff. (dvanm, )

2

Jul 3, 2019

Proposed Summons re 1 Complaint, by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Gill, Faisal) (Entered: 07/03/2019)

[Main Doc](#)

Proposed Summons

Jul 5, 2019

Notice of Correction re 2 Proposed Summons. Document has more than 1 address for the defendant. Filer has been notified to refile the document using just 1 address for the defendant. (dvanm, )

Jul 5, 2019

Notice of Correction

3

Aug 26, 2019

Proposed Summons re 1 Complaint, by Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Gill, Faisal) (Entered: 08/26/2019)

Main Doc

Proposed Summons

4

Aug 27, 2019

Summons Issued as to Khalifa Haftar. NOTICE TO ATTORNEY: Print out two electronically issued summons and one copy of the attachments for each defendant to be served with the complaint. (Attachments: # 1 Notice)(dvanm, ) (Entered: 08/27/2019)

Main Doc

Summons Issued

5

Oct 17, 2019

ORDER - It is hereby ORDERED that within fourteen (14) days the plaintiff show cause, if any, why this civil action should not be dismissed pursuant to Fed. R. Civ. P. 4(m). Signed by District Judge Leonie M. Brinkema on 10/17/2019. (dest, ) (Entered: 10/17/2019)

[Main Doc](#)

Order

6

Nov 1, 2019

Memorandum to Show Cause to 5 Order filed by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli. (Gill, Faisal) (Entered: 11/01/2019)

[Main Doc](#)

Memorandum

7

Nov 4, 2019

ORDER - After review of Plaintiffs' request for an additional thirty (30) days with which to serve Defendant in this matter, and after Plaintiff having shown good cause, this Court grants an additional thirty (30) days from this Order in order for the Plaintiffs to serve Defendant. Signed by District Judge Leonie M. Brinkema on 11/4/2019. (dvanm, ) (Entered: 11/04/2019)

[Main Doc](#)

Order

8

Dec 4, 2019

AFFIDAVIT of Service for Summons and Complaint served on Khalifa Haftar on 11/25/2019, filed by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Gill, Faisal) (Entered: 12/04/2019)

Main Doc

Affidavit of Service

Att 1

Exhibit

($0.20)

Att 2

Exhibit

($0.30)

Att 3

Exhibit

($0.10)

Att 4

Exhibit

($0.20)

9

Jan 6, 2020

ORDERED that plaintiffs immediately obtain an entry of default from the Clerk pursuant to Fed. R. Civ. P. 55(a). Signed by District Judge Leonie M. Brinkema on 01/06/2020. (see order for further details)(dvanm, c/m 1/6/2020) (Entered: 01/06/2020)

Main Doc

Order

10

Jan 6, 2020

Request for Entry of Default as to Defendant Haftar by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Attachments: # 1 Proposed Order)(Gill, Faisal) (Entered: 01/06/2020)

Main Doc

Request Entry of Default

Att 1

Proposed Order

($0.10)

Jan 8, 2020

Notice of Correction re 10 Request for Entry of Default as to Defendant Haftar. The filing user has been notified that request cannot be completed until a declaration or affidavit is filed. (dvanm, )

Jan 8, 2020

Notice of Correction

11

Jan 8, 2020

Declaration re 10 Request for Entry of Default as to Defendant Haftar by Attorney Faisal Gill by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Gill, Faisal) (Entered: 01/08/2020)

[Main Doc](#)

Declaration

12

Jan 9, 2020

( Set Aside per ecf 29 ) Clerk's ENTRY OF DEFAULT as to Khalifa Haftar. (dvanm, ) Modified on 8/6/2020 (aott, ). (Entered: 01/09/2020)

[Main Doc](#)

Clerk's Entry of Default

13

Jan 14, 2020

Mail sent to Khalifa Haftar Returned as Undeliverable. (dvanm, ) (Entered: 01/14/2020)

[Main Doc](#)

Mail Returned

14

Jan 15, 2020

MOTION for Extension of Hearing Date and of Filing Deadline for Motion for Default Judgment by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Attachments: # 1 Proposed Order)(Gill, Faisal) (Entered: 01/15/2020)

Main Doc

Motion for Extension

Att 1

Proposed Order

( ($0.10) )

15

Jan 16, 2020

ORDER granting 14 MOTION for Extension of Hearing Date and of Filing Deadline for Motion for Default Judgment. Signed by Magistrate Judge Michael S. Nachmanoff on 1/16/2020. (rban, ) (Entered: 01/16/2020)

[Main Doc](#)

Order on Motion for Extension of Time to File

Jan 16, 2020

Set/Reset Hearings

Jan 16, 2020

Set/Reset Hearings: Default Judgment Hearing set for 2/21/2020 at 10:00 AM in Alexandria Courtroom 400 before Magistrate Judge Michael S. Nachmanoff. (rban, )

16

Jan 22, 2020

Supplemental MOTION for Extension of Hearing Date and of Filing Deadline for Motion for Default Judgment by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Gill, Faisal) (Entered: 01/22/2020)

[Main Doc](#)

Motion for Extension

17

Jan 23, 2020

ORDER granting 16 Supplement to Motion for Extension of Hearing Date and Time. The deadline to file the Motion for Default Judgment and any supporting documents shall be January 31, 2020. Signed by Magistrate Judge Michael S. Nachmanoff on 1/23/2020. (dvanm, ) (Entered: 01/23/2020)

[Main Doc](#)

Order on Motion for Extension of Time to File

18

Jan 31, 2020

MOTION for Default Judgment as to Defendant Haftar by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Attachments: # 1 Memorandum in Support, # 2 Exhibit Fairfax County Property Records, # 3 Exhibit Virginia SCC Akbo Investments LLC, # 4 Exhibit Arlington Property Records, # 5 Exhibit Zaghally Declaration, # 6 Exhibit Mais Declaration, # 7 Exhibit Al Harramah Declaration, # 8 Proposed Order)(Gill, Faisal) (Entered: 01/31/2020)

Main Doc

Motion for Default Judgment

[Att 1](#)

Memorandum in Support

[Att 2](#)

Exhibit Fairfax County Property Records

[Att 3](#)

Exhibit Virginia SCC Akbo Investments LLC

[Att 4](#)

Exhibit Arlington Property Records

[Att 5](#)

Exhibit Zaghally Declaration

[Att 6](#)

Exhibit Mais Declaration

[Att 7](#)

Exhibit Al Harramah Declaration

[Att 8](#)

Proposed Order

Feb 3, 2020

Notice of Correction re 18 MOTION for Default Judgment as to Defendant Haftar. The filing user has been notified to file a Notice of Hearing Date or a Notice of Waiver of Oral Argument. (dvanm, )

Feb 3, 2020

Notice of Correction

19

Feb 3, 2020

JA007

Notice of Hearing Date re 18 MOTION for Default Judgment as to Defendant Haftar (Gill, Faisal) (Entered: 02/03/2020)

[Main Doc](Main Doc)

Notice of Hearing Date

Feb 4, 2020

Set Deadlines as to 18 MOTION for Default Judgment as to Defendant Haftar. Motion Hearing set for 2/21/2020 at 10:00 AM in Alexandria Courtroom 400 before Magistrate Judge Michael S. Nachmanoff. (clar, )

Feb 4, 2020

Set Motion and R&R Deadlines/Hearings

Feb 4, 2020

MOTIONS REFERRED to Magistrate Judge: Nachmanoff. 18 MOTION for Default Judgment as to Defendant Haftar (clar, )

Feb 4, 2020

Motions Referred

20

Feb 21, 2020

Minute Entry for proceedings held before Magistrate Judge Michael S. Nachmanoff:Motion Hearing held on 2/21/2020 re 18 MOTION for Default Judgment as to Defendant Haftar filed by Muhammad Tunalli, Mais Ahmed Mayouf, Abdulhameed Al-Harramah, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Abduladeem Tunalli, Ayah Tunalli, Aida Elzagally. Appearance of counsel for pltf. Matter is uncontested. Motion taken under advisement. Additional briefing to be submitted within two weeks. Report and recommendation to follow. (Tape #FTR.)(cmar, ) (Entered: 02/21/2020)

[Main Doc](Main Doc)

Motion Hearing

21

Feb 25, 2020

TRANSCRIPT of proceedings held on 2/21/2020, before Judge Michael S. Nachmanoff, Transcriber Anneliese Thomson, Telephone number 703-299-8595. NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due

JA008

3/26/2020. Redacted Transcript Deadline set for 4/27/2020. Release of Transcript Restriction set for 5/26/2020.(thomson, anneliese) (Entered: 02/25/2020)

Main Doc

Transcript

|  |
| --- |
| 22 |

Mar 5, 2020

First MOTION for Extension of Time to File Response/Reply by Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli. (Gill, Faisal) (Entered: 03/05/2020)

Main Doc

Motion for Extension of Time to File Response/Reply

|  |
| --- |
| 23 |

Mar 6, 2020

ORDER granting 22 Motion for Extension of Time to File Response/Reply. ORDERED that plaintiffs shall have seven (7) days from the date of this order to submit supplemental findings in support of their Motion for Default Judgment. Signed by Magistrate Judge Michael S. Nachmanoff on 03/06/20. (cmar, ) (Entered: 03/09/2020)

Main Doc

Order on Motion for Extension of Time to File Response/Reply

|  |
| --- |
| 24 |

Mar 13, 2020

Memorandum in Support re 18 MOTION for Default Judgment as to Defendant Haftar filed by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli. (Attachments: # 1 Affidavit, # 2 Affidavit, # 3 Affidavit)(Gill, Faisal) (Entered: 03/13/2020)

Main Doc

Memorandum in Support

Att 1

Affidavit

($0.20)

Att 2

Affidavit

($0.20)

Att 3

Affidavit

($0.30)

25

Apr 23, 2020

REPORT AND RECOMMENDATIONS re 18 MOTION for Default Judgment as to Defendant Haftar filed by Muhammad Tunalli, Mais Ahmed Mayouf, Abdulhameed Al-Harramah, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Abduladeem Tunalli, Ayah Tunalli, Aida Elzagally Objections to R&R due by 5/7/2020. Signed by Magistrate Judge Michael S. Nachmanoff on 4/23/2020. (dvanm, ) (Entered: 04/23/2020)

Main Doc

Report and Recommendations

26

May 7, 2020

Objection to 25 REPORT AND RECOMMENDATIONS re 18 MOTION for Default Judgment as to Defendant Haftar filed by Muhammad Tunalli, Mais Ahmed Mayouf, Abdulhameed Al-Harramah, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Abduladeem Tunalli, Aya filed by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli. (Attachments: # 1 Exhibit, # 2 Exhibit)(Gill, Faisal) (Entered: 05/07/2020)

Main Doc

Objection

Att 1

Exhibit

($3.00)

Att 2

Exhibit

($0.20)

27

Jul 31, 2020

NOTICE of Appearance by Edward John Ungvarsky on behalf of Khalifa Haftar (Ungvarsky, Edward) (Entered: 07/31/2020)

Main Doc

Notice of Appearance

28

Jul 31, 2020

Letter from Defendant's Counsel. (Ungvarsky, Edward) (Entered: 07/31/2020)

[Main Doc](#)

Letter

29

Aug 6, 2020

ORDER granting 28 Letter Motion from Defendant's Counsel; directing that 12 Clerk's Entry of Default entered on January 9, 2020 is SET ASIDE; directing that that defendant file an answer to the Complaint or other responsive pleading no later than August 20, 2020. Signed by District Judge Leonie M. Brinkema on 8/6/2020. (aott) (Entered: 08/06/2020)

Main Doc

Order

30

Aug 20, 2020

NOTICE of Appearance by Edward John Ungvarsky on behalf of Khalifa Haftar (Ungvarsky, Edward) (Entered: 08/20/2020)

Main Doc

Notice of Appearance

31

Aug 20, 2020

Motion to appear Pro Hac Vice by Duncan Levin and Certification of Local Counsel Edward J. Ungvarsky Filing fee $ 75, receipt number 0422-7360744. by Khalifa Haftar. (Attachments: # 1 Exhibit Application)(Ungvarsky, Edward) (Entered: 08/20/2020)

Main Doc

Motion to appear Pro hac vice

32

Aug 20, 2020

MOTION to Dismiss for Failure to State a Claim by Khalifa Haftar. (Attachments: # 1 Proposed Order)(Ungvarsky, Edward) (Entered: 08/20/2020)

JA011

Main Doc

Motion to Dismiss for Failure to State a Claim

Att 1

Proposed Order

($0.10)

| | 33 |
|---|---|

Aug 20, 2020

Notice of Hearing Date set for 09/15/2020 re 32 MOTION to Dismiss for Failure to State a Claim (Ungvarsky, Edward) (Entered: 08/20/2020)

Main Doc

Notice of Hearing Date

| | 34 |
|---|---|

Aug 20, 2020

Memorandum in Support re 32 MOTION to Dismiss for Failure to State a Claim filed by Khalifa Haftar. (Ungvarsky, Edward) (Entered: 08/20/2020)

Main Doc

Memorandum in Support

Aug 21, 2020

Set Deadlines as to 32 MOTION to Dismiss for Failure to State a Claim . Motion Hearing set for 9/15/2020 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (clar, )

Aug 21, 2020

Set Motion and R&R Deadlines/Hearings

| | 35 |
|---|---|

Aug 21, 2020

ORDER granting 31 Motion for Pro hac vice for Duncan Levin. Signed by District Judge Leonie M. Brinkema on 8/21/2020. (shea) (Entered: 08/21/2020)

Main Doc

Order on Motion for Pro hac vice

| | 36 |
|---|---|

Aug 24, 2020

ORDERED that the Clerk amend the docket caption for this action to reflect thatdefendant's name is Khalifa Hifter. Signed by District Judge Leonie M. Brinkema on 08/24/2020. (dvanm, ) (Entered: 08/24/2020)

[Main Doc](#)

Order

|    |
|----|
| 37 |

Sep 2, 2020

Consent MOTION to Continue Deadline to File Response and Hearing Date for Defendant's Motion to Dismiss by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Attachments: # 1 Proposed Order Proposed Consent Order)(Gill, Faisal) (Entered: 09/02/2020)

Main Doc

Motion to Continue

|    |
|----|
| 38 |

Sep 3, 2020

SO ORDERED 37 Plaintiff's Unopposed Motion for Extension of Time to File Response to Defendant's Motion to Dismiss and to Continue Hearing. Plaintiff shall file their response to Defendant's Motion to Dismiss no later than September 10, 2020. The hearing on Defendant's Motion to Dismiss originally set for September 15, 2020 shall now be continued to September 29, 2020 to be held virtually. Signed by District Judge Leonie M. Brinkema on 09/03/2020. (dvanm, ) (Entered: 09/03/2020)

[Main Doc](#)

Order on Motion to Continue

Sep 3, 2020

Set Motion and R&R Deadlines/Hearings

Sep 3, 2020

Reset Deadlines as to 32 MOTION to Dismiss for Failure to State a Claim . Motion Hearing set for 9/29/2020 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (dvanm, )

|    |
|----|
| 39 |

Sep 10, 2020

Opposition to 34 Memorandum in Support, 32 MOTION to Dismiss for Failure to State a Claim filed by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad

Tunalli. (Attachments: # 1 Affidavit Libyan Attorney Affidavit)(Gill, Faisal) (Entered: 09/10/2020)

Main Doc

Opposition

Att 1

Affidavit Libyan Attorney Affidavit

($0.20)

|  | 40 |  |
|---|---|---|

Sep 16, 2020

REPLY to Response to Motion re 32 MOTION to Dismiss for Failure to State a Claim filed by Khalifa Hifter. (Ungvarsky, Edward) (Entered: 09/16/2020)

Main Doc

Reply to Response to Motion

|  | 41 |  |
|---|---|---|

Sep 25, 2020

ORDERED that an on-the-record argument of defendant's motions to dismiss 32 will be held by tele-conference on Tuesday, September 29, 2020 at 12:00 pm. Signed by District Judge Leonie M. Brinkema on 09/25/2020. (dvanm, ) (Entered: 09/25/2020)

Main Doc

Order

Sep 25, 2020

Set Motion and R&R Deadlines/Hearings

Sep 25, 2020

Reset Deadlines as to 32 MOTION to Dismiss for Failure to State a Claim . Motion Hearing set for 9/29/2020 at 12:00 PM in Alexandria Telephonically before District Judge Leonie M. Brinkema. (dvanm, )

|  | 42 |  |
|---|---|---|

Sep 29, 2020

Minute Entry for proceedings held before District Judge Leonie M. Brinkema:Motion Hearing held(via TELECONFERENCE) on 9/29/2020. Appearances of counsel. Deft 32 MOTION to Dismiss for Failure to State a Claim is argued and GRANTED IN PART and DENIED IN PART. Court orders case stayed for 60 days. (order to follow) (Court Reporter T. Harris.)(yguy) (Entered: 09/29/2020)

Main Doc

Motion Hearing

Sep 29, 2020

Case Stayed

43

Sep 29, 2020

ORDER: For the reasons stated during a telephone conference held on the record with attorneys for both parties present, defendants' Motion to Dismiss [Dkt. No. 32] is GRANTED IN PART and DENIED IN PART; and it is hereby ORDERED that Counts I, IV, V, VI, VI, and VII of plaintiffs' Complaint [Dkt. No. I] beand are DISMISSED, leaving only Count II; and it is hereby ORDERED that the action be and is STAYED for sixty days. Signed by District Judge Leonie M. Brinkema on 9/29/20. (yguy) (Entered: 09/29/2020)

Main Doc

Order on Motion to Dismiss for Failure to State a Claim

Sep 29, 2020

Case Stayed (yguy)

44

Oct 9, 2020

TRANSCRIPT of proceedings held on 9/29/2020, before Judge L. Brinkema, Court Reporter/Transcriber Tonia Harris, Telephone number 703-646-1438. NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 11/9/2020. Redacted Transcript Deadline set for 12/9/2020. Release of Transcript Restriction set for 1/7/2021.(harris, tonia) (Entered: 10/09/2020)

Main Doc

Transcript

45

Oct 26, 2020

Letter from the court. (dvanm, ) (Entered: 10/27/2020)

Main Doc

Letter

|  |
|---|
| 46 |

Jan 4, 2021

NOTICE by United States of America re 45 Letter (Wetzler, Lauren) (Entered: 01/04/2021)

[Main Doc](#)

NOTICE

|  |
|---|
| 47 |

Jan 11, 2021

Consent MOTION to Withdraw as Attorney by Khalifa Hifter. (Attachments: # 1 Proposed Order)(Ungvarsky, Edward) (Entered: 01/11/2021)

[Main Doc](#)

Motion to Withdraw as Attorney

Att 1

Proposed Order

 ($0.10)

|  |
|---|
| 48 |

Jan 12, 2021

ORDER granting 47 Motion to Withdraw as Attorney. Attorney Edward John Ungvarsky and Duncan P. Levin terminated. Signed by District Judge Leonie M. Brinkema on 01/12/2021. (dvanm, ) (Entered: 01/12/2021)

[Main Doc](#)

Order on Motion to Withdraw as Attorney

|  |
|---|
| 49 |

Jan 15, 2021

ORDERED that the stay of this civil action imposed on September 29, 2020 43 be and is LIFTED; and it is further ORDERED that to avoid being held in default and facing entry of judgment against him, defendant, who is now proceeding without counsel, must file an Answer to the Complaint by Friday, February 5, 2021. The Clerk is directed to return this action to the active docket and to forward copies of this Order to counsel of record and defendant, pro se. To ensure defendant receives this Order, his former counsel should send him a copy to the last address, physical or electronic, known to counsel.. Signed by District Judge Leonie M. Brinkema on 01/15/2021. (dvanm, ) (Entered: 01/15/2021)

Main Doc

Order

|   |
|---|
| 50 |

Feb 6, 2021

Consent MOTION for Extension of Time to File Answer re 49 Order,, by Khalifa Hifter. (Attachments: # 1 Proposed Order)(Binnall, Jesse) (Entered: 02/06/2021)

Main Doc

|   |
|---|
| 51 |

Feb 6, 2021

Document filed in error and removed re NOTICE of Appearance by Jesse R. Binnall on behalf of Khalifa Hifter (Binnall, Jesse) (Main Document 51 replaced on 2/8/2021) (klau, ). Modified text on 2/8/2021 (klau, ). (Entered: 02/06/2021)

Main Doc

|   |
|---|
| 52 |

Feb 8, 2021

ORDER granting 50 Motion for Extension of Time to Answer and Mr. Haftar may file his answer to the Complaint by February 19, 2021. Signed by District Judge Leonie M. Brinkema on 2/8/21. (klau, ) (Entered: 02/08/2021)

Main Doc

Feb 8, 2021

Notice of Correction re 51 Notice of Appearance, The filing user has been notified that document (51) was incorrectly saved PDF fillable form and has been removed. The filing user was directed to refile the document. (klau, )

|   |
|---|
| 53 |

Feb 8, 2021

NOTICE of Appearance by Jesse R. Binnall on behalf of Khalifa Haftar (Binnall, Jesse) (Entered: 02/08/2021)

Main Doc

|   |
|---|
| 54 |

Feb 19, 2021

ANSWER to Complaint by Khalifa Haftar.(Binnall, Jesse) (Entered: 02/19/2021)

JA017

Main Doc

### 55

Feb 23, 2021

SCHEDULING ORDER:Initial Pretrial Conference set for 3/17/2021 at 11:00 AM in Alexandria Courtroom 400 before Magistrate Judge Michael S. Nachmanoff. Discovery due by 7/9/2021. Final Pretrial Conference set for 7/15/2021 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema.. Signed by District Judge Leonie M. Brinkema on 2/23/21. (Attachments: # 1 Mag.Consent, # 2 Pretrial Notice)(yguy) (Entered: 02/23/2021)

Main Doc

### 56

Mar 4, 2021

NOTICE by Khalifa Haftar Change of Firm Name (Binnall, Jesse) (Entered: 03/04/2021)

Main Doc

### 57

Mar 10, 2021

Proposed Joint Discovery Plan by Khalifa Haftar.(Binnall, Jesse) (Entered: 03/10/2021)

Main Doc

Mar 15, 2021

Initial Pretrial Conference set for 03/17/2021 at 11:00 AM in Alexandria Courtroom 400 before Magistrate Judge Michael S. Nachmanoff TERMINATED. (lcre, )

### 58

Mar 15, 2021

Rule 16(b) Scheduling Order - Based on the parties representations in their discovery plan, the Fed. R. Civ. P. 16(b) Pretrial Conference scheduled for March 17, 2021 shall be canceled. Upon review of the pleadings and the record, the court makes the following rulings:1. The Rule 26(f) report (Dkt. No. 57) filed by the parties is approved unless modified by the court herein or hereafter. Signed by Magistrate Judge Michael S. Nachmanoff on 3/15/2021. (lcre, ) (Entered: 03/15/2021)

Main Doc

### 59

Mar 31, 2021

ORDERED that plaintiffs advise the Court within 10 days from the date of this Order whether they have any objection to consolidation of civil actions 1:19-cv-853, 1:20-cv-170, and 1:20-cv-1038 under the lead case number 1:19-cv-853. Signed by District Judge Leonie M. Brinkema on 03/31/2021. (lber) (Entered: 04/01/2021)

Main Doc

| 60 |

Apr 5, 2021

Letter from the court. (lber) (Entered: 04/05/2021)

Main Doc

| 61 |

Apr 5, 2021

ORDERED that the action be and is STAYED until further notice from the Court. Signed by District Judge Leonie M. Brinkema on 04/05/2021. (lber) (Entered: 04/05/2021)

Main Doc

| 62 |

May 14, 2021

NOTICE by United States of America re 60 Letter (Barghaan, Dennis) (Entered: 05/14/2021)

Main Doc

| 63 |

May 18, 2021

ORDERED that the stay of this civil action imposed on April 5, 2021 [Dkt. No. 61] be and is LIFTED; and it is further ORDERED that plaintiffs advise the Court within 10 days from the date of this Order whether they have any objection to consolidation of civil actions 1:19-cv-853, 1:20-cv-170, and 1:20-cv-1038 under the lead case number 1:19-cv-853. Signed by District Judge Leonie M. Brinkema on 5/18/2021. (lber) (Entered: 05/18/2021)

Main Doc

May 18, 2021

Case reopened by District Judge Leonie M. Brinkema on 5/18/2021. (lber)

| 64 |

May 28, 2021

JA019

Letter re: Court's Order on May 18, 2022 [ECF No. 63] Regarding Consolidation of Cases. (Gill, Faisal) (Entered: 05/28/2021)

[Main Doc](#)

|  |
|---|
| 65 |

Jun 24, 2021

Consent MOTION for Protective Order by Khalifa Haftar. (Attachments: # 1 Stipulated Protective Order)(Binnall, Jesse) (Entered: 06/24/2021)

Main Doc

Att 1

Stipulated Protective Order

($1.30)

|  |
|---|
| 66 |

Jun 24, 2021

Consent MOTION to Amend/Correct 1 Complaint, by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli. (Attachments: # 1 Memorandum in Support, # 2 Proposed Amended Complaint, # 3 Redlined Amended Complaint)(Gill, Faisal) (Entered: 06/24/2021)

Main Doc

Att 1

Memorandum in Support

($0.40)

Att 2

Proposed Amended Complaint

($1.00)

Att 3

Redlined Amended Complaint

($1.30)

Jun 25, 2021

Notice of Correction re 66 Consent MOTION to Amend/Correct 1 Complaint. The filer was notified to file the memorandum in support as a separate docket entry in the future. (lber)

|  |
|---|
| 67 |

Jun 25, 2021

ORDER granting 66 Motion to Amend/Correct. ORDERED that plaintiffs promptly file their proposed amended complaint, which will serve as the only operative complaint. Signed by District Judge Leonie M. Brinkema on 6/25/2021. (lber) (Entered: 06/25/2021)

Main Doc

68

Jun 28, 2021

PROTECTIVE ORDER. Signed by Magistrate Judge Michael S. Nachmanoff on 6/28/2021. (Attachments: # 1 Agreement)(lcre, ) (Entered: 06/29/2021)

Main Doc

Jul 6, 2021

Set Deadlines/Hearings. Discovery due by 7/9/2021. Final Pretrial Conference set for 7/15/2021 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (jlan)

69

Jul 9, 2021

AMENDED COMPLAINT against All Defendants, filed by Muhammad Tunalli, Alaa Tunalli, Abduladeem Tunalli, Abdulhameed Al-Harramah, Ayah Tunalli, Mais Ahmed Mayouf, Aida Elzagally, Abdulhameed Tunalli, Abdulrrauf Tunalli.(Gill, Faisal) (Entered: 07/09/2021)

Main Doc

70

Jul 9, 2021

MOTION for Extension of Time to Complete Discovery by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Gill, Faisal) (Entered: 07/09/2021)

Main Doc

71

Jul 11, 2021

ANSWER to Complaint by Khalifa Haftar.(Binnall, Jesse) (Entered: 07/11/2021)

Main Doc

72

Jul 12, 2021

ORDER granting 70 Motion for Extension of Time to Complete Discovery. Signed by District Judge Leonie M. Brinkema on 7/12/2021. (lber) (Entered: 07/12/2021)

Main Doc

---

73

Jul 12, 2021

AMENDED SCHEDULING ORDER: Initial Pretrial Conference set for 8/4/2021 at 11:00 AM in Alexandria Courtroom 400 before Magistrate Judge Michael S. Nachmanoff. Discovery due by 10/15/2021. Final Pretrial Conference set for 10/21/2021 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. Signed by District Judge Leonie M. Brinkema on 7/12/21. (Attachments: # 1 Mag.Consent, # 2 Pretrial Notice)(yguy) (Entered: 07/12/2021)

Main Doc

---

74

Jul 28, 2021

Joint Discovery Plan by Khalifa Haftar.(Binnall, Jesse) (Entered: 07/28/2021)

Main Doc

---

75

Jul 29, 2021

Rule 16(b) Scheduling Order - This matter comes before the Court on the parties Rule 26(f) report (Dkt. No. 74 ). Based on the parties representations in their discovery plan, the Fed. R. Civ. P. 16(b) Pretrial Conference scheduled for August 4, 2021 shall be canceled. Upon review of the pleadings and the record, the court makes the following rulings:1. The Rule 26(f) report (Dkt. No. 74 ) filed by the parties is approved unless modified by the court herein or hereafter. Signed by Magistrate Judge Michael S. Nachmanoff on 7/29/2021. (lcre, ) (Entered: 07/29/2021)

Main Doc

---

76

Aug 17, 2021

MOTION to Compel DEFENDANT HIFTER TO FURTHER RESPOND TO PLAINTIFFS FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Faisal Gill, # 3 Proposed Order)(Gill, Faisal) (Entered: 08/17/2021)

Main Doc

Aug 18, 2021

Notice of Correction re 76 MOTION to Compel DEFENDANT HIFTER TO FURTHER RESPOND TO PLAINTIFFS FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS. The filing user has been notified in the future to file the Memorandum in Support as a separate entry. (lber)

Aug 23, 2021

Notice of Correction re 76 MOTION to Compel DEFENDANT HIFTER TO FURTHER RESPOND TO PLAINTIFFS FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS. The filing user has been notified to file either a Notice of Hearing Date or a Notice of Waiver of oral Argument. (lber)

77

Aug 23, 2021

Notice of Hearing Date set for September 10, 2021 re 76 MOTION to Compel DEFENDANT HIFTER TO FURTHER RESPOND TO PLAINTIFFS FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS (Gill, Faisal) (Entered: 08/23/2021)

Main Doc

78

Aug 23, 2021

Memorandum in Support re 76 MOTION to Compel DEFENDANT HIFTER TO FURTHER RESPOND TO PLAINTIFFS FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS filed by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli. (Attachments: # 1 Declaration of Faisal Gill)(Gill, Faisal) (Entered: 08/23/2021)

Main Doc

Aug 23, 2021

Set Deadlines as to 76 MOTION to Compel DEFENDANT HIFTER TO FURTHER RESPOND TO PLAINTIFFS FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS. Motion Hearing set for 9/10/2021 at 10:00 AM in Alexandria Courtroom 400 before Magistrate Judge Michael S. Nachmanoff. (clar, )

Aug 23, 2021

MOTIONS REFERRED to Magistrate Judge: Nachmanoff. 76 MOTION to Compel DEFENDANT HIFTER TO FURTHER RESPOND TO PLAINTIFFS FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS (clar, )

79

Sep 7, 2021

Opposition to 78 Memorandum in Support, 76 MOTION to Compel DEFENDANT HIFTER TO FURTHER RESPOND TO PLAINTIFFS FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS filed by Khalifa Haftar. (Attachments: # 1 Exhibit Articles of Military Crimes Against The State)(Binnall, Jesse) (Entered: 09/07/2021)

Main Doc

---

80

Sep 8, 2021

ORDERED that the oral argument of this matter, which is currently scheduled to beheard on Friday, September 10, 2021, at 10:00 a.m. be and is continued to Monday, September 13, 2021, at 11:00 a.m. Plaintiffs shall file any reply brief by 5:00 p.m. on Thursday, September 9, 2021. Signed by Magistrate Judge Michael S. Nachmanoff on 9/8/2021. (kgall) (Entered: 09/08/2021)

Main Doc

---

Sep 8, 2021

Reset Deadlines as to 76 MOTION to Compel DEFENDANT HIFTER TO FURTHER RESPOND TO PLAINTIFFS FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS. Motion Hearing set for 9/13/2021 at 11:00 AM in Alexandria Courtroom 400 before Magistrate Judge Michael S. Nachmanoff. (kgall)

---

81

Sep 9, 2021

REPLY to Response to Motion re 76 MOTION to Compel DEFENDANT HIFTER TO FURTHER RESPOND TO PLAINTIFFS FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS filed by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli. (Gill, Faisal) (Entered: 09/09/2021)

Main Doc

---

82

Sep 13, 2021

Minute Entry for proceedings held before Magistrate Judge Michael S. Nachmanoff:Motion Hearing held on 9/13/2021 re 76 MOTION to Compel DEFENDANT HIFTER TO FURTHER RESPOND TO PLAINTIFFS FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS filed by Mais Ahmed Mayouf, Abdulhameed Al-Harramah, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Aida Elzagally. Appearances of counsel. Motion argued and GRANTED in Part/DENIED in Part. Order to follow. (Tape #FTR.)(lcre, ) (Entered: 09/13/2021)

Main Doc

83

Sep 13, 2021

NOTICE of Appearance by Lindsay McKasson on behalf of Khalifa Haftar. (dvanm, ) (Entered: 09/13/2021)

[Main Doc](#)

84

Sep 14, 2021

ORDERED that the re 76 Motion to Compel is GRANTED in part and DENIED in part. Defendant shall provide full and complete responses to outstanding discovery requests as set forth from the bench within ten (10) days of the date of this Order. Signed by Magistrate Judge Michael S. Nachmanoff on 9/14/2021. (lcre, ) (Entered: 09/14/2021)

Main Doc

85

Sep 16, 2021

TRANSCRIPT of proceedings held on 9/13/2021, before Judge Michael S. Nachmanoff, Transcriber Anneliese Thomson, Telephone number 703-299-8595. NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 10/18/2021. Redacted Transcript Deadline set for 11/16/2021. Release of Transcript Restriction set for 12/15/2021.(Thomson, Anneliese) (Entered: 09/16/2021)

Main Doc

86

Sep 24, 2021

Motion Re: Objections to Magistrate Judge's Ruling or Recommendation by Khalifa Haftar. (Attachments: # 1 Proposed Order)(McKasson, Lindsay) (Entered: 09/24/2021)

Main Doc

87

Sep 25, 2021

Memorandum in Support re 86 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation filed by Khalifa Haftar. (Attachments: # 1 Exhibit)(McKasson, Lindsay) (Entered: 09/25/2021)

Main Doc

88

Sep 25, 2021

Notice of Hearing Date October 15, 2021 re 87 Memorandum in Support, 86 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation (McKasson, Lindsay) (Entered: 09/25/2021)

Main Doc

Sep 25, 2021

Set Deadlines as to 86 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation . Motion Hearing set for 10/15/2021 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (clar, )

89

Oct 6, 2021

Reply to 87 Memorandum in Support, 86 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation filed by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli, United States of America. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Gill, Faisal) (Entered: 10/06/2021)

Main Doc

90

Oct 8, 2021

Motion to appear Pro Hac Vice by Shawn Flynn and Certification of Local Counsel Lindsay McKasson Filing fee $ 75, receipt number AVAEDC-8039469. by Khalifa Hifter. (McKasson, Lindsay) (Entered: 10/08/2021)

Main Doc

91

Oct 8, 2021

NOTICE of Appearance by Jason Caldwell Greaves on behalf of Khalifa Hifter (Greaves, Jason) (Entered: 10/08/2021)

Main Doc

92

Oct 8, 2021

MOTION for Protective Order by Khalifa Hifter. (Attachments: # 1 Proposed Order)(McKasson, Lindsay) (Entered: 10/08/2021)

Main Doc

93

Oct 8, 2021

Memorandum in Support re 92 MOTION for Protective Order filed by Khalifa Hifter. (McKasson, Lindsay) (Entered: 10/08/2021)

Main Doc

94

Oct 8, 2021

Notice of Hearing Date October 15, 2021 re 92 MOTION for Protective Order, 93 Memorandum in Support (McKasson, Lindsay) (Entered: 10/08/2021)

Main Doc

Oct 8, 2021

Set Deadlines as to 92 MOTION for Protective Order, 95 Emergency MOTION to Compel Deposition of Defendant Hifter. Motion Hearing set for 10/15/2021 at 10:00 AM in Alexandria Courtroom 400 before Magistrate Judge Michael S. Nachmanoff. (clar, )

Oct 8, 2021

MOTIONS REFERRED to Magistrate Judge: Nachmanoff. 92 MOTION for Protective Order, 95 Emergency MOTION to Compel Deposition of Defendant Hifter (clar, )

95

Oct 11, 2021

Emergency MOTION to Compel Deposition of Defendant Hifter by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Gill, Faisal) (Entered: 10/11/2021)

Main Doc

96

Oct 11, 2021

Notice of Hearing Date set for October 15, 2021 re 95 Emergency MOTION to Compel Deposition of Defendant Hifter (Gill, Faisal) (Entered: 10/11/2021)

Main Doc

97

Oct 11, 2021

Memorandum in Support re 95 Emergency MOTION to Compel Deposition of Defendant Hifter filed by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Attachments: # 1 Exhibit, # 2 Exhibit)(Gill, Faisal) (Entered: 10/11/2021)

Main Doc

98

Oct 12, 2021

ORDERED that the hearing on defendant's Motion [Dkt. No. 86] be and is advanced on the Court's docket to 9:30 am on Friday, October 15, 2021. Signed by District Judge Leonie M. Brinkema on 10/12/2021. (dvanm, ) (Entered: 10/12/2021)

Main Doc

Oct 12, 2021

Reset Deadlines as to 86 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation . Motion Hearing set for 10/15/2021 at 09:30 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (dvanm, )

99

Oct 12, 2021

REPLY to Response to Motion re 86 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation filed by Khalifa Hifter. (Greaves, Jason) (Entered: 10/12/2021)

Main Doc

100

Oct 12, 2021

ORDERED that these three actions (1:19cv853; 1:20cv170; 1:20cv1038) be and are assigned to Judge Nachmanoff, the magistrate judge who was randomly assigned to the first filed complaint. Signed by District Judge Leonie M. Brinkema on 10/12/2021. (dvanm, ) (Entered: 10/13/2021)

Main Doc

101

Oct 13, 2021

Emergency MOTION to Compel Deposition Testimony and Supplemental Discovery Responses by Khalifa Hifter. (Greaves, Jason) (Entered: 10/13/2021)

Main Doc

102

Oct 13, 2021

Memorandum in Support re 101 Emergency MOTION to Compel Deposition Testimony and Supplemental Discovery Responses filed by Khalifa Hifter. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Proposed Order)(Greaves, Jason) (Entered: 10/13/2021)

Main Doc

103

Oct 13, 2021

Notice of Hearing Date re 101 Emergency MOTION to Compel Deposition Testimony and Supplemental Discovery Responses (Greaves, Jason) (Entered: 10/13/2021)

Main Doc

104

Oct 13, 2021

RESPONSE in Opposition re 95 Emergency MOTION to Compel Deposition of Defendant Hifter filed by Khalifa Hifter. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit)(Greaves, Jason) (Entered: 10/13/2021)

Main Doc

Att 1

Exhibit

($0.20)
Att 2

Exhibit

($0.20)
Att 3

Exhibit

($0.30)
Att 4

Exhibit

($0.30)

Att 5

Exhibit

($0.60)

Att 6

Exhibit

($0.40)

105

Oct 13, 2021

ORDERED that defendant's Motion to Compel be and is rescheduled for a hearing next Friday, October 22, 2021, at 10:00 a.m. Signed by District Judge Leonie M. Brinkema on 10/13/2021. (dvanm, ) (Entered: 10/14/2021)

Main Doc

Oct 13, 2021

Reset Deadlines as to 101 Emergency MOTION to Compel Deposition Testimony and Supplemental Discovery Responses. Motion Hearing set for 10/22/2021 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (dvanm, )

106

Oct 14, 2021

ORDERED that defendants Motion for Protective Order (Dkt. No. 92) is DENIED;plaintiffs Emergency Motion to Strike Defendants Objections and Compel Deposition of Defendant Hifter (Dkt. No. 95) is GRANTED. Defendant shall sit for deposition within fourteen (14) days. Signed by Magistrate Judge Michael S. Nachmanoff on 10/14/2021. (dvanm, ) (Entered: 10/14/2021)

Main Doc

Oct 14, 2021

Reset Deadlines as to 101 Emergency MOTION to Compel Deposition Testimony and Supplemental Discovery Responses. Motion Hearing set for 10/22/2021 at 10:00 AM in Alexandria Courtroom 400 before Magistrate Judge Michael S. Nachmanoff. (dvanm, )

Oct 14, 2021

MOTIONS REFERRED to Magistrate Judge: Nachmanoff. 101 Emergency MOTION to Compel Deposition Testimony and Supplemental Discovery Responses (dvanm, )

107

Oct 15, 2021

JA030

Minute Entry for proceedings held before District Judge Leonie M. Brinkema:Motion Hearing held on 10/15/2021. Appearances of counsel. Deft 86 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation is argued and OVERRULED. (order to follow) (Court Reporter A. Thomson.)(yguy) (Entered: 10/15/2021)

Main Doc

| 108 |
|---|

Oct 15, 2021

ORDER: For the reasons stated in open court, it is hereby ORDERED that defendant Khalifa Hifter's objections to Judge Michael S. Nachmanoff's Order of September 14, 2021, [Dkt. No. 86] be and are OVERRULED. Signed by District Judge Leonie M. Brinkema on 10/15/21. (yguy) (Entered: 10/15/2021)

Main Doc

| 109 |
|---|

Oct 15, 2021

Motion Re: Objections to Magistrate Judge's Ruling or Recommendation re 106 Order on Motion for Protective Order,, Order on Motion to Compel, by Khalifa Hifter. (Attachments: # 1 Proposed Order)(McKasson, Lindsay) (Entered: 10/15/2021)

Main Doc

| 110 |
|---|

Oct 15, 2021

Memorandum in Support re 109 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation re 106 Order on Motion for Protective Order,, Order on Motion to Compel, filed by Khalifa Hifter. (McKasson, Lindsay) (Entered: 10/15/2021)

Main Doc

| 111 |
|---|

Oct 15, 2021

Notice of Hearing Date October 29, 2021 re 110 Memorandum in Support, 109 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation re 106 Order on Motion for Protective Order,, Order on Motion to Compel, (McKasson, Lindsay) (Entered: 10/15/2021)

Main Doc

| 112 |
|---|

Oct 16, 2021

JA031

Joint MOTION to Continue Pre-Trial Conference Set for October 21, 2021 by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Attachments: # 1 Proposed Order)(Gill, Faisal) (Entered: 10/16/2021)

Main Doc

Oct 18, 2021

Set Deadlines as to 109 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation re 106 Order on Motion for Protective Order,, Order on Motion to Compel. Motion Hearing set for 10/29/2021 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (dvanm, )

113

Oct 18, 2021

ORDER denying 112 Motion to Continue Pre-Trial Conference; ORDERED that the parties appear as scheduled at 10 a.m. on Thursday, October 21, 2021, for their final pretrial conference. The requirement to file their exhibit and witness lists by that date is waived and a new deadline will be set during the conference. Signed by District Judge Leonie M. Brinkema on 10/18/2021. (jlan) (Entered: 10/18/2021)

Main Doc

114

Oct 19, 2021

Opposition to 101 Emergency MOTION to Compel Deposition Testimony and Supplemental Discovery Responses, 102 Memorandum in Support, filed by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Gill, Faisal) (Entered: 10/19/2021)

Main Doc

115

Oct 20, 2021

REPLY to Response to Motion re 101 Emergency MOTION to Compel Deposition Testimony and Supplemental Discovery Responses filed by Khalifa Hifter. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit)(Greaves, Jason) (Entered: 10/20/2021)

Main Doc

116

Oct 21, 2021

Minute Entry for proceedings held before District Judge Leonie M. Brinkema:Final Pretrial Conference held on 10/21/2021. Appearances of counsel. Court advised of case status. Discovery not yet finished. Trial estimate 1-2 days. Jury Trial set for 1/31/2022 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. Counsel given leave to file witness/exhibit lists 30 days before trial. (Court Reporter A. Thomson.)(yguy) (Entered: 10/21/2021)

Main Doc

---

Oct 21, 2021

Reset Deadlines as to 101 Emergency MOTION to Compel Deposition Testimony and Supplemental Discovery Responses. Motion Hearing set for 10/29/2021 at 10:00 AM in Alexandria Courtroom 400 before Magistrate Judge Michael S. Nachmanoff. (Per DM) (clar, )

117

Oct 22, 2021

MOTION to Consolidate Cases by Khalifa Hifter. (Attachments: # 1 Proposed Order)(McKasson, Lindsay) (Entered: 10/22/2021)

Main Doc

---

118

Oct 22, 2021

ORDER granting 117 Joint Motion to Consolidate Related Cases (1:20cv170 and 1:20cv1038) for the limited purposes of discovery and pretrial matters, excluding dispositive motions by Parties, pursuant to Federal Rule of Civil Procedure 42(a). Signed by District Judge Leonie M. Brinkema on 10/22/2021. (dvanm, ) Modified to correct text on 10/25/2021 (dvanm, ). Modified to correct filing date on 10/25/2021 (dvanm, ). (Entered: 10/25/2021)

Main Doc

---

119

Oct 27, 2021

Reply to 110 Memorandum in Support, 109 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation re 106 Order on Motion for Protective Order,, Order on Motion to Compel, filed by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Gill, Faisal) (Entered: 10/27/2021)

Main Doc

---

Oct 28, 2021

Reset Deadlines as to 101 Emergency MOTION to Compel Deposition Testimony and Supplemental Discovery Responses. Motion Hearing set for 10/29/2021 at 10:00 AM in

Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (Per MSN chambers - DM) (clar, )

### 120

Oct 29, 2021

Minute Entry for proceedings held before District Judge Leonie M. Brinkema:Motion Hearing held on 10/29/2021. Appearances of counsel. Motions are argued. Deft's 101 Emergency MOTION to Compel Deposition Testimony and Supplemental Discovery Responses is GRANTED IN PART and DENIED IN PART. Deft's 109 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation re 106 Order on Motion for Protective Order,, Order on Motion to Compel is DENIED. (order to follow) (Court Reporter A. Thomson.)(yguy) (Entered: 11/01/2021)

Main Doc

### 121

Oct 29, 2021

ORDER: For the reasons stated in open court, Defendant's Motion Objecting to Magistrate Judge Order of October 14, 2021, [Dkt. No. 109] is DENIED, Defendant's Emergency Motion to Compel [Dkt. No. 101] is GRANTED IN PART and DENIED IN PART, and it is hereby ORDERED that defendant may re-depose plaintiff Aida Elzagally. The Motion is denied is denied in all other respects, and it is further ORDERED that the parties must comply with the following rules during all remaining depositions: first, if the parties reach an impasse during a line of questioning, they are to suspend pursuing that line of questioning and move on to a new topic to complete the deposition before they contact a magistrate judge; second, the only persons permitted in the room with a deponent other than counsel of record are a translator and, if technical issues arise, someone to provide technical support; and third, the parties can ask a deponent who they spoke with to prepare for a deposition, but they cannot ask about that person's location. Signed by District Judge Leonie M. Brinkema on 10/29/21. (yguy) . (Entered: 11/01/2021)

Main Doc

### 122

Nov 3, 2021

ORDERED that the three actions captioned above be and are reassigned to Magistrate Judge John F. Anderson for all discovery related matters. Signed by District Judge Leonie M. Brinkema on 11/03/2021. (jlan) (Entered: 11/03/2021)

Main Doc

### 123

Nov 4, 2021

ORDERED that all further conduct in these three captioned actions be and is STAYED until Libya's upcoming election has concluded, and the Court orders a lift of the stay. Signed by District Judge Leonie M. Brinkema on 11/04/2021. (jlan) (Entered: 11/04/2021)

[Main Doc](Main Doc)

|  |  |
|---|---|
| | 124 |

Nov 4, 2021

Redacted Document in re 123 Order. (jlan) (Entered: 11/04/2021)

Main Doc

|  |  |
|---|---|
| | 125 |

Mar 24, 2022

Joint MOTION to Lift Stay by Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli. (Attachments: # 1 Memorandum of Support, # 2 Exhibit, # 3 Exhibit, # 4 Notice of Hearing)(Gill, Faisal) (Entered: 03/24/2022)

Main Doc

Mar 25, 2022

Notice of Correction re 125 Joint MOTION to Lift Stay. The filing user has been notified to file the Memorandum in Support and the Notice of Hearing documents separately for each motion relief. (lber)

|  |  |
|---|---|
| | 126 |

Mar 28, 2022

Memorandum in Support re 125 Joint MOTION to Lift Stay filed by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Gill, Faisal) (Entered: 03/28/2022)

Main Doc

|  |  |
|---|---|
| | 127 |

Mar 28, 2022

Notice of Hearing Date set for 04/22/2022 re 125 Joint MOTION to Lift Stay (Gill, Faisal) (Entered: 03/28/2022)

Main Doc

Mar 28, 2022

Set Deadlines as to 125 Joint MOTION to Lift Stay . Motion Hearing set for 4/22/2022 at 10:00 AM in Alexandria Courtroom 701 before District Judge Leonie M. Brinkema. (clar, )

128

Apr 7, 2022

Opposition to 125 Joint MOTION to Lift Stay filed by Khalifa Hifter. (Greaves, Jason) (Entered: 04/07/2022)

Main Doc

129

Apr 22, 2022

Minute Entry for proceedings held before District Judge Leonie M. Brinkema:Motion Hearing held on 4/22/2022. Appearances of counsel. 125 Joint MOTION to Lift Stay is argued and GRANTED. Stay will be lifted in both cases.Court advised of status in both cases. Counsel directed to meet and confer and provide the Court by 4/29/22 with an update regarding any outstanding discovery issues, a proposed briefing schedule, and hearing date. (order to follow) (Court Reporter S. Austin.)(yguy) (Entered: 04/22/2022)

Main Doc

130

Apr 22, 2022

ORDER: For the reasons stated in open court, plaintiffs' Joint Motion to Lift Stay of Proceedings [Dkt. No. 125] is GRANTED. Accordingly, it is hereby ORDERED that the stay issued on November 3, 2021, is VACATED; and it is further ORDERED that by Friday, April 29, 2022, the parties file a status report that (1) informs the Court of any outstanding discovery issues, and (2) proposes a briefing schedule for any dispositive motions and a hearing date for those motions. Signed by District Judge Leonie M. Brinkema on 4/22/22. (yguy) (Entered: 04/22/2022)

Main Doc

131

Apr 25, 2022

TRANSCRIPT of proceedings held on 4/22/22, before Judge Leonie M. Brinkema, Court Reporter Stephanie Austin, Telephone number 571-298-1649. NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due

5/25/2022. Redacted Transcript Deadline set for 6/27/2022. Release of Transcript Restriction set for 7/25/2022.(Austin, Stephanie) (Entered: 04/25/2022)

Main Doc

132

Apr 29, 2022

STATUS REPORT (Joint) by Khalifa Hifter. (Greaves, Jason) (Entered: 04/29/2022)

Main Doc

133

Apr 29, 2022

ORDER in re 132 Joint Discovery Status Report. The Court approves the proposed briefing schedule except for the hearing date. ORDERED that the hearing for dispositive motions in this civil action, which the parties proposed would occur on Friday, August 5, 2022, be and is CONTINUED to 10:00 AM on Friday, August 12, 2022. Signed by District Judge Leonie M. Brinkema on 4/29/2022. (kgall) (Entered: 04/29/2022)

Main Doc

Apr 29, 2022

Set Hearing: Motion Hearing set for 8/12/2022 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (kgall)

134

Apr 29, 2022

MOTION for Protective Order for Discovery and Depositions by Khalifa Hifter. (Attachments: # 1 Proposed Order Protective Order)(Greaves, Jason) (Entered: 04/29/2022)

Main Doc

135

Apr 29, 2022

Notice of Hearing Date set for 05/06/2022 re 134 MOTION for Protective Order for Discovery and Depositions (Greaves, Jason) (Entered: 04/29/2022)

Main Doc

136

Apr 29, 2022

Memorandum in Support re 134 MOTION for Protective Order for Discovery and Depositions filed by Khalifa Hifter. (Greaves, Jason) (Entered: 04/29/2022)

Main Doc

Apr 29, 2022

Set Deadlines as to 134 MOTION for Protective Order for Discovery and Depositions. Motion Hearing set for 5/6/2022 at 10:00 AM in Alexandria Courtroom 501 before Magistrate Judge John F. Anderson. (clar, )

Apr 29, 2022

MOTIONS REFERRED to Magistrate Judge: Anderson. 134 MOTION for Protective Order for Discovery and Depositions (clar, )

137

May 4, 2022

Memorandum in Opposition re 134 MOTION for Protective Order for Discovery and Depositions (Joint) filed by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli. (Gill, Faisal) (Entered: 05/04/2022)

Main Doc

138

May 5, 2022

REPLY to Response to Motion re 134 MOTION for Protective Order for Discovery and Depositions filed by Khalifa Hifter. (Greaves, Jason) (Entered: 05/05/2022)

Main Doc

139

May 6, 2022

Minute Entry for proceedings held before Magistrate Judge John F. Anderson:Motion Hearing held on 5/6/2022 re 134 MOTION for Protective Order for Discovery and Depositions filed by Khalifa Hifter. Appearance of counsel for plaintiffs and defendant. Motion argued and 134 MOTION for Protective Order - GRANTED IN PART/DENIED IN PART. Order to follow. (Tape #FTR.)(wgar, ) (Entered: 05/06/2022)

Main Doc

140

May 6, 2022

ORDER, for the reasons stated during the hearing, granting in part and denying in part 134 Motion for Protective Order. Signed by Magistrate Judge John F. Anderson on 05/06/2022. (wgar, ) (Entered: 05/06/2022)

Main Doc

141

May 6, 2022

PROTECTIVE ORDER: Re Handling and Labeling of Confidential Information. Signed by Magistrate Judge John F. Anderson on 05/06/2022. SEE ORDER FOR FURTHER DETAILS. (wgar, ) (Entered: 05/06/2022)

Main Doc

142

May 27, 2022

MOTION to Withdraw as Attorney by Khalifa Hifter. (Attachments: # 1 Proposed Order Proposed Order)(Greaves, Jason) (Entered: 05/27/2022)

Main Doc

143

May 27, 2022

Memorandum in Support re 142 MOTION to Withdraw as Attorney filed by Khalifa Hifter. (Greaves, Jason) (Entered: 05/27/2022)

Main Doc

144

May 27, 2022

Notice of Hearing Date set for 06/10/2022 re 142 MOTION to Withdraw as Attorney (Greaves, Jason) (Entered: 05/27/2022)

Main Doc

145

May 27, 2022

MOTION for Default Judgment as to by Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Attachments: # 1 Memorandum of Law, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Notice of Hearing)(Gill, Faisal) (Entered: 05/27/2022)

Main Doc

May 27, 2022

Set Deadlines as to 145 MOTION for Default Judgment as to, 142 MOTION to Withdraw as Attorney . Motion Hearing set for 6/10/2022 at 10:00 AM in Alexandria Courtroom 501 before Magistrate Judge John F. Anderson. (clar, )

May 27, 2022

MOTIONS REFERRED to Magistrate Judge: Anderson. 145 MOTION for Default Judgment as to, 142 MOTION to Withdraw as Attorney (clar, )

146

Jun 3, 2022

Memorandum in Opposition re 145 MOTION for Default Judgment as to filed by Khalifa Hifter. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6)(Greaves, Jason) (Entered: 06/03/2022)

Main Doc

Att 1

Exhibit 1

($3.00)

Att 2

Exhibit 2

($3.00)

Att 3

Exhibit 3

($0.80)

Att 4

Exhibit 4

($2.40)

Att 5

Exhibit 5

($2.20)

Att 6

Exhibit 6

($1.30)

147

Jun 10, 2022

JA040

Minute Entry for proceedings held before Magistrate Judge John F. Anderson:Motion Hearing held on 6/10/2022 re 145 MOTION for Default Judgment as to filed by Muhammad Tunalli, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Ayah Tunalli, Alaa Tunalli, Aida Elzagally, 142 MOTION to Withdraw as Attorney filed by Khalifa Hifter. Appearance of counsel for plaintiffs and defendant. Motion argued and 142 MOTION to Withdraw as Attorney - held in abeyance; Order to follow. Report and Recommendation to Follow as to 145 MOTION for Default Judgment. (Tape #FTR.)(wgar, ) (Entered: 06/10/2022)

Main Doc

---

148

Jun 10, 2022

ORDER - ORDERED that The Binnall Law Group's motion to withdraw is held in abeyance. It is further ORDERED that Defendant Hifter shall provide The Binnall Law Group with a physical address where he can be served once counsel withdraws and he is proceeding pro se. It is further ORDERED that The Binnall Law Group shall file a certification that discloses defendant's physical address and that indicates that defendant was: (1) served with a copy of the Report and Recommendation on plaintiffs' motion for default judgment, (2) informed that he has fourteen days to file any objections, and (3) informed that no deadlines will be modified by counsel's withdrawal. Upon the filing of the above certification, the court will grant counsel's motion to withdraw. It is further ORDERED that no other deadlines will be modified by counsel's withdrawal in this case. Signed by Magistrate Judge John F. Anderson on 06/10/2022. (wgar, ) (Entered: 06/10/2022)

Main Doc

---

149

Jun 10, 2022

REPORT AND RECOMMENDATIONS in re 145 MOTION for Default Judgment filed by Muhammad Tunalli, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Ayah Tunalli, Alaa Tunalli, Aida Elzagally. Objections to R&R due by 6/24/2022. Signed by Magistrate Judge John F. Anderson on 6/10/2022. (kgall) (Entered: 06/10/2022)

Main Doc

---

150

Jun 24, 2022

Motion Re: Objections to Magistrate Judge's Ruling or Recommendation re 149 REPORT AND RECOMMENDATIONS re 145 MOTION for Default Judgment as to filed by Muhammad Tunalli, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Ayah Tunalli, Alaa Tunalli, Aida Elzagally by Khalifa Hifter. (Attachments: # 1 Proposed Order)(Greaves, Jason) (Entered: 06/24/2022)

Main Doc

Att 1

Proposed Order

($0.10)

151

Jun 24, 2022

Notice of Hearing Date set for 07/29/2022 re 150 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation re 149 REPORT AND RECOMMENDATIONS re 145 MOTION for Default Judgment as to filed by Muhammad Tunalli, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunall (Greaves, Jason) (Entered: 06/24/2022)

Main Doc

- About
- FAQ
- Sign in / Register

From Free Law Project, a 501(c)(3) non-profit.

- Case Law
- RECAP Archive
- Oral Arguments
- Judges
- Financial Disclosures

- Donate

Elzagally v. Hifter (1:19-cv-00853)

District Court, E.D. Virginia

Add Note
Tags

Get Alerts   Toggle Dropdown

View on PACER   Toggle Dropdown

Last Updated: July 5, 2024, 6:42 a.m.
Assigned To: Leonie M. Brinkema

Referred To: John F. Anderson
Citation: Elzagally v. Hifter, 1:19-cv-00853, (E.D. Va.)
Date Filed: June 26, 2019
Date Terminated: April 12, 2024
Date of Last Known Filing: May 13, 2024
Cause: 28:1331 Fed. Question: Wrongful Death
Nature of Suit: 890 Other Statutory Actions
Jury Demand: Plaintiff
Jurisdiction Type: Federal Question

- DOCKET ENTRIES (PAGE 2 OF 2)
- PARTIES AND ATTORNEYS
- FJC INTEGRATED DATABASE
- AUTHORITIES

| Search |
| --- |
| Filed |
| to |
| Documents |
| to |
|  Asc. Desc. |
| Filter |

Document Number

Date Filed
Description

| 152 |
| --- |

Jun 24, 2022

Memorandum in Support re 150 Motion Re: Objections to Magistrate Judge's Ruling or
Recommendation re 149 REPORT AND RECOMMENDATIONS re 145 MOTION for Default
Judgment as to filed by Muhammad Tunalli, Mais Ahmed Mayouf, Abduladeem Tunalli,
Abdulhameed Tunall filed by Khalifa Hifter. (Greaves, Jason) (Entered: 06/24/2022)

Main Doc

Jun 24, 2022

Set Deadlines as to 150 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation
re 149 REPORT AND RECOMMENDATIONS re 145 MOTION for Default Judgment as to
filed by Muhammad Tunalli, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunall.
Motion Hearing set for 7/29/2022 at 10:00 AM in Alexandria Courtroom 700 before District
Judge Leonie M. Brinkema. (clar, )

| 153 |
| --- |

Jul 8, 2022

Response to 152 Memorandum in Support, 150 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation re 149 REPORT AND RECOMMENDATIONS re 145 MOTION for Default Judgment as to filed by Muhammad Tunalli, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunall filed by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Gill, Faisal) (Entered: 07/08/2022)

Main Doc

154

Jul 15, 2022

REPLY to Response to Motion re 150 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation re 149 REPORT AND RECOMMENDATIONS re 145 MOTION for Default Judgment as to filed by Muhammad Tunalli, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunall filed by Khalifa Hifter. (Greaves, Jason) (Entered: 07/15/2022)

Main Doc

155

Jul 22, 2022

MOTION to Stay and to Take Judicial Notice by Khalifa Hifter. (Attachments: # 1 Proposed Order)(Greaves, Jason) (Entered: 07/22/2022)

Main Doc

156

Jul 22, 2022

Memorandum in Support re 155 MOTION to Stay and to Take Judicial Notice filed by Khalifa Hifter. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Greaves, Jason) (Entered: 07/22/2022)

Main Doc

Att 1

Exhibit

($0.20)

Att 2

Exhibit

($0.50)

Att 3

Exhibit

($0.10)

Att 4

Exhibit

($0.30)

|  | 157 |
|---|---|

Jul 22, 2022

Notice of Hearing Date set for 07/29/2022 re 155 MOTION to Stay and to Take Judicial Notice (Greaves, Jason) (Entered: 07/22/2022)

Main Doc

Jul 22, 2022

Set Deadlines as to 155 MOTION to Stay and to Take Judicial Notice. Motion Hearing set for 7/29/2022 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (clar, )

|  | 158 |
|---|---|

Jul 29, 2022

Minute Entry for proceedings held before District Judge Leonie M. Brinkema:Motion Hearing held on 7/29/2022. Appearances of counsel. Court advised of case status. 149 REPORT AND RECOMMENDATIONS re 145 MOTION for Default Judgment, 145 MOTION for Default Judgment, 155 MOTION to Stay and to Take Judicial Notice<, 150 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation re 149 REPORT AND RECOMMENDATIONS re 145 MOTION for Default Judgment are argued. #150 & #155 are DENIED, #149 Adopted;#142 is GRANTED, #145 GRANTED & HELD IN ABEYANCE. (order to follow) (Court Reporter S. Austin.)(yguy) (Entered: 07/29/2022)

Main Doc

|  | 159 |
|---|---|

Jul 29, 2022

(VACATED[245-MOTION FOR DEFAULT JUDGMENT] PER ORDER ENTERED ON 9/8/23)ORDER: For the reasons stated in open court, Defendant Hifter's Motion Objecting to Magistrate Judge Proposed Findings of Fact and Recommendations [Dkt. No. 150] and Motion to Take Judicial Notice and to Stay Proceedings [Dkt. No. 155] are DENIED, and the Magistrate Judge's Proposed Findings of Fact and Recommendations [Dkt. No. 149] are FULLY ADOPTED. Accordingly, it is hereby ORDERED that plaintiffs' Motion for Default Judgment [Dkt. No. 145] be and is GRANTED as to defendant's liability but HELD IN ABEYANCE as to damages; and it is further ORDERED that by close of business on Friday, September 9, 2022, plaintiffs in the three related civil actions submit one consolidated brief of no more than thirty (30) pages that, among other things discussed in open court, proposes a structure for the damages

hearing, identifies any witnesses who want to testify live, and suggests how non-live testimony should be presented; and it is further ORDERED that the Motion of Binnall Law Group to Withdraw as Counsel for Defendant Khalifa Hifter [Dkt. No. 142] be and is GRANTED once the Binnall Law Group has complied with the conditions for withdrawal specified in the Order dated June 10, 2022 [Dkt. No. 148]. (see order for details). Signed by District Judge Leonie M. Brinkema on 7/29/22. (yguy) Modified on 9/11/2023 (yguy). Text Modified on 9/21/2023 (dzir). (Entered: 07/29/2022)

Main Doc

---

160

Aug 26, 2022

TRANSCRIPT of proceedings held on 7/29/22, before Judge Leonie M. Brinkema, Court Reporter Stephanie Austin, Telephone number 571-298-1649. NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 9/26/2022. Redacted Transcript Deadline set for 10/26/2022. Release of Transcript Restriction set for 11/24/2022.(Austin, Stephanie) (Entered: 08/26/2022)

Main Doc

---

161

Sep 6, 2022

TRANSCRIPT of proceedings held on 6/10/22, before Judge John F. Anderson, Court Reporter Stephanie Austin, Telephone number 571-298-1649. NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 10/6/2022. Redacted Transcript Deadline set for 11/7/2022. Release of Transcript Restriction set for 12/5/2022.(Austin, Stephanie) (Entered: 09/06/2022)

Main Doc

---

163

Sep 7, 2022

TRANSCRIPT of proceedings held on 10/29/2021, before Judge Leonie M. Brinkema, Court Reporter/Transcriber Anneliese Thomson, Telephone number 703-629-3845. NOTICE RE

REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/7/2022. Redacted Transcript Deadline set for 11/7/2022. Release of Transcript Restriction set for 12/6/2022. (jlan) (Entered: 09/08/2022)

Main Doc

162

Sep 8, 2022

NOTICE of Appearance by Robert H. Cox on behalf of Khalifa Hifter (Cox, Robert) (Entered: 09/08/2022)

Main Doc

164

Sep 9, 2022

Joint MOTION Proposing Schedule and Structure for Trial to Establish Damages by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Gill, Faisal) (Entered: 09/09/2022)

Main Doc

165

Sep 13, 2022

MOTION to Set Aside Default by Khalifa Hifter. (Attachments: # 1 Memorandum in Support, # 2 Exhibit Exhibit 1, # 3 Exhibit Exhibit 2, # 4 Exhibit Exhibit 3, # 5 Exhibit Exhibit 4, # 6 Exhibit Exhibit 5, # 7 Proposed Order)(Cox, Robert) (Entered: 09/13/2022)

Main Doc

Att 1

Memorandum in Support

($2.80)

Att 2

Exhibit Exhibit 1

($0.40)

Att 3

Exhibit Exhibit 2

($0.20)

Att 4

Exhibit Exhibit 3

($0.30)

Att 5

Exhibit Exhibit 4

($0.40)

Att 6

Exhibit Exhibit 5

($0.70)

Att 7

Proposed Order

($0.20)

| 166 |
| --- |

Sep 13, 2022

Notice of Hearing Date October 7 2022 re 165 MOTION to Set Aside Default (Cox, Robert) (Entered: 09/13/2022)

Main Doc

Sep 14, 2022

Set Deadlines as to 165 MOTION to Set Aside Default . Motion Hearing set for 10/7/2022 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (dvanm)

| 167 |
| --- |

Sep 16, 2022

NOTICE by Khalifa Hifter re 148 Order,,, Certifying Compliance of Binnall Law Group with Order on Motion to Withdraw (Greaves, Jason) (Entered: 09/16/2022)

Main Doc

| 168 |
| --- |

Sep 16, 2022

ORDER: Defense counsel Binnall Law Group's Notice of Compliance with Court Order [Dkt. No. 167] shows good cause that the withdrawal requirements imposed on counsel have been satisfied. Accordingly, it is hereby ORDERED that the Motion ofBinnall Law Group to Withdraw as Counsel for Defendant Khalifa Hifter [Dkt. No. 142] IS GRANTED; and it is

further ORDERED that Jesse R. Binnall, Lindsay R. McKasson, Jason C. Greaves, and the Binnall Law Group's epresentation of the defendant be and is TERMINATED. Signed by District Judge Leonie M. Brinkema on 9/16/22. (yguy) (Entered: 09/16/2022)

Main Doc

|  |
| --- |
| 169 |

Sep 23, 2022

RESPONSE in Opposition re 164 Joint MOTION Proposing Schedule and Structure for Trial to Establish Damages filed by Khalifa Hifter. (Cox, Robert) (Entered: 09/23/2022)

Main Doc

|  |
| --- |
| 170 |

Sep 26, 2022

Opposition to 165 MOTION to Set Aside Default filed by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Gill, Faisal) (Entered: 09/26/2022)

Main Doc

|  |
| --- |
| 171 |

Sep 30, 2022

Joint MOTION for Leave to File Reply to Defendant Opposition to Joint Motion for Schedule and Structure for Trial on Damages by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Gill, Faisal) (Entered: 09/30/2022)

Main Doc

|  |
| --- |
| 172 |

Oct 3, 2022

REPLY to Response to Motion re 165 MOTION to Set Aside Default filed by Khalifa Hifter. (Cox, Robert) (Entered: 10/03/2022)

Main Doc

|  |
| --- |
| 173 |

Oct 7, 2022

TRANSCRIPT of proceedings held on 10/7/22, before Judge Leonie M. Brinkema, Court Reporter Stephanie Austin, Telephone number 571-298-1649. NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of

Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 11/7/2022. Redacted Transcript Deadline set for 12/7/2022. Release of Transcript Restriction set for 1/5/2023.(Austin, Stephanie) (Entered: 10/07/2022)

Main Doc

174

Oct 7, 2022

Minute Entry for proceedings held before District Judge Leonie M. Brinkema:Motion Hearing held on 10/7/2022.re 165 MOTION to Set Aside Default. Appearances of counsel. Court advised of case status. Court will vacate default if the following conditions are met: 1. Defendant appears for deposition; 2. Defendant reimburses counsel for fees and expenses related to missed deposition. (Court Reporter S. Austin.)(yguy) (Entered: 10/07/2022)

Main Doc

175

Oct 14, 2022

ORDER: For the reasons stated in open court, it is hereby ORDERED that Defendant's Motion to Set Aside the Default ("Motion") [Dkt. No. 165] be held in abeyance until the conclusion of defendant's scheduled deposition which is to begin on November 6, 2022 at 8:00 a.m. If the defendant does not appear for this deposition or if he does not answer questions in compliance with the Court's discovery orders, the Court will deny Defendant's Motion and proceed with the damages litigation. Signed by District Judge Leonie M. Brinkema on 10/14/22. (yguy) (Entered: 10/14/2022)

Main Doc

176

Oct 24, 2022

TRANSCRIPT of proceedings held on 5/6/22, before Judge John F. Anderson, Court Reporter Stephanie Austin, Telephone number 571-298-1649. NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 11/23/2022. Redacted Transcript Deadline set for 12/26/2022. Release of Transcript Restriction set for 1/23/2023.(Austin, Stephanie) (Entered: 10/24/2022)

Main Doc

177

Mar 20, 2023

Joint MOTION to Compel by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Attachments: # 1 Notice of Hearing)(Gill, Faisal) (Entered: 03/20/2023)

Main Doc

178

Mar 23, 2023

Notice of Hearing Date set for April 21, 2023 10:00am re 177 Joint MOTION to Compel (Gill, Faisal) (Entered: 03/23/2023)

Main Doc

Mar 23, 2023

Set Deadline as to 177 Joint MOTION to Compel. Motion Hearing set for 4/21/2023 at 10:00 AM in Alexandria Courtroom 501 before Magistrate Judge John F. Anderson. (wgar, )

179

Mar 24, 2023

ORDERED that the hearing on plaintiffs' joint motion to compel be moved to Friday, April 14, 2023, at 10:00 a.m. Defendant shall file an opposition to plaintiffs' motion by 5:00 p.m. on Monday, April 3, 2023, and plaintiffs shall file any reply by 5:00 p.m. on Monday, April 10, 2023. Signed by Magistrate Judge John F. Anderson on 03/23/2023. (wgar, ) (Entered: 03/24/2023)

Main Doc

Mar 24, 2023

Reset Deadlines as to 177 Joint MOTION to Compel. Motion Hearing reset for 4/14/2023 at 10:00 AM in Alexandria Courtroom 501 before Magistrate Judge John F. Anderson. (wgar, )

180

Mar 27, 2023

Consent MOTION to Continue Hearing for Motion to Compel 177 by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Attachments: # 1 Proposed Order)(Gill, Faisal) (Entered: 03/27/2023)

Main Doc

### 181

Mar 27, 2023

ORDER - For good reason set forth in Plaintiffs' Motion to Continue the Hearing Date for their Motion to Compel Defendant to Appear for Further Deposition Testimony, this Court GRANTS Plaintiffs' Motion to Continue and sets the hearing date for May 5, 2023 at 10:00 AM. Signed by Magistrate Judge John F. Anderson on 3/27/2023. (lgue, ) (Entered: 03/27/2023)

Main Doc

Mar 27, 2023

Reset Deadlines as to 177 Joint MOTION to Compel . Motion Hearing reset for 5/5/2023 at 10:00 AM in Alexandria Courtroom 501 before Magistrate Judge John F. Anderson. (lgue, )

### 182

Mar 28, 2023

Consent MOTION to Continue and Revise Briefing Schedule for Plaintiffs' Motion to Compel by Khalifa Hifter. (Attachments: # 1 Proposed Order)(Cox, Robert) (Entered: 03/28/2023)

Main Doc

### 183

Mar 28, 2023

ORDER - For the reasons set forth in Defendant's Unopposed Motion to Revise Briefing Schedule for Plaintiffs' Motion to Compel, this Court GRANTS Defendant's Motion to Revise the Briefing Schedule. It is hereby ORDERED that the briefing schedule for Plaintiffs' Motion to Compel is revised as follows: Defendant shall file an opposition to Plaintiffs' Motion to Compel by 5:00 p.m. on Monday, April 17, 2023, and Plaintiffs shall file any reply by 5:00 p.m. on Monday, April 24, 2023, at 5:00 p.m. Signed by Magistrate Judge John F. Anderson on 3/28/2023. (lgue, ) (Entered: 03/29/2023)

Main Doc

### 184

Apr 17, 2023

MOTION for Protective Order by Khalifa Hifter. (Attachments: # 1 Proposed Order)(Cox, Robert) (Entered: 04/17/2023)

Main Doc

### 185

JA052

Apr 17, 2023

Memorandum in Opposition re 177 Joint MOTION to Compel and in Support of Defendant's Motion for Protective Order filed by Khalifa Hifter. (Cox, Robert) (Entered: 04/17/2023)

Main Doc

186

Apr 17, 2023

Memorandum in Opposition re 177 Joint MOTION to Compel, 184 MOTION for Protective Order filed by Khalifa Hifter. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E, # 6 Exhibit Exhibit F, # 7 Proposed Order)(Cox, Robert) (Entered: 04/17/2023)

Main Doc

Att 4

187

Apr 17, 2023

MOTION to Seal Exhibit A to Memorandum in Opposition to Joint Plaintiffs' Motion to Compel and in Support of Defendant's Motion for Protective Order by Khalifa Hifter. (Attachments: # 1 Proposed Order)(Cox, Robert) (Entered: 04/17/2023)

Main Doc

188

Apr 17, 2023

Notice of Filing Sealing Motion LCvR5(C) by Khalifa Hifter re 187 MOTION to Seal Exhibit A to Memorandum in Opposition to Joint Plaintiffs' Motion to Compel and in Support of Defendant's Motion for Protective Order (Cox, Robert) (Entered: 04/17/2023)

Main Doc

189

Apr 17, 2023

Memorandum in Support re 187 MOTION to Seal Exhibit A to Memorandum in Opposition to Joint Plaintiffs' Motion to Compel and in Support of Defendant's Motion for Protective Order filed by Khalifa Hifter. (Attachments: # 1 Exhibit Exhibit A)(Cox, Robert) (Entered: 04/17/2023)

Main Doc

190

Apr 17, 2023

Sealed Attachment/Exhibit(s) re 188 Notice of Filing Sealing Motion LCvR5(C), 187 MOTION to Seal Exhibit A to Memorandum in Opposition to Joint Plaintiffs' Motion to Compel and in Support of Defendant's Motion for Protective Order, 189 Memorandum in Support,. (Cox, Robert) (Entered: 04/17/2023)

Main Doc

191

Apr 18, 2023

Notice of Hearing Date set for 05/05/2023 re 184 MOTION for Protective Order (Cox, Robert) (Entered: 04/18/2023)

Main Doc

Apr 19, 2023

Set Deadline as to 184 MOTION for Protective Order. Motion Hearing set for 5/5/2023 at 10:00 AM in Alexandria Courtroom 501 before Magistrate Judge John F. Anderson. (wgar, )

192

Apr 24, 2023

Consent MOTION for Extension of Time to File Response/Reply as to 191 Notice of Hearing Date, 177 Joint MOTION to Compel, 186 Memorandum in Opposition, 185 Memorandum in Opposition, 184 MOTION for Protective Order by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Gill, Faisal) (Entered: 04/24/2023)

Main Doc

193

Apr 25, 2023

ORDERED that the motion to modify briefing schedule is granted. Plaintiffs shall file a joint response to the cross-motion for protective order and reply in support of the motion to compel by April 27, 2023. Defendant shall file a reply in support of the cross-motion for protective order by May 3, 2023. Signed by Magistrate Judge John F. Anderson on 04/25/2023. (jlan) Modified text on 4/25/2023 (jlan) (Entered: 04/25/2023)

Main Doc

194

Apr 27, 2023

REPLY to Response to Motion re 177 Joint MOTION to Compel, 184 MOTION for Protective Order filed by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem

Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Attachments: # 1 Exhibit)(Gill, Faisal) (Entered: 04/27/2023)

Main Doc

Att 1

Exhibit

($0.10)

| 195 |
|---|

Apr 27, 2023

MOTION to Seal Exhibit A of Plaintiffs' Joint Reply in Support of Motion to Compel by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Gill, Faisal) (Entered: 04/27/2023)

Main Doc

| 196 |
|---|

Apr 27, 2023

Memorandum in Support re 195 MOTION to Seal Exhibit A of Plaintiffs' Joint Reply in Support of Motion to Compel filed by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Gill, Faisal) (Entered: 04/27/2023)

Main Doc

| 197 |
|---|

Apr 27, 2023

Sealed Attachment/Exhibit(s) re 195 MOTION to Seal Exhibit A of Plaintiffs' Joint Reply in Support of Motion to Compel, 194 Reply to Response to Motion,. (Gill, Faisal) (Entered: 04/27/2023)

Main Doc

| 198 |
|---|

Apr 27, 2023

Notice of Filing Sealing Motion LCvR5(C) by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli re 195 MOTION to Seal Exhibit A of Plaintiffs' Joint Reply in Support of Motion to Compel (Gill, Faisal) (Entered: 04/27/2023)

Main Doc

199

May 3, 2023

ORDERED that the motions to seal are granted and the exhibits containing the deposition testimony of defendant will remain under seal until further order of this court (see Order for further details). Signed by Magistrate Judge John F. Anderson on 5/3/2023. (nlop) (Entered: 05/03/2023)

Main Doc

200

May 3, 2023

REPLY to Response to Motion re 184 MOTION for Protective Order filed by Khalifa Hifter. (Cox, Robert) (Entered: 05/03/2023)

Main Doc

201

May 5, 2023

Minute Entry for proceedings held before Magistrate Judge John F. Anderson:Motion Hearing held on 5/5/2023 re 177 Joint MOTION to Compel filed by Muhammad Tunalli, Mais Ahmed Mayouf, Abdulhameed Al-Harramah, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Abduladeem Tunalli, Ayah Tunalli, Aida Elzagally, 184 MOTION for Protective Order filed by Khalifa Hifter. Appearance of counsel for plaintiffs and defendant. Motions argued and 177 Joint MOTION to Compel - GRANTED IN PART/DENIED IN PART; 184 MOTION for Protective Order - DENIED. Order to follow. (Tape #FTR.)(wgar, ) (Entered: 05/05/2023)

Main Doc

202

May 5, 2023

ORDER, for the reasons stated from the bench, granting in part and denying in part 177 Motion to Compel; denying 184 Motion for Protective Order. Signed by Magistrate Judge John F. Anderson on 05/05/2023. (wgar, ) (Entered: 05/05/2023)

Main Doc

203

May 9, 2023

TRANSCRIPT of proceedings held on 5/5/23, before Judge John F. Anderson, Court Reporter/Transcriber Stephanie Austin, Telephone number 571-298-1649. NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the

Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 6/8/2023. Redacted Transcript Deadline set for 7/10/2023. Release of Transcript Restriction set for 8/7/2023.(Austin, Stephanie) (Entered: 05/09/2023)

Main Doc

204

Jun 2, 2023

MOTION Precluding Defendant from Invoking State Secret Privilege by Aida Elzagally. (Gill, Faisal) (Entered: 06/02/2023)

Main Doc

205

Jun 2, 2023

Memorandum in Support re 204 MOTION Precluding Defendant from Invoking State Secret Privilege filed by Aida Elzagally. (Gill, Faisal) (Entered: 06/02/2023)

Main Doc

206

Jun 2, 2023

Notice of Hearing Date re 204 MOTION Precluding Defendant from Invoking State Secret Privilege, 205 Memorandum in Support (Gill, Faisal) (Entered: 06/02/2023)

Main Doc

Jun 5, 2023

Set Deadline as to 204 MOTION Precluding Defendant from Invoking State Secret Privilege. Motion Hearing set for 6/9/2023 at 10:00 AM in Alexandria Courtroom 501 before Magistrate Judge John F. Anderson. (wgar, )

207

Jun 7, 2023

Opposition to 204 MOTION Precluding Defendant from Invoking State Secret Privilege, 205 Memorandum in Support filed by Khalifa Hifter. (Attachments: # 1 Exhibit, # 2 Exhibit)(Cox, Robert) (Entered: 06/07/2023)

Main Doc

### 208

Jun 8, 2023

NOTICE of Appearance by Madison Beatty on behalf of Khalifa Hifter (Beatty, Madison) (Entered: 06/08/2023)

Main Doc

### 209

Jun 8, 2023

AFFIDAVIT in Opposition re 204 MOTION Precluding Defendant from Invoking State Secret Privilege filed by Khalifa Hifter. (Attachments: # 1 Exhibit Letter)(Beatty, Madison) (Entered: 06/08/2023)

Main Doc

### 210

Jun 9, 2023

Minute Entry for proceedings held before Magistrate Judge John F. Anderson:Motion Hearing held on 6/9/2023 re 204 MOTION Precluding Defendant from Invoking State Secret Privilege filed by Aida Elzagally. Appearance of counsel for plaintiffs and defendant. Motion argued and 204 MOTION Precluding Defendant from Invoking State Secret Privilege - GRANTED. Order to follow. (Tape #FTR.)(wgar, ) (Entered: 06/09/2023)

Main Doc

### 211

Jun 9, 2023

ORDER granting 204 Motion Precluding Defendant from Invoking State Secret Privilege. ORDERED that the issue of the availability of the state secret privilege and comity has previously been fully addressed and decided by both then Magistrate Judge Nachmanoff and District Judge Brinkema in this case. Signed by Magistrate Judge John F. Anderson on 06/09/2023. (wgar, ) (Entered: 06/09/2023)

Main Doc

### 212

Jun 13, 2023

TRANSCRIPT of motions hearing held on 6-9-23, before Judge John F. Anderson, Court Reporter Stephanie Austin, Telephone number 571-298-1649. NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be

made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 7/13/2023. Redacted Transcript Deadline set for 8/14/2023. Release of Transcript Restriction set for 9/11/2023.(Austin, Stephanie) (Entered: 06/13/2023)

Main Doc

### 213

Jun 23, 2023

Motion Re: Objections to Magistrate Judge's Ruling or Recommendation re 211 Order on Motion for Miscellaneous Relief, 207 Opposition by Khalifa Hifter. (Attachments: # 1 Proposed Order Proposed Order)(Beatty, Madison) (Entered: 06/23/2023)

Main Doc

### 214

Jun 23, 2023

Memorandum in Support re 213 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation re 211 Order on Motion for Miscellaneous Relief, 207 Opposition filed by Khalifa Hifter. (Attachments: # 1 Exhibit)(Beatty, Madison) (Entered: 06/23/2023)

Main Doc

Att 1

Exhibit

($0.30)

### 215

Jun 23, 2023

Request for Hearing by Khalifa Hifter re 211 Order on Motion for Miscellaneous Relief, 213 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation re 211 Order on Motion for Miscellaneous Relief, 207 Opposition, 207 Opposition, 214 Memorandum in Support, (Beatty, Madison) (Entered: 06/23/2023)

Main Doc

### 216

Jun 26, 2023

ORDER:A hearing has been noticed on defendant's Motion Objecting to Magistrate Judge's Order on June 9,2023, Pursuant to Fed. R. Civ. P. 72 lElzagallv. Dkt. No. 213] for Friday, July 21,2023 at 10:00 a.m.; however, due to a scheduling conflict, it is necessary to reschedule the

date of the hearing. Accordingly, it is hereby ORDERED that defendant re-notice the hearing for either Thursday, August 3, 2023 at 9:00 a.m. or Friday, August 4, 2023 at 10:00 a.m.. Signed by District Judge Leonie M. Brinkema on 6/26/23. (yguy) (Entered: 06/26/2023)

Main Doc

217

Jun 28, 2023

Notice of Hearing Date set for August 4, 2023 re 213 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation re 211 Order on Motion for Miscellaneous Relief, 207 Opposition, 214 Memorandum in Support, (Cox, Robert) (Entered: 06/28/2023)

Main Doc

Jun 29, 2023

Set Deadline as to 213 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation re 211 Order on Motion for Miscellaneous Relief, 207 Opposition. Motion Hearing set for 8/4/2023 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (wgar, )

218

Jul 13, 2023

Memorandum in Opposition re 213 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation re 211 Order on Motion for Miscellaneous Relief, 207 Opposition filed by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Gill, Faisal) (Entered: 07/13/2023)

Main Doc

219

Jul 18, 2023

Consent MOTION to Continue August 4, 2023 Hearing Date on Defendant's Objections by Khalifa Hifter. (Cox, Robert) (Entered: 07/18/2023)

Main Doc

220

Jul 18, 2023

MOTION for Reconsideration re 121 Order on Motion to Compel,,,,, Order on Motion Re: Objections to Magistrate Judge's Ruling or Recommendation,,,, by Khalifa Hifter. (Attachments: # 1 Memorandum in Support, # 2 Exhibit Exhibit A, # 3 Exhibit Exhibit B, # 4 Proposed Order Proposed Order)(Cox, Robert) (Entered: 07/18/2023)

Main Doc

| 221 |
| --- |

Jul 18, 2023

Notice of Hearing Date re 220 MOTION for Reconsideration re 121 Order on Motion to Compel,,,,, Order on Motion Re: Objections to Magistrate Judge's Ruling or Recommendation,,,, (Cox, Robert) (Entered: 07/18/2023)

Main Doc

| 222 |
| --- |

Jul 19, 2023

ORDER granting 219 Motion to Continue (see order for details). Signed by District Judge Leonie M. Brinkema on 07/19/23. (yguy) (Entered: 07/19/2023)

Main Doc

Jul 19, 2023

Set/Reset Deadlines as to 213 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation re 211 Order on Motion for Miscellaneous Relief, 207 Opposition, 220 MOTION for Reconsideration re 121 Order on Motion to Compel,,,,, Order on Motion Re: Objections to Magistrate Judge's Ruling or Recommendation,,,, . Motion Hearing RESCHEDULED For 9/8/2023 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (yguy)

| 223 |
| --- |

Jul 19, 2023

REPLY to Response to Motion re 213 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation re 211 Order on Motion for Miscellaneous Relief, 207 Opposition filed by Khalifa Hifter. (Cox, Robert) (Entered: 07/19/2023)

Main Doc

| 224 |
| --- |

Aug 1, 2023

Memorandum in Opposition re 220 MOTION for Reconsideration re 121 Order on Motion to Compel,,,,, Order on Motion Re: Objections to Magistrate Judge's Ruling or Recommendation,,,, filed by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Gill, Faisal) (Entered: 08/01/2023)

Main Doc

225

Aug 7, 2023

REPLY to Response to Motion re 220 MOTION for Reconsideration re 121 Order on Motion to Compel,,,,, Order on Motion Re: Objections to Magistrate Judge's Ruling or Recommendation,,,, filed by Khalifa Hifter. (Cox, Robert) (Entered: 08/07/2023)

Main Doc

226

Sep 8, 2023

Minute Entry for proceedings held before District Judge Leonie M. Brinkema: Motion Hearing held on 9/8/2023. Appearances of counsel. Plaintiffs' 164 Joint MOTION Proposing Schedule and Structure for Trial to Establish Damages, Plaintiffs' 171 Joint MOTION for Leave to File Reply to Defendant Opposition to Joint Motion for Schedule and Structure for Trial on Damages defendants 213 Motion Re: Objections to Magistrate Judge's Ruling or Recommendation. 211 Order on Motion for Miscellaneous Relief, 207 Opposition filed by Khalifa Hifter, 165 Defendant's MOTION to Set Aside Default, Defendant's 220 MOTION for Reconsideration re 121 Order on Motion to Compel Order on Motion Re: Objections to Magistrate Judge's Ruling or Recommendation filed by Khalifa Hifter. Motions argued and #165 is GRANTED. #164, #171, #213, #220 are DENIED.(order to follow). (Court Reporter S. Austin.)(yguy) (Entered: 09/11/2023)

Main Doc

227

Sep 8, 2023

ORDER: For the reasons stated in open court, the Plaintiffs' Joint Motion Proposing Schedule and Structure of Trial to Establish Damages [Dkt. No. 164], Plaintiffs' Motion for Leave to File Reply to Defendant's Opposition to Joint Motion for Schedule and Structure for Trial on Damages [Dkt. No. 171, Defendant's Objections to Magistrate Judge's Ruling [Dkt. No. 213], and Defendant's Motion for Reconsideration of lnvoking the State Secrets Privilege [Dkt. No. 220 are DENIED; Defendant's Motion to Set Aside Default [Dkt.No.165] is GRANTED; and it is hereby ORDERED that the default entered on July 29, 2022 be and is VACATED. Signed by District Judge Leonie M. Brinkema on 9/8/23. (yguy) (Entered: 09/11/2023)

Main Doc

228

Sep 11, 2023

TRANSCRIPT of hearing held on 9-8-23, before Judge Leonie M. Brinkema, Court Reporter Stephanie Austin, Telephone number 571-298-1649. NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be

made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 10/11/2023. Redacted Transcript Deadline set for 11/13/2023. Release of Transcript Restriction set for 12/11/2023.(Austin, Stephanie) (Entered: 09/11/2023)

Main Doc

229

Oct 20, 2023

MOTION Modify the Scheduling Order Under Rule 16 by Khalifa Hifter. (Attachments: # 1 Memorandum in Support, # 2 Proposed Order)(Cox, Robert) (Entered: 10/20/2023)

Main Doc

230

Oct 20, 2023

Notice of Hearing Date re 229 MOTION Modify the Scheduling Order Under Rule 16 (Cox, Robert) (Entered: 10/20/2023)

Main Doc

Oct 23, 2023

Set Deadline as to 229 MOTION Modify the Scheduling Order Under Rule 16. Motion Hearing set for 11/17/2023 at 10:00 AM in Alexandria Courtroom 501 before Magistrate Judge John F. Anderson. (wgar, )

231

Nov 3, 2023

Memorandum in Opposition re 229 MOTION Modify the Scheduling Order Under Rule 16 filed by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Gill, Faisal) (Entered: 11/03/2023)

Main Doc

232

Nov 9, 2023

REPLY to Response to Motion re 229 MOTION Modify the Scheduling Order Under Rule 16 filed by Khalifa Hifter. (Cox, Robert) (Entered: 11/09/2023)

Main Doc

JA063

233

Nov 17, 2023

Minute Entry for proceedings held before Magistrate Judge John F. Anderson:Motion Hearing held on 11/17/2023 re 229 MOTION Modify the Scheduling Order Under Rule 16. Pltf appeared through Faisal Gill. Deft appeared through Robert Cox. Motion was argued, and Granted in Part and Denied in Part. Order to follow. (Tape #FTR.)(Dcrow, ) (Entered: 11/17/2023)

Main Doc

234

Nov 17, 2023

ORDERED that defendant's motion is granted in part and denied in part for the reasons stated from the bench. Defendant's request for late designation of expert witnesses is denied. Defendant's request to take depositions of plaintiff Nehma Abdalla Al-Mahdi Hamza and plaintiff Aida Elzagally is granted. Discovery will be re-opened for a period of 60 days and is limited solely to defendant's deposing of these two plaintiffs. Signed by Magistrate Judge John F. Anderson on 11/17/2023. (Dcrow, ) (Main Document 234 replaced on 11/17/2023) (Dcrow, ). (Entered: 11/17/2023)

Main Doc

235

Jan 12, 2024

ORDERED that defendant's motion, in re: civil action number 1:20-cv-1038. (Docket no. 209), is granted in part and denied in part for the reasons stated from the bench (SEE ORDER FOR FURTHER DETAILS). Signed by Magistrate Judge John F. Anderson on 1/12/2024. (Dcrow, ) (Entered: 01/12/2024)

Main Doc

236

Feb 15, 2024

TRANSCRIPT of proceedings held on 11-17-23, before Judge John F. Anderson, Court Reporter/Transcriber Stephanie Austin, Telephone number 571-298-1649. NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 3/18/2024. Redacted Transcript Deadline set for 4/16/2024. Release of Transcript Restriction set for 5/15/2024.(Austin, Stephanie) (Entered: 02/15/2024)

Main Doc

---

### 237

Feb 23, 2024

Notice of Filing Sealing Motion LCvR5(C) by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli (Gill, Faisal) (Entered: 02/23/2024)

Main Doc

---

### 238

Feb 23, 2024

MOTION to Seal Memorandum and Exhibits by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Gill, Faisal) (Entered: 02/23/2024)

Main Doc

---

### 239

Feb 23, 2024

Memorandum in Support re 238 MOTION to Seal Memorandum and Exhibits filed by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Gill, Faisal) (Entered: 02/23/2024)

Main Doc

---

### 240

Feb 23, 2024

MOTION for Summary Judgment by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Gill, Faisal) (Entered: 02/23/2024)

Main Doc

---

### 241

Feb 23, 2024

Notice of Filing Sealing Motion LCvR5(C) by Khalifa Hifter (Beatty, Madison) (Entered: 02/23/2024)

Main Doc

---

242

Feb 23, 2024

MOTION to Seal Memorandum and Exhibits by Khalifa Hifter. (Attachments: # 1 Proposed Order)(Beatty, Madison) (Entered: 02/23/2024)

Main Doc

243

Feb 23, 2024

Memorandum in Support re 242 MOTION to Seal Memorandum and Exhibits filed by Khalifa Hifter. (Beatty, Madison) (Entered: 02/23/2024)

Main Doc

244

Feb 23, 2024

MOTION for Summary Judgment by Khalifa Hifter. (Attachments: # 1 Proposed Order)(Beatty, Madison) (Entered: 02/23/2024)

Main Doc

245

Feb 23, 2024

Memorandum in Support re 244 MOTION for Summary Judgment filed by Khalifa Hifter. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit)(Beatty, Madison) (Entered: 02/23/2024)

Main Doc

246

Feb 23, 2024

Sealed Memorandum in Support re 245 Memorandum in Support,. (Gill, Faisal) (Entered: 02/23/2024)

Main Doc

247

Feb 23, 2024

Sealed Memorandum in Support re 245 Memorandum in Support, 242 MOTION to Seal Memorandum and Exhibits, 243 Memorandum in Support, 244 MOTION for Summary

Judgment . (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Beatty, Madison) (Entered: 02/23/2024)

Main Doc

| 248 |
|---|

Feb 23, 2024

Sealed Attachment/Exhibit(s) re 247 Sealed Memorandum in Support,. (Attachments: # 1 Exhibit, # 2 Exhibit)(Gill, Faisal) (Entered: 02/23/2024)

Main Doc

| 249 |
|---|

Feb 24, 2024

Memorandum in Support re 240 MOTION for Summary Judgment filed by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit)(Gill, Faisal) (Entered: 02/24/2024)

Main Doc

| 250 |
|---|

Feb 24, 2024

EXHIBIT 7 by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli.. (Gill, Faisal) (Entered: 02/24/2024)

Main Doc

| 251 |
|---|

Feb 24, 2024

EXHIBIT 8A by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli.. (Gill, Faisal) (Entered: 02/24/2024)

Main Doc

| 252 |
|---|

Feb 24, 2024

EXHIBIT 8B(1) by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli.. (Gill, Faisal) (Entered: 02/24/2024)

Main Doc

---

253

Feb 24, 2024

EXHIBIT Proposed Order by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli.. (Gill, Faisal) (Entered: 02/24/2024)

Main Doc

---

254

Feb 24, 2024

EXHIBIT Proposed Order by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli.. (Gill, Faisal) (Entered: 02/24/2024)

Main Doc

---

255

Feb 24, 2024

EXHIBIT 8 by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli.. (Gill, Faisal) (Entered: 02/24/2024)

Main Doc

---

256

Feb 25, 2024

Notice of Hearing Date re 245 Memorandum in Support, 247 Sealed Memorandum in Support, 244 MOTION for Summary Judgment (Beatty, Madison) (Entered: 02/25/2024)

Main Doc

---

Feb 26, 2024

Set Deadline as to 244 MOTION for Summary Judgment. Motion Hearing set for 4/12/2024 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (wgar, )

257

Feb 26, 2024

Notice of Hearing Date set for 04/12/2024 re 246 Sealed Memorandum in Support, 249 Memorandum in Support, (Gill, Faisal) (Entered: 02/26/2024)

Main Doc

Feb 28, 2024

Set Deadline as to 240 MOTION for Summary Judgment. Motion Hearing set for 4/12/2024 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (wgar, )

258

Mar 1, 2024

Opposition to 242 MOTION to Seal Memorandum and Exhibits, 243 Memorandum in Support filed by Abdulhameed Al-Harramah, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Attachments: # 1 Proposed Order)(Gill, Faisal) (Entered: 03/01/2024)

Main Doc

259

Mar 4, 2024

MOTION for Leave to File a Response to Plaintiffs' Motion to Seal by Khalifa Hifter. (Attachments: # 1 Proposed Order)(Beatty, Madison) (Entered: 03/04/2024)

Main Doc

260

Mar 4, 2024

Memorandum in Response to 259 MOTION for Leave to File a Response to Plaintiffs' Motion to Seal, 238 MOTION to Seal Memorandum and Exhibits filed by Khalifa Hifter. (Attachments: # 1 Proposed Order)(Beatty, Madison) (Entered: 03/04/2024)

Main Doc

261

Mar 4, 2024

ORDERED that Defendant may file a response to Plaintiffs' Motion to Seal (ECF No.238) by March 4, 2024. Signed by District Judge Leonie M. Brinkema on 3/4/2024. (Sbro) (Entered: 03/05/2024)

Main Doc

262

Mar 22, 2024

Sealed Response/Reply/Opposition re 247 Sealed Memorandum in Support,. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit)(Gill, Faisal) (Entered: 03/22/2024)

Main Doc

| 263 |
| --- |

Mar 22, 2024

MOTION for Leave to File Memorandum of Support Under Seal by Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Attachments: # 1 Supplement Notice, # 2 Proposed Order)(Gill, Faisal) (Entered: 03/22/2024)

Main Doc

| 264 |
| --- |

Mar 22, 2024

Memorandum in Opposition re 244 MOTION for Summary Judgment filed by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit)(Gill, Faisal) (Entered: 03/22/2024)

Main Doc

| 265 |
| --- |

Mar 22, 2024

Notice of Filing Sealing Motion LCvR5(C) by Khalifa Hifter (Beatty, Madison) (Entered: 03/22/2024)

Main Doc

| 266 |
| --- |

Mar 22, 2024

MOTION to Seal Defendant's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment by Khalifa Hifter. (Attachments: # 1 Proposed Order)(Beatty, Madison) (Entered: 03/22/2024)

Main Doc

| 267 |
| --- |

Mar 22, 2024

Memorandum in Support re 266 MOTION to Seal Defendant's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment filed by Khalifa Hifter. (Beatty, Madison) (Entered: 03/22/2024)

Main Doc

|     |
| --- |
| 268 |

Mar 22, 2024

Memorandum in Opposition re 240 MOTION for Summary Judgment filed by Khalifa Hifter. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Proposed Order)(Beatty, Madison) (Entered: 03/22/2024)

Main Doc

|     |
| --- |
| 269 |

Mar 22, 2024

Sealed Response/Reply/Opposition re 240 MOTION for Summary Judgment, 268 Memorandum in Opposition. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Beatty, Madison) (Entered: 03/22/2024)

Main Doc

|     |
| --- |
| 270 |

Mar 22, 2024

EXHIBIT Corrected Exhbits 2A & 15 by Aida Elzagally, Mais Ahmed Mayouf, Abuladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli.. (Attachments: # 1 Exhibit)(Gill, Faisal) (Entered: 03/22/2024)

Main Doc

|     |
| --- |
| 271 |

Mar 22, 2024

Sealed Attachment/Exhibit(s) re 262 Sealed Response/Reply/Opposition. (Attachments: # 1 Exhibit)(Gill, Faisal) (Entered: 03/22/2024)

Main Doc

|     |
| --- |
| 272 |

Mar 27, 2024

It is hereby ORDERED that in civil action 1: 19-cv-853 plaintiffs' Motion to Seal Memorandum and Exhibits, [Dkt. No. 238]; defendant's Motion to Seal Memorandum and Exhibits, [Dkt. No. 242]; plaintiffs' Motion for Leave to File Memorandum of Support Under Seal, [Dkt. No. 263];

and defendant's Motion to Seal Memorandum in Opposition, [Dkt. No. 266], be and are GRANTED (See Order for further details). Signed by District Judge Leonie M. Brinkema on 3/27/2024. (Sbro) (Entered: 03/27/2024)

Main Doc

| 273 |
| --- |

Apr 4, 2024

Sealed Memorandum in Support re 269 Sealed Response/Reply/Opposition. (Gill, Faisal) (Entered: 04/04/2024)

Main Doc

| 274 |
| --- |

Apr 4, 2024

Reply to 268 Memorandum in Opposition to Defendant's Response filed by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Gill, Faisal) (Entered: 04/04/2024)

Main Doc

| 275 |
| --- |

Apr 4, 2024

MOTION for Leave to File Reply Brief Under Seal by Abdulhameed Al-Harramah, Aida Elzagally, Mais Ahmed Mayouf, Abduladeem Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Ayah Tunalli, Muhammad Tunalli. (Attachments: # 1 Notice of Motion for Leave, # 2 Proposed Order)(Gill, Faisal) (Entered: 04/04/2024)

Main Doc

| 276 |
| --- |

Apr 4, 2024

REPLY to Response to Motion re 244 MOTION for Summary Judgment filed by Khalifa Hifter. (Beatty, Madison) (Entered: 04/04/2024)

Main Doc

| 277 |
| --- |

Apr 5, 2024

It is hereby: ORDERED that Plaintiff's Motion for Leave to File Under Seal is GRANTED re 275 Motion for Leave to File. Signed by District Judge Leonie M. Brinkema on 4/5/2024. (Sbro, ) (Entered: 04/05/2024)

Main Doc

### 278

Apr 11, 2024

NOTICE of Appearance by James W. Hundley on behalf of Khalifa Hifter (Hundley, James) (Entered: 04/11/2024)

Main Doc

### 279

Apr 12, 2024

Minute Entry for proceedings held before District Judge Leonie M. Brinkema: Motion Hearing held on 4/12/2024 re 240 MOTION for Summary Judgment filed by Muhammad Tunalli, Mais Ahmed Mayouf, Abdulhameed Al-Harramah, Abdulhameed Tunalli, Abdulrrauf Tunalli, Alaa Tunalli, Abduladeem Tunalli, Ayah Tunalli, Aida Elzagally, and 244 MOTION for Summary Judgment filed by Khalifa Hifter. Counsel appeared for Plaintiffs and Defendant. Motions argued and Defendant's Motion for Summary Judgment 244 is granted in part/denied in part. Plaintiff's Motion for Summary Judgment 240 is denied. Order to follow. (Court Reporter S. Austin)(dzir) (Entered: 04/12/2024)

Main Doc

### 280

Apr 12, 2024

ORDERED that in civil action 1:19-cv-853 plaintiffs' Motion for Summary Judgment, 240, be and is DENIED; defendant's Motion for Summary Judgment, 244, be and is GRANTED IN PART for lack of general personal jurisdiction, and DENIED in all other respects; and plaintiffs' Amended Complaint, 69, be and is DISMISSED WITH PREJUDICE. Signed by District Judge Leonie M. Brinkema on 4/12/2024. (dzir) (Entered: 04/12/2024)

Main Doc

### 281

Apr 12, 2024

Rule 58 Judgment is hereby entered in favor of the Defendant, Khalifa Hifter, and against the Plaintiffs, Aida Elzagally, Ayah Tunalli, Alaa Tunalli, Abdulhameed Tunali, Abdulrrauf Tunali, Muhammad Tunalli, Abduladeem Tunalli, Mais Ahmed Mayouf, and Abdulhameed Al-Harramah. (dzir) (Entered: 04/12/2024)

Main Doc

282

Apr 12, 2024

TRANSCRIPT of cross motions for summary judgment hearing held on 4-12-24, before Judge
Leonie M. Brinkema, Court Reporter Stephanie Austin, Telephone number 571-298-1649.
NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file
with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is
filed, the transcript will be made remotely electronically available to the public without redaction
after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov
Transcript may be viewed at the court public terminal or purchased through the court reporter
before the deadline for Release of Transcript Restriction. After that date it may be obtained
through PACER Redaction Request due 5/13/2024. Redacted Transcript Deadline set for
6/12/2024. Release of Transcript Restriction set for 7/11/2024.(Austin, Stephanie) (Entered:
04/12/2024)

Main Doc

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| AIDA ELZAGALLY, as the wife<br>of  MSADDEK TUNALLI, deceased | ) |
| | ) |
| AYAH TUNALLI, as the daughter<br>of MSADDEK TUNALLI, deceased | ) |
| | ) |
| ALAA TUNALLI, as the daughter<br>of MSADDEK TUNALLI, deceased | ) |
| | ) |
| ABDULHAMEED TUNALLI, as the son<br>of MSADDEK TUNALLI, deceased | ) |
| | ) |
| ABDULRRAUF TUNALLI, as the son<br>of MSADDEK TUNALLI, deceased | ) |
| | ) |
| MUHAMMAD TUNALLI, as the son<br>of MSADDEK TUNALLI, deceased | ) |
| | ) |
| ABDULADEEM TUNALI, as the son<br>of MSADDEK TUNALLI, deceased | ) |
| | ) |
| MAIS AHMED MAYOUF, as the daughter<br>of MUFIDA SASI ABU GASIAH, deceased | ) |
| | ) |
| ABDULHAMEED AL-HARRAMAH, as<br>the father of AYMAN AL-HARRAMAH,<br>deceased | ) |
|          Plaintiffs | ) |
| | ) |
| | ) |
| | ) |
| KHALIFA HIFTER, individually<br>last known address in Libya | ) |
| | ) |
|          Defendant | ) |

**COMPLAINT**

COMES NOW Plaintiffs Aida Elzagally, Ayah Tunalli, Alaa Tunalli, Abdulhameed

Tunalli, Abdulrrauf Tunalli, Muhammad Tunalli, Abduladeem Tunalli, Mais Ahmed Mayouf,

and Abdulhameed Al-Harramah on behalf of themselves and makes these allegations based on information and belief against Khalifa Hifter, a warlord in the Republic of Libya, and the Defendant and states as follows:

## INTRODUCTION

1. In 2015, Defendant Khalifa Hifter, an American Citizen, left his home in Northern Virginia for Libya and formed the Libyan National Army ("LNA").  He appointed himself "Field Marshall."

2. Since that time, Defendant Hifter has waged indiscriminate war against the people of Libya.  He has killed numerous men, women and children through bombings and has tortured others.

3. Plaintiffs' family members were killed when Defendant Hifter was engaged in the indiscriminate bombing of civilians.

## JURISDICTION

4. Jurisdiction is proper under 28 USC § 1331 and 1332.  Defendant is a United States Citizen and resides in the Commonwealth of Virginia and Plaintiffs are citizens of the Republic of Libya.

5. Jurisdiction is proper because this is a federal question under 28 USC § 1350, Alien Tort Claims Act and Torture Victim Protections Act, P.L. 102-256, 106 Stat 73, reprinted 28 USCA § 1350 note.

6. Venue is proper under 28 USC § 1391(b)(1).

## PARTIES

7. Plaintiff Aida Elzagally is the wife of Msaddek Tunalli, deceased, and is a resident of the Republic of Libya.

8.  Plaintiff Abdulhameed Tunalli is the son of Msaddek Tunalli, deceased, and is a resident of the Republic of Libya.

9.  Plaintiff Ayah Tunalli is the daughter of Msaddek Tunalli, deceased, and is a resident of the Republic of Libya.

10. Plaintiff Alaa Tunalli is the daughter of Msaddek Tunalli, deceased, and is a resident of the Republic of Libya.

11. Plaintiff Abdulrrauf Tunalli is the son of Msaddek Tunalli, deceased, and is a resident of the Republic of Libya.

12. Plaintiff Muhammad Tunalli is the son of Msaddek Tunalli, deceased, and is a resident of the Republic of Libya.

13. Plaintiff Abduladeem Tunalli is the son of Msaddek Tunalli, deceased, and is a resident of the Republic of Libya

14. Plaintiff Mais Ahmed Mayouf is the daughter of Mufida Sasi Abu Gasiah, deceased, and is a resident of the Republic of Libya.

15. Plaintiff Abdulhameed Al-Harramah is the father of Ayman Al-Harramah, deceased, and is a resident of the Republic of Libya.

16. Defendant Khalifa Hifter is a citizen of the United States of America and of the Commonwealth of Virginia.

FACTUAL ALLEGATIONS

17. Upon information and belief Defendant Hifter is a citizen of the United States of America.

18. Upon information and belief, Defendant Hifter owns a home and resides in or around McLean, Virginia.

3

19. In 1969, Hifter was a cadet and was a participant in the coup led by Colonel Muammar Ghaddafi to overthrow the government of the King of Libya.

20. From then, Hifter was a close ally of Ghaddafi. At times Hifter referred to Ghadaffi as his father.

21. Eventually, Hifter was a senior military leader in the Libyan Army under Ghadaffi.

22. In or around 2015, Defendant Hifter left the United States and went to Libya.

23. In Libya, Hifter raised a militia of various soldiers, some from outside Libya, whose only interest was either money or destruction.

24. Upon information and belief, many of Hifter's forces were former fighters of ISIS, the Taliban, or had fought in the Syrian civil war.

25. Hifter formed the Libyan National Army ("LNA") and declared himself Field Marshall and head of the Army.

26. Through the LNA, Hifter, through force, captured most of Eastern Libya.

27. The Government of Libya then officially appointed Hifter head of all its armed forces.

28. Hifter, since 2015, has been marching to Tripoli and has been killing and bombing civilians.

29. Hifter's forces have been killing innocent women and children without any regard for human life. (Exhibit 1)

30. Hifter's forces specifically target civilian neighborhoods and hospitals. (Exhibit 2).

31. Hifter's forces show extreme brutality and then celebrate killing civilians. (Exhibit 3).

32. Upon information and belief, Hifter's forces, on his orders, have killed over one thousand (1000) people.

## MSADDEK TUNALLI

33. On April 14, 2019, Msaddek Tunalli was evacuating women and children from an area being indiscriminately bombed by Hifter's forces in the Ayan Zarah District.

34. Hifter's forces were randomly shelling the entire area.

35. At approximately 4:45pm, one of the mortars fell on Msaddek Tunalli, killing him.

36. The medical examiner stated that Msaddek Tunalli's death is a result of multiple infliction wounds to the head, shoulders, stomach, and arms, which resulted in severe skull damage and severe damage to the brain and internal bleeding in the brain. The weapons used were multiple artillery rounds and mortar shells. The heart, lungs and stomach were severely punctured with internal bleeding as well, which resulted in loss of oxygen to the brain and suffocation. The right elbow was fractured. The angle of penetration was from the back, from the right side of the brain and from the back side of the arms, while the angle of exit was from the stomach area.

37. The medical examiner stated that Msaddek Tunalli's body was free of alcohol or any other poisonous substances.

38. The medical examiner found two shrapnel fragments in the front side of Msaddek Tunalli's lungs and has preserved them.

39. The indiscriminate shelling was not necessary on behalf of Hifter.

40. The indiscriminate shelling was the direct cause of Msaddek Tunalli's death.

41. Msaddek Tunalli was a husband to Plaintiff Aida Elzagally and a father to six children: Plaintiffs Ayah Tunalli, Alaa Tunalli, Abdulhameed Tunalli, Adbulrrauf Tunalli, Muhammad Tunalli, and Adbuladeem Tunalli.

42. The Plaintiffs named above are now left without a husband and father and the only financial support.

43. Plaintiffs Ayah Tunalli, Alaa Tunalli, Abdulhameed Tunalli, Adbulrrauf Tunalli, Muhammad Tunalli, and Adbuladeem Tunalli are severely traumatized by the loss of their father.

44. Due to the loss of her father, Ayah Tunalli is psychologically unstable and having nightmares.

MUFIDA SASI ABU GASIAH

45. On April 16, 2019, Hifter and his forces launched missiles into the civilian neighborhood of Hay Alintassar in Tripoli in which Mufida Sasi Abu Gasiah, her mother, sister, and young daughter lived.

46. Defendant knew that there were numerous civilians living in this neighborhood.  He knew that there were women and children present.

47. Yet without any regard for human life, Defendant Hifter still launched missiles into the Hay Alintassar, Tripoli.

48. Mufida Sasi Abu Gasiah, along with her mother, sister, and young daughter, lived on Tariq Al Matar road in the neighborhood of Hay Alintassar, Tripoli.

49. Mufida Sasi Abu Gasiah, her mother and sister were all killed by the missile strike on April 16, 2019.

50. Plaintiff Mais Ahmed Mayouf was the only survivor of the brutal attack.  She was taken to the hospital for observation but was then released.

51. Plaintiff Mais Ahmed Mayouf suffers from severe emotional trauma. She suffers from severe depression and refuses to eat or engage in any social activities.

52. Plaintiff Mais Ahmed Mayouf's father took her on vacation in hopes of helping her recover, but she would hardly leave the hotel room and would not go to any restaurant to eat.  Her father had to bring the food to her room.

53. It is clear that Plaintiff Mais Ahmed Mayouf will suffer long term effects from the bombing.

### DR. AYMAN AL-HARRAMAH

54.  Plaintiff Abdulhameed Al-Harramah's son, Dr. Ayman Al-Harramah, was always dedicated and committed to humanitarian work. He worked alongside the Children's Hospital as a member of many civil society organizations related to humanitarian activities.

55. He and his colleagues founded the "All Doctors Foundation" before the revolution of 2011. It provided a variety of services, including the distribution of recordings of additional lectures that medical students and other students were unable to attend or had no material resources.

56.  On April 6, 2019, in the Spring Valley area, also known in Arabic as "Wady Al-Rabii", Dr. Ayman al-Harramah was doing his work providing medical care and saving lives in a civilian field hospital when Defendant Hifter indiscriminately bombed the hospital, killing Dr. Ayman al-Harramah.

57. Plaintiff Abdulhameed Al-Harramah is grief stricken about the loss of his son.

58. Hifter had a duty not to kill people by indiscriminately bombing areas where civilians were present.

59. Purposely bombing a hospital is in complete violation of all laws of war, and a violation of Article 27 of the Hague Conventions, and Article 5 of the Ninth Hague Convention.

60. Hifter's army also committed acts of international terrorism on the civilian population of Libya by torturing them, bombing their houses and kicking them out of the house.

61. At all times, Hifter was acting under color of authority as the military head of the Libyan forces.

62. Hifter was officially appointed head of the forces by the Assembly of Libya.

63. Hifter's actions are against the Laws of Nation and United Nations regulations, Geneva Convention and the Article 7, Crimes Against Humanity, of the Rome Statute of the International Criminal Court of Justice.

COUNT I
TORTURE VICTIM PROTECTION ACT

64. Plaintiffs incorporate herein the averments of paragraphs 1-68 as though fully set forth herein.

65. The actions of the Defendant as set forth in the paragraphs above constitute torture and extrajudicial killing under the Torture Victim Protection Act, Public Law 102-246, 106 Stat. 73 (28 USCA § 1350 note).

66. Defendant, in carrying out this torture and extrajudicial killing, was acting under apparent or actual color of authority as he was appointed head of the military forces of Libya.

67. As a result of Defendant's barbaric torture and extrajudicial killings, Plaintiffs suffered damages as set forth in the paragraphs above and incorporated herein.

68. Plaintiffs have been damaged in the amount of $25,000,000 because of the barbaric

and illegal actions of Defendant.

WHEREFORE, Plaintiffs pray that this court:

1.  Enter Judgment against the Defendant on all counts.

2.  Enter a judgment of Twenty-Five Million Dollars, $25,000,000 as compensatory

damages.

3.  Enter a judgment of One Hundred Million Dollars, $100,000,000 as punitive

damages.

4.  Award all court costs and reasonable attorney's fees and any other relief the court

deems appropriate.

Respectfully Submitted,

/s/ Faisal Gill
Faisal Gill (#VSB 93255)
Gill Law Firm
1717 Pennsylvania Ave NW
Suite 1025
Washington DC 20006
(310)418-6675
(310)388-0564 (fax)
fgill@glawoffice.com
*Counsel for Plaintiffs*

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 8, 2021, this Amended Complaint was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: ___/s/ Faisal Gill_____
       Faisal Gill

## THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| **AIDA ELZAGALLY, ET AL.,** )<br>)<br>       **Plaintiffs,** )<br>**v.** )<br>)<br>**KHALIFA HIFTER,** )<br>)<br>       **Defendant.** )<br>) | **Civ. No. 1:19-cv-0853-LMB-MSN** |

### DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant General Khalifa Hifter, by and through undersigned counsel, hereby moves for dismissal of all claims brought against him pursuant to Rules 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In support of this motion, Defendant submits the accompanying Memorandum and Proposed Order.

Dated:  August 20, 2020                              Respectfully submitted,

<br><br>

Duncan P. Levin, Esq.
Tucker Levin, PLLC
230 Park Avenue, Suite 440
New York, New York 10169
212-330-7626
dlevin@tuckerlevin.com
www.tuckerlevin.com

*Counsel for Defendant*

Edward J. Ungvarsky
VSB 83014
Ungvarsky Law, PLLC
114 North Alfred Street
Alexandria, VA 22314
571-207-9710
ed@ungvarskylaw.com
www.ungvarskylaw.com

*Local Counsel for Defendant*

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

AIDA ELZAGALLY, et al.          )
                                )
          Plaintiffs,           )
                                )
v.                              )          1:19-cv-00853 (LMB/MSN)
                                )
KHALIFA HIFTER                  )
                                )
          Defendant.            )
_____)

**DEFENDANT KHALIFA HIFTER'S ANSWER TO THE AMENDED COMPLAINT
AND GROUNDS FOR DEFENSE**

Defendant Khalifa Hifter ("Mr. Hifter"), by counsel, for his answer to the

Amended Complaint, states as follows:

## INTRODUCTION

1.    Mr. Hifter admits that he is an American citizen and that he left his home in

Virginia for Libya and formed the Libyan National Army. He was appointed as Field

Marshall by the Libyan House of Representatives.

2.    Denied.

3.    Denied.

## JURISDICTION

4.    This paragraph contains conclusions of law to which no response is required.

To the extent an answer is required, those conclusions are denied. Mr. Hifter admits

that he is a dual citizen of the United States of America and Libya, denies that he

resides in the Commonwealth of Virginia, and lacks knowledge as to plaintiffs' citizenships.

5.    This paragraph contains conclusions of law to which no response is required. To the extent an answer is required, those conclusions are denied.

6.    This paragraph contains conclusions of law to which no response is required. To the extent an answer is required, those conclusions are denied.

**<u>PARTIES</u>**

7.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

8.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

9.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

10.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

11.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

12.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

13.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

14.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

15.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

16.    Denied in part. Mr. Hifter admits to being a dual citizen of the United States of America and of Libya.

## FACTUAL ALLEGATIONS

17.    Admitted.

18.    Denied in part. Mr. Hifter admits to owning properties in Virginia but denies residing in Virginia.

19.    Mr. Hifter admits to being a cadet who worked with Colonel Muammar Ghaddafi in al-Fateh Revolution in 1969. The remainder of the allegations are denied.

20.    Mr. Hifter admits that he was once an ally of Ghaddafi. The remainder of the allegations are denied as stated.

21.    Admitted.

22.    Mr. Hifter admits he left the United States and went to Libya.

23.    Denied.

24.    Denied.

25.    Denied in part. Mr. Hifter admits that he formed the Libyan National Army. He was appointed as Field Marshall by the Libyan House of Representatives.

26.    Denied as stated. Mr. Hifter admits that he is the Commander of the LNA, which controls most of Eastern Libya.

27.     Admitted.

28.     Denied.

29.     Denied. There was no Exhibit 1 attached to the Amended Complaint. To the extent an Answer is required regarding Exhibit 1, assuming it is the same Exhibit 1 as was attached to the original Complaint, the Exhibit speaks for itself but the allegations are denied.

30.     Denied. There was no Exhibit 2 attached to the Amended Complaint. To the extent an Answer is required regarding Exhibit 2, assuming it is the same Exhibit 2 as was attached to the original Complaint, the Exhibit speaks for itself but the allegations are denied.

31.     Denied. There was no Exhibit 3 attached to the Amended Complaint. To the extent an Answer is required regarding Exhibit 3, assuming it is the same Exhibit 3 as was attached to the original Complaint, the Exhibit speaks for itself but the allegations are denied.

32.     Denied.

33.     Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

34.     Denied.

35.     Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

36.     Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

37.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

38.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

39.    Denied.

40.    Denied.

41.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

42.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

43.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

44.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

45.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

46.    Denied.

47.    Denied.

48.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

49.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

50.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

51.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

52.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

53.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

54.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

55.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

56.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

57.    Mr. Hifter is without sufficient knowledge to form a belief as to the truth of the allegations contained in this paragraph, and therefore they are deemed denied.

58.    This paragraph contains conclusions of law to which no response is required. To the extent an answer is required, those conclusions are denied.

59.    This paragraph contains conclusions of law to which no response is required. To the extent an answer is required, those conclusions are denied.

60.    Denied.

61.    This paragraph contains conclusions of law to which no response is required. To the extent an answer is required, those conclusions are denied as stated. Mr. Hifter admits that he is the commander of the LNA.

62.    Admitted.

63.    This paragraph contains conclusions of law to which no response is required. To the extent an answer is required, those conclusions are denied.

<u>COUNT I:</u>
<u>TORTURE VICTIM PROTECTION ACT</u>

64.    Mr. Hifter incorporates his responses to the preceding paragraphs.

65.    This paragraph contains conclusions of law to which no response is required. To the extent an answer is required, those conclusions are denied.

66.    This paragraph contains conclusions of law to which no response is required. To the extent an answer is required, those conclusions are denied as stated. Mr. Hifter admits that he is the commander of the LNA.

67.    Denied.

68.    Denied.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Defendant Khalifa Hifter denies that Plaintiffs are entitled to any of the relief requested in the numbered "Wherefore" clause following paragraph 68 and respectfully requests that the Court dismiss the Complaint in its entirety and enter judgment in his favor and against Plaintiffs.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by head of state immunity. As thoroughly outlined in Mr. Hifter's memorandum and reply in support of his motion to dismiss, ECF Nos. 34 and 40 (at 9-10 and at 6-8), Mr. Hifter was appointed head of the Libyan National Army by the Libyan House of Representatives. He currently undertakes responsibilities including meeting and negotiating with foreign heads of state. The former Executive treated him as the head of state. Although Libya is currently in a civil war, his status as head of state gives Mr. Hifter immunity from suit.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because the claims constitute a non-justiciable political question beyond this Court's jurisdiction. *Baker v. Carr*, 369 U.S. 186 (1962), lays out specific factors for courts to consider in determining whether a dispute is a political question outside their jurisdiction. As was thoroughly explained in Mr. Hifter's memorandum and reply in support of his motion to dismiss, ECF Nos. 34 and 40 (at p. 6-8 and p. 4-6), these factors indicate that this case is outside of the Court's jurisdiction. The United States has an interest in the region, and it is within the Executive's domain to make decisions regarding foreign affairs.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs fail to state a cause of action upon which relief may be granted. There continue to be elements under the TVPA that the Plaintiffs will not be able to prove, including but not limited to that Mr. Hifter "knew, or should have known," about the

alleged war crimes. This defense was thoroughly explained in Mr. Hifter's memorandum and reply in support of his motion to dismiss, ECF Nos. 34 and 40 (at p. 10-14, and p. 8-11).

Dated: July 9, 2021

KHALIFA HIFTER
By Counsel

/s/ Jesse R. Binnall
Jesse R. Binnall (VA #79292)
Lindsay R. McKasson (VA #96074)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com
lindsay@binnall.com

*Attorneys for the Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2021, a copy of the foregoing was filed with the

Clerk of the Court using the Court's CM/ECF system, which will send a copy to all

counsel of record.

Dated: July 9, 2021                                    /s/ Jesse R. Binnall
                                                       Jesse R. Binnall

                                                       *Attorney for the Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| AIDA ELZAGALLY, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | 1:19-cv-00853 (LMB/MSN) |
| ) | |
| KHALIFA HAFTAR, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

<u>PROPOSED JOINT DISCOVERY PLAN</u>

Pursuant to Fed. R. Civ. P. 26 and this Court's Order of February 23, 2021 (Dkt. 55), counsel for the Parties submit the following as their proposed discovery plan in advance of the pretrial conference on March 17, 2021:

1.    **RULE 26(F) CONFERENCE.** The Parties will hold a Rule 26(f) conference on March 17, 2021. The conference will be attended by Faisal Gill for Plaintiffs and Jesse R. Binnall and Lindsay R. McKasson for Defendant.

2.    **RULE 26 (A) INITIAL DISCLOSURES.** The Parties will exchange their required initial disclosures by March 31, 2021.

3.    **PLEADINGS.** The Parties will file any motion to amend the pleading by no later than March 29, 2021, absent good cause shown.

4.    **SERVICE OF PLEADINGS AND PAPERS.** The Parties will serve all pleadings, motions and other papers filed with the Court electronically as provided by the Federal Rules of Civil Procedure and the Local Rules of this Court. The parties will also serve by e-mail all discovery requests and written responses, and any other

papers that are not filed with the Court. The serving Party shall attach the pleading or paper as a "Portable Document File" (".pdf"). If transmission by e-mail of voluminous materials is impractical, then those materials shall be served by secure file transfer protocol (FTP), overnight delivery, hand-delivery, or courier. Service by e-mail shall be the equivalent of service by hand-delivery for the purposes of Fed. R. Civ. P. 5 and 6, provided that the document is received prior to 5:00 p.m. Service solely through the Court's ECF system after 5:00 p.m. will be treated, as stated in the Court's Electronic Case Filing Policies and Procedures, as being the same as service by mail.

5.     **MEET-AND-CONFER CONFERENCES.** Throughout the discovery period, the Parties shall be available to participate in meet-and-confer conferences (either in-person or by telephone) with opposing counsel within 72 hours of a written request (including by e-mail).

6.     **PROTECTIVE ORDER.** The parties anticipate the need for entry of a protective order in this case.

7.     **ELECTRONICALLY STORED INFORMATION.** Electronically stored information (ESI) shall be produced in searchable PDF, labeled with Bates numbers, unless the party requesting the information requests records as tiff images with extracted text files and a load file. In either case, the ESI will be delivered via flash drive or secure FTP. The parties will negotiate in good faith an alternative procedure for documents that are not reasonably usable in PDF format; if the parties are unable to reach agreement, an appropriate, timely motion will be filed with the Court.

8. **INTERROGATORIES.** Per this Court's Order on February 23, 2021, a Party may not exceed thirty (30) interrogatories, including parts and subparts, without leave of Court.

9. **PRIVILEGE ISSUES.** Pursuant to Federal Rule of Evidence 502(d), if a Party or non-Party discloses information subject to a claim of attorney-client privilege, attorney work product protection, or other privilege or protection ("Protected Information"), such disclosure shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work product protection with respect to the Protected Information and its subject matter in this action or any other federal or state proceeding. If a disclosing Party or non-Party makes a claim of disclosure, the receiving party shall immediately cease review of the Protected Information and within five (5) business days, return or destroy all copies of the Protected Information, and provide a certification of counsel that all such information has been returned or destroyed. The disclosing Party or non-Party retains the burden of establishing the privileged or protected nature of any Protected Information. Nothing in this Order shall limit the right of any Party to request an in-camera review of the Protected Information. This Order is entered pursuant to Rule 502(d) of the Federal Rules of Evidence and shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). The provisions of Federal Rule of Evidence 502(b)(2) are inapplicable to the production of Protected Information under this Order.

10. **PRIVILEGE LOG.** The Parties agree that communications between any Party and its outside litigation counsel related to this action (or to documents and

things created by or for a Party's litigation counsel in anticipation of this action), and privileged documents and things created after the date of the filing of this lawsuit, need not be identified on any privilege log.

11.    **DEPOSITION SCHEDULE.** The Parties will confer and exchange a list of persons from the opposing Party whom they wish to have testify at a deposition, and the Parties shall work diligently to schedule mutually convenient times and locations for each of these depositions, including depositions taken pursuant to Fed. R. Civ. P. 30(b)(6).

12.    **NUMBER OF DEPOSITIONS.** Per this Court's Order on February 23, 2021, a Party may not exceed five (5) non-party, non-expert witness depositions, without leave of Court.

13.    **REQUESTS FOR ADMISSIONS.** The Plaintiffs may serve up to 30 requests for admissions as to factual matters, on the Defendant, and the Defendant may serve up to 30 requests for admissions for each Plaintiff. There shall be no limit on the number of requests for admissions regarding the authenticity of documents or things.

14.    **EXPERT DISCOVERY.** Pursuant to Fed. R. Civ. P. 26(a)(2), any Party with the burden of proof on a claim or counterclaim shall disclose its expert witnesses and serve a copy of their written reports upon the other Party sixty days prior to the discovery deadline or by May 10, 2021, whichever is later. The opposing Party shall have 30 days after service of these experts' reports to serve their own expert reports upon the other Party.  Pursuant to Fed. R. Civ. P. 26(a)(2), the Parties shall serve

rebuttal expert reports, if any, upon the opposing Party within 14 days after that. Following the exchange of all expert reports, rebuttal reports, or reply reports, the Parties will schedule the depositions of their experts for a mutually convenient time and location. All such depositions will be concluded by July 9, 2021.

15. **DRAFTS AND COUNSEL COMMUNICATIONS WITH EXPERTS.** The parties do not intend to change the provisions of Fed. R. Civ. P. 26(b)(4)(B) and (C). Materials, communications, and other information exempt from discovery under this paragraph shall be treated as attorney work product and do not need to be included in a privilege log.

16. **THIRD PARTY MATERIALS.** Pursuant to Fed. R. Civ. P. 45(a)(4), the Parties shall serve a notice and copy of any subpoena on each Party before a subpoena is served on the person to whom it is directed, as well as a copy of any document requests, requests for admissions, or interrogatories served upon a third party. In addition, the Parties shall promptly provide to each other, or make available, all materials obtained from third parties.

17. **EVIDENTIARY MOTIONS.** The Parties agree that all motions to exclude experts or expert testimony, in whole or in part, and all motions *in limine*, shall be filed in time to be fully briefed and heard at least two weeks prior to the trial date.

18. **MODIFICATION.** A Party's agreement to the deadlines and limitations stated in this Joint Discovery Plan is without prejudice to its right to seek

modifications of the plan and of the pretrial schedule pursuant to Fed. R. Civ. P. 16 and 26.

19.   **CLOSE OF DISCOVERY.** Per this Court's Order on February 23, 2021, Parties will complete discovery by Friday, July 9, 2021.

20.   **TRIAL BEFORE MAGISTRATE JUDGE.** The parties do not consent to trial before a Magistrate Judge at this time.

Dated: March 10, 2021

| | |
|---|---|
| /s/ Faisal Gill<br>Faisal Gill (VSB # 93255)<br>GILL LAW FIRM<br>1717 Pennsylvania Ave Suite 1025<br>Washington, D.C. 20006<br>Phone: (202) 570-8223<br>Fax: (202) 318-5331<br>Fgill@glawoffice.com<br><br>*Counsel for Plaintiffs* | /s/ Jesse Binnall<br>Jesse R. Binnall (VSB #79292)<br>Lindsay R. McKasson (VSB #96074)<br>THE BINNALL LAW GROUP<br>717 King Street, Suite 200<br>Alexandria, Virginia 22314<br>Phone: (703) 888-1943<br>Fax: (703) 888-1930<br>jesse@binnall.com<br>lindsay@binnall.com<br><br>*Counsel for Defendant* |

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of March 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel and parties of record.

/s/ Jesse Binnall
Jesse R. Binnall
Counsel for the Defendant

1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
AIDA ELZAGALLY, et al.,        .    Civil Action No. 1:19cv853
                               .
              Plaintiffs,      .    Alexandria, Virginia
                               .    September 13, 2021
        vs.                    .    11:05 a.m.
                               .
KHALIFA HAFTAR,                .
                               .
              Defendant.       .
                               .
.  .  .  .  .  .  .  .  .  .  X
```

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE MICHAEL S. NACHMANOFF
UNITED STATES MAGISTRATE JUDGE

<u>APPEARANCES</u>:

FOR THE PLAINTIFFS:             FAISAL M. GILL, ESQ.
                                Gill Law Firm
                                1717 Pennsylvania Avenue, N.W.
                                Suite 1025
                                Washington, D.C. 20005


FOR THE DEFENDANT:              LINDSAY R. McKASSON, ESQ.
                                Binnall Law Group, PLLC
                                717 King Street, Suite 200
                                Alexandria, VA 22314


TRANSCRIBER:                    ANNELIESE J. THOMSON, RDR, CRR
                                U.S. District Court, Third Floor
                                401 Courthouse Square
                                Alexandria, VA 22314
                                (703)299-8595


(Pages 1 - 26)


(Proceedings recorded by electronic sound recording, transcript
 produced by computerized transcription.)

2

P R O C E E D I N G S

1

2       THE CLERK:  Elzagally, et al., versus Haftar, Case

3  No. 19cv853.  Will the parties please note their appearances

4  for the record.

5       MR. GILL:  Good morning, Your Honor.  Faisal Gill for

6  the plaintiffs.

7       THE COURT:  Good morning, Mr. Gill.

8       MS. McKASSON:  Good morning, Your Honor.  Lindsay

9  McKasson for defendant, Mr. Hifter.

10      THE COURT:  All right, good morning.

11      This matter comes before the Court on plaintiffs'

12  motion to compel.  I've received the motion, the opposition,

13  and the reply brief.  I've had a chance to review all of them,

14  so I'll hear argument briefly, but you don't need to repeat

15  what is already in the papers.

16      If you are fully vaccinated and you feel comfortable,

17  you can take off your mask when you are at the podium to

18  address me.  I would ask, of course, that everyone keep their

19  masks on when they are not speaking.  I am fully vaccinated,

20  but I find it's difficult for me to communicate well if I keep

21  my mask on, but nobody is obliged to take their mask off.

22      Okay.  I'll hear from you first, Mr. Gill.

23      MR. GILL:  Thank you, Your Honor.  I'm also fully

24  vaccinated.

25      Your Honor, there is no dispute, as you've seen from

JA106

Anneliese J. Thomson OCR-USDC/EDVA (703)299-8595

USCA4 Appeal: 24-1426    Doc: 17    Filed: 07/15/2024    Pg: 110 of 264
Case 1:19-cv-00853-LMB-JFA    Document 85    Filed 09/16/21    Page 3 of 26 PageID# 676

3

1    the papers, there is no dispute as to the law here.  The law is

2    very clear.  Our own circuit, the Fourth Circuit, has ruled in

3    this case and not too long ago in *El-Masri*, where it states the

4    state secrets privilege is only available for the United States

5    government.

6            This is not the United States government.  There is

7    no precedent anywhere that allows the state secrets privilege

8    to be asserted by anybody other than the United States.

9    Defense counsel in their brief admit that.

10           The issue here is not what the law is but what the

11   law should be, and I don't think we should be here to discuss

12   that issue.  It is -- the law is extremely clear.  The state

13   secrets privilege does not apply to Mr. Hifter, and he cannot

14   assert it.

15           On -- leaving that aside, leaving the state secrets

16   privilege aside, the rest of the objections that counsel have

17   made, relevance objections, also, you know, also fall -- should

18   fall on deaf ears because the documents that we're asking for

19   are extremely relevant.  They go to the heart of the case.

20           The -- our complaint is that General Hifter was

21   basically indiscriminately bombing the areas where our

22   plaintiffs were, were killed.  The only way we can prove that

23   in court is to get the documents that we're asking for.

24           We specifically tailored our request to the time

25   period in question.  We didn't ask for from the very beginning.

Anneliese J. Thomson  OCR-USDC/EDVA (703)299-8595

USCA4 Appeal: 24-1426    Doc: 17    Filed: 07/15/2024    Pg: 111 of 264
Case 1:19-cv-00853-LMB-JFA    Document 85    Filed 09/16/21    Page 4 of 26 PageID# 677

4

1   We're not asking for right now.  So to the extent that counsel

2   has raised the issue of military operations and not having

3   military operations right now, we are not asking for military

4   operations right now.

5        We've had a specific time period that we are asking

6   for, and based on the fact that there would be absolutely no

7   way for us to prove that it was General Hifter that was

8   actually behind the bombings and it was General Hifter that was

9   bombing in the way that he did that violated law of armed

10  conflict and inflicted the damage without these documents.

11       And the fact that state secrets privilege only

12  applies to the United States is -- for those reasons, the Court

13  should grant this motion to compel.

14       Again, we should not be talking about what the law

15  should be.  That should be -- that's a matter for another

16  branch of government, not this branch of government.

17       THE COURT:  Well, let me -- I'll give the defense a

18  chance to address the issue on the state secrets privilege, but

19  let's set that aside for a moment and talk about there are a

20  lot -- there are a lot of interrogatories and requests for

21  production of documents requests here.

22       MR. GILL:  Yes, Your Honor.

23       THE COURT:  And a lot of them are addressed in the

24  motion and the opposition.  Frankly, as a court, it's always a

25  little challenging when there's a whole laundry list to go

USCA4 Appeal: 24-1426    Doc: 17    Filed: 07/15/2024    Pg: 112 of 264
Case 1:19-cv-00853-LMB-JFA    Document 85    Filed 09/16/21    Page 5 of 26 PageID# 678

5

1    through one by one, as opposed to resolving a discrete issue,

2    and that's certainly true with the state secrets privilege.

3    Either it applies or it doesn't.  If it doesn't apply, then the

4    objection is overruled, and that's not a basis for withholding

5    or failing to respond, but setting that aside, there are a

6    whole slew of objections based on relevance and, and burden.

7         Let me ask you this question:  There are a number of

8    interrogatories and requests for production of documents that

9    essentially address issues that go to General Hifter's

10   authority or the, whether he was acting with authority or under

11   the color of law.  I'm trying to understand, though, whether

12   that is, in fact, really in dispute.  It's alleged in the

13   complaint that he was the head of the Libyan National Army, and

14   I believe -- and again, I'll let the defendants address it --

15   that they concede that, that they have admitted that.

16        So all of the questions that go to the House of

17   Representatives and the orders of the appointment and

18   communications with foreign governments, to, to what issue,

19   what, what claim or defense do those go to if that is not in

20   dispute, whether he was serving at this time as the leader of

21   the Libyan National Army?

22        MR. GILL:  Your Honor, you're absolutely correct.  I

23   mean, if there is no dispute on that and if the defense counsel

24   is willing to stipulate to that, then that does not become an

25   issue.  As you know, that is a -- an element of the TVPA.  If

Anneliese J. Thomson  OCR-USDC/EDVA (703)299-8595

6

1    defense counsel is willing to stipulate to that, that that does

2    not come into court or does not come in as part of trial, then

3    certainly we can agree to that and we can withdraw those

4    specific interrogatories.

5         The interrogatories that we're mainly concerned about

6    are the other interrogatories, the ones about authority.  If

7    defense counsel is willing to stipulate, then we'll gladly

8    withdraw those and, and stipulate to that.

9         THE COURT:  Well, thank you.  And I'll, I'll address

10   that with defense counsel.

11        To be clear, and I think you've said this, but I want

12   to be -- make sure I'm understanding, there are objections

13   that, that are interposed regarding some of the questions about

14   witnesses and activities and orders that, that were given.

15        MR. GILL:  Yes, Your Honor.

16        THE COURT:  Are you intending that those are supposed

17   to be specific to the three incidents that are alleged in the

18   amended complaint on April 6, April 14, and April 16, or are

19   you seeking information beyond that?  In other words, you make

20   a reference to a time period, April 6 to April 16, I think,

21   but, of course, there could have been other military operations

22   going on at that time.

23        There's an objection.  I'm trying to clarify whether

24   or not you're simply asking for things that are related

25   directly to the claims in the amended complaint.

Anneliese J. Thomson  OCR-USDC/EDVA  (703)299-8595

7

1          MR. GILL:  Your Honor, certainly we're asking for

2   things that are related to the amended complaint.  However,

3   even though we asked for a specific time period for some of the

4   interrogatories, I believe there are some interrogatories where

5   we've asked for a little bit broader information, because

6   again, our claim has been that General Hifter was

7   indiscriminately bombing.

8          So to the extent that there are other orders that go

9   to that, and as you know, discovery is supposed to be fairly

10   open and, and liberal, what -- I want to make clear that what

11   we're not asking for, we have not asked for is the present, and

12   I think that has been the defense's issue, is that we're asking

13   for any current military operations.

14          I mean, to the extent that we've asked for some past

15   operations that are a little bit broader just to kind of for us

16   to be able to, you know, get to the fact that it was General

17   Hifter's MO to order indiscriminate bombings such as these,

18   that is what we're looking for.

19          So it is maybe a little broader time period in the

20   past for some of the interrogatories, and I can certainly

21   respond in more detail as to which interrogatory and request

22   for documents that would be, but what we're -- I just want to

23   make very clear we're not asking for is any current operations.

24   So we have limited it.

25          So we have not said, you know, from that time to

Anneliese J. Thomson  OCR-USDC/EDVA (703)299-8595

8

1   present, to where, you know, the Court could easily state,

2   well, you know, what would that have to do with our, with our

3   claims?

4           THE COURT:  Well, is there any time period that, that

5   goes past April 16, 2019?

6           MR. GILL:  Again, Your Honor, I would have to

7   double-check my interrogatories.  I do not believe so, but I

8   can certainly double-check that while I'm, while I'm sitting

9   here.

10          THE COURT:  Is there anything else?

11          MR. GILL:  No, Your Honor, that's it.

12          THE COURT:  Thank you.

13          MR. GILL:  Thank you.

14          MS. McKASSON:  Good morning, Your Honor.  Lindsay

15  McKasson for Mr. Hifter.  I did have one administrative matter

16  that I'd like to bring up at the, at the beginning of my

17  argument, which is that I believe it was a mistake, but

18  attached to Mr. Gill's declaration, it said that there were

19  objections and responses.  It was actually just the, the

20  objections.

21          So I do have the responses if Your Honor would like

22  to review the responses, and I apologize I did not notice that

23  before yesterday, and therefore, we did not attach our

24  responses as an exhibit.

25          So I do have copies for everyone if you would like to

Anneliese J. Thomson  OCR-USDC/EDVA (703)299-8595

9

1    review our responses to interrogatories, because I don't think

2    it is clear that we actually -- that Mr. Hifter actually did

3    respond to a lot of the interrogatories and did not solely rely

4    on the objections.

5            THE COURT:  Thank you, and thank you for making that

6    clear.  I'm not sure that I, I need --

7            MS. McKASSON:  Okay.

8            THE COURT:  -- the responses in order to address

9    these specific legal issues, of course.

10           As you know, in general, discovery is not filed with

11   the Court and doesn't need to be, and so to the extent you

12   think there's something that's important to your argument, I'd

13   certainly be willing to consider it, but I, I understand your

14   position.

15           MS. McKASSON:  Okay.  Thank you.

16           Plaintiffs are asking that Mr. Hifter put his life at

17   risk by responding to further discovery requests in this

18   matter.  Mr. Hifter should not be in the position between

19   choosing his life or answering discovery in a case that is

20   venued outside of his country of origin and residence.

21           Importantly, for reasons of comity, this Court should

22   not order that Mr. Hifter respond to the discovery requests

23   that seek military information because it would set a dangerous

24   precedent for United States citizens or military members being

25   sued outside of the United States.

USCA4 Appeal: 24-1426    Doc: 17    Filed: 07/15/2024    Pg: 117 of 264
Case 1:19-cv-00853-LMB-JFA    Document 85    Filed 09/16/21    Page 10 of 26 PageID# 683

10

1          We've discussed in detail the state secrets issue in

2     our briefs.  I think I will move past that issue for right now,

3     but I would like to focus on comity.

4          There is a case, *Mujica v. Airscan, Inc.*, which is

5     771 F.3d 580, which is a Ninth Circuit case from 2014.  It

6     says:  International comity is the recognition which one nation

7     allows within its territory to the legislative, executive, or

8     judicial acts of another nation, having due regard both to

9     international duty and convenience, and to the rights of its

10    own citizens or of other persons who are under the protection

11    of its laws.

12         It continues:  Comity refers to the spirit of

13    cooperation in which a domestic tribunal approaches the

14    resolution of cases touching the laws and interests of other

15    sovereign states.

16         Finally, it notes:  Comity is a practice among

17    political entities (as countries, states, or courts of

18    different jurisdictions), involving especially mutual

19    recognition of legislation, executive, and judicial acts.

20         Here there is a true conflict between the United

21    States and Libyan law, the discovery rules of the United States

22    on the one hand and the military secrets law of Libya on the

23    other.  Mr. Hifter should not be required to subject himself to

24    breaking the laws of Libya in order to comply with the United

25    States' discovery rules.

USCA4 Appeal: 24-1426    Doc: 17    Filed: 07/15/2024    Pg: 118 of 264
Case 1:19-cv-00853-LMB-JFA   Document 85   Filed 09/16/21   Page 11 of 26 PageID# 684

11

1          Beyond the true conflict, there are other factors to

2    consider.  That same Ninth Circuit case noted that the general

3    presumption against extraterritorial application of U.S. law

4    recognizes that United States law governs domestically but does

5    not rule the world.  Comity similarly rests on respect for the

6    legal systems of members of the international legal

7    community -- a kind of international federalism -- and thus

8    serves to protect against unintended clashes between our laws

9    and those of other nations which could result in international

10   discord.

11         As Mr. Hifter argued in his brief, there is an

12   ongoing civil war in Libya in which it is unknown and unclear

13   which side will win and what the United States' position is on

14   that subject.  If the United States forces production of

15   military secrets by a foreign military leader, it sets a

16   dangerous precedent for nations to do the same to the United

17   States, not to mention could result in the international

18   discord of which the Supreme Court warned.

19              THE COURT:  Well, let, let me stop you --

20              MS. McKASSON:  Okay.

21              THE COURT:  -- and ask you a couple of questions.

22         So I take it you agree, as reflected in your papers,

23   that the law is settled that the state secrets doctrine can

24   only be invoked by the United States government; is that right?

25              MS. McKASSON:  I think that that's a little bit of a

12

1    different question -- difficult question to answer only because

2    the holding was not necessarily that it could only be provided

3    by the United States.  Those cases involved the United States,

4    and, in fact, *Reynolds*, on which the Fourth Circuit based its

5    decision, where it did say it should be -- it is provided by

6    the United States, it was citing *Reynolds*, which actually only

7    said the government.

8         I don't think either one of those cases actually

9    held, considering both were involving United States claims,

10   that it could only be provided by the United States, but I do

11   admit at the very least -- oh, go ahead.

12        THE COURT:  Maybe I can be more specific.  Is it --

13   do you agree that the law is clear the state secrets doctrine

14   can be invoked only by a governmental entity and not by an

15   individual?  In other words, it is not a private right that

16   individuals can raise?

17        MS. McKASSON:  Yes, I, I believe that that is true,

18   but I, I think that Mr. Hifter as the field marshal of the LNA

19   is bringing that claim, as the field marshal -- field marshal

20   of the LNA and not as himself as an individual.

21        And I guess I can skip ahead that a lot of the

22   documents requested are not documents that would necessarily be

23   in Mr. Hifter's control as an individual, but he would only

24   have access to those documents because he is the field marshal

25   of the LNA, and therefore, these documents do not belong to

Anneliese J. Thomson  OCR-USDC/EDVA  (703)299-8595

1    Mr. Hifter, but they belong to the Libyan National Army, and

2    for him to be required to disclose such documents again puts

3    this comity issue -- puts comity at issue.

4            I think that we can -- I'll fast-forward to some of

5    the issues that Your Honor raised.  Plaintiffs' amended

6    complaint contains only three relevant dates:  April 6, 14, and

7    April 16.  Many of these requests go far beyond those dates,

8    and even if they do say that they at times are only at a

9    two-week period, all military actions between those two weeks

10   is far beyond the scope.

11           Those three dates, plaintiff actually -- sorry, not

12   plaintiff -- Mr. Hifter did provide interrogatory responses

13   regarding those three dates, though he did not provide

14   documents.

15           Plaintiffs argue that they need information regarding

16   funding, support, and, and communication with international

17   leaders to support their claim of his position of authority,

18   and as Your -- as Your Honor already noted, there is no dispute

19   regarding his authority.  Mr. Hifter admits that he is the

20   leader of the LNA.  He is the field marshal.  There is no

21   dispute regarding his authority.  The dispute is the nexus

22   between his authority and the actions in the amended complaint.

23           THE COURT:  Let me make sure I understand that

24   because this is important and it can simplify what the parties

25   are fighting about in this case.  Is it your position that the

USCA4 Appeal: 24-1426    Doc: 17      Filed: 07/15/2024    Pg: 121 of 264
Case 1:19-cv-00853-LMB-JFA   Document 85   Filed 09/16/21   Page 14 of 26 PageID# 687

14

1   defendant is not going to seek to have the case dismissed on

2   summary judgment or on another motion to dismiss or at trial

3   based on the failure of the plaintiffs to be able to establish

4   that he was acting at the time under color of law or the

5   authority of the state of Libya?

6          MS. McKASSON:  He -- I think that there still is a

7   dispute as to whether he was acting at all because I don't

8   think that there's any connection between him and these

9   actions.  There are ten -- at least ten warring factions going

10  on right now in Libya.  There is right now --

11         THE COURT:  So, so the question is whether or not the

12  plaintiffs need to collect information to establish

13  Mr. Hifter's position with regard to the government that he

14  purports to be affiliated with.  On the one hand, I've heard

15  you just say, as your papers reflect and as the answer

16  reflects, that you admit that he was appointed by a

17  representative body to be the head of the Libyan National Army,

18  and so to the extent he's interacting with foreign governments

19  or he is dealing with the funding of the army or the

20  appointment by the House of Representatives, there's no need to

21  collect information on that if the defendant is waiving any

22  claim later that the plaintiffs will have failed to meet their

23  burden with regard to that element of the TVPA, not the element

24  that you're referring to, which is whether or not he had

25  knowledge of or, you know, condoned these, these actions that

Anneliese J. Thomson  OCR-USDC/EDVA (703)299-8595

1    they believe constitute the killing of others that would --

2    that was unlawful, but only as to the issue of the color of law

3    or his actual or apparent authority.

4            MS. McKASSON:  Yes.  He has authority as the field

5    marshal of the LNA, and I think that that is undisputed.

6            THE COURT:  Okay.  Thank you.  I think that is a

7    clear statement made in open court and can address that issue

8    sufficiently.

9            So let's go on to some of the other issues.  I will

10   tell you, let me just say for purposes of clarity and so that

11   we can move forward, I do not believe that this Court has the

12   ability to extend or change or modify the law, that the law of

13   the Supreme Court and the Fourth Circuit is binding with regard

14   to the state secrets privilege, and that it cannot be raised by

15   an individual as opposed to a governmental entity, and that it

16   can't be raised by a foreign governmental entity, that the law

17   is clear that only the United States can choose to interpose

18   that objection based on what I am bound by.

19           I would also note that the government has declined to

20   intervene, file a statement of interest in a -- you know, in

21   these related cases, and, and so the government has not chosen

22   to take a position on this issue.

23           Again, I don't think it's dispositive of what happens

24   in the case, but I think it is relevant for the consideration

25   of whether or not these foreign policy issues or the issue of

Anneliese J. Thomson  OCR-USDC/EDVA (703)299-8595

16

1    comity can, can correctly be addressed here within this

2    judicial proceeding, and so I do overrule those objections and

3    grant the motion with regard to the issue of state secrets, but

4    I do want to be clear that with regard to whatever answers have

5    already been provided, whatever supplemental answers need to be

6    provided, we've addressed the issue completely of relevance and

7    burden.

8         MS. McKASSON:  Okay.  And thank you, Your Honor.

9         I'm, I'm trying to find where -- I think that outside

10   of the state secrets issue, a lot of the interrogatories and

11   requests for production are overly broad.  Just by way of a few

12   examples, giving the name and address of each person who is

13   under him in the military.  That is, if he is at the top of the

14   military, every single person in the military, military -- all

15   military actions from April 4, 2019, to April 16, 2019, again,

16   that's all military actions within a two-week period --

17        THE COURT:  Well, do you concede that military

18   actions related to the allegations in the complaint are

19   relevant and fair game, in other words, the activities of April

20   6, April 14, and April 16 relating to the specific locations

21   that are identified in the complaint?

22        MS. McKASSON:  I concede that those are relevant.  I

23   do reserve the issue of state secrets and comity, but I do

24   concede that those three dates are relevant to the complaint

25   here.

1          THE COURT:  Would you also concede that providing

2     information with regard to witnesses, whether it be people in

3     the chain of command or others who would have had some

4     awareness or knowledge of those incidents, would likewise also

5     be relevant?

6          MS. McKASSON:  Yes.  The same response that I, I do

7     not want to concede on the issue of state secrets or comity,

8     but I concede --

9          THE COURT:  Those objections are preserved.

10         MS. McKASSON:  Okay.  Thank you.

11         THE COURT:  You don't need to repeat that.  The

12    record is clear that you've, you've made those objections.

13         MS. McKASSON:  Okay.  Thank you very much, Your

14    Honor.

15         I do concede that there, that there -- the relevance

16    of those three dates, and I apologize, Your Honor, I don't

17    remember the specific things that you noted, but, but those

18    three --

19         THE COURT:  Well, it was a question about witnesses

20    and specifically a chain of command.  In other words, if the

21    plaintiffs are seeking to know who gave the orders with regard

22    to a particular attack from the -- Mr. Hifter down through the

23    chain of command to the people who carried it out --

24         MS. McKASSON:  I think that is relevant to the TVPA

25    claim, Your Honor.

USCA4 Appeal: 24-1426   Doc: 17      Filed: 07/15/2024   Pg: 125 of 264
Case 1:19-cv-00853-LMB-JFA   Document 85   Filed 09/16/21   Page 18 of 26 PageID# 691

18

1              THE COURT:  Okay.  Thank you.

2              MS. McKASSON:  Other interrogatories and requests for

3    production refer to a relationship to the HAF, which is an

4    undefined term.  In plaintiffs' moving papers, they, they state

5    that the HAF is obviously the LNA, the Libyan National Army.

6              Well, for instance, in Interrogatory No. 6, it says

7    describe your relationship to the HAF.  Mr. Hifter is the field

8    marshal to the LNA.  Beyond that, what sort of specific

9    relationship are they looking for?

10             Regarding Interrogatory 17, describe in detail your

11   knowledge of the population centers, and then states three

12   population centers, again, this is just a very broad question

13   relating to three different population centers.

14             Mr. Hifter actually in his responses to their

15   interrogatories did the best he could without providing state

16   secrets in providing responses to these, but, but again, a lot

17   of them are just extremely broad.

18             And then many of the interrogatories and requests for

19   production refer to a, a paragraph of the complaint and ask why

20   he denied that paragraph.  Again, Mr. Hifter did the best to

21   provide an answer, but it's a very broad question why, you

22   know, he denied, you know, something like an allegation such as

23   he waged indiscriminate war.

24             Well, you know, how do you provide an interrogatory

25   response saying, I did not wage indiscriminate war?  And

Anneliese J. Thomson  OCR-USDC/EDVA (703)299-8595

1    similarly with the request for production of documents

2    regarding the same.

3            I made this argument earlier, but I would like to

4    close with regard to the requests for production of documents.

5    These documents are not Mr. Hifter's documents.  These

6    documents belong to the LNA, and to the extent that he has

7    access to them, it is only because he is the field marshal and

8    not because they are his own documents, and so I do think that

9    there are issues of comity there where this is a -- these are

10   documents that are not Mr. Hifter's as an individual.  They are

11   documents of the LNA, and the TVPA specifically cannot be

12   claimed against an organization.  It can only be against an

13   individual, and therefore, I do not think that the plaintiffs

14   should be able to compel production of documents that belong to

15   the LNA and not Mr. Hifter.

16           And unless Your Honor has any more questions, I'm

17   finished.

18           THE COURT:  Thank you.

19           Mr. Gill, I'll give you one final chance to be heard.

20           MR. GILL:  Yes, Your Honor.  Thank you very much.

21   First, on the argument that these documents belong to the LNA

22   and not Mr. Hifter is not a relevant argument mainly because

23   Mr. Hifter is a head of the LNA, those documents are under his

24   command and control, and he has access to those documents, and

25   that's what the discovery should be.

Anneliese J. Thomson  OCR-USDC/EDVA  (703)299-8595

20

1          To Ms. -- to counsel's point of overbroadness, again,

2    a lot of the answers invoke the state secrets privilege.  After

3    the state -- as Your Honor has just ruled, the state secrets

4    privilege is no longer -- is not applicable to this case.  If

5    counsel would like to reanswer the questions, I'm sure we can

6    work out, you know, whatever (inaudible) there are to the fact

7    that they're overbroad.

8          We did our best to keep the questions very, very

9    limited, very, very focused.  I mean, as counsel even stated,

10   we asked for military operations for a two-week period.  We

11   didn't say months; we didn't say years; we didn't say anything.

12   So we are doing our best, but we do need to get the evidence

13   that we need in order to prove -- you know, in order to prove

14   our case.

15         THE COURT:  Well, let me ask you some of the same

16   questions I asked your opposing counsel there.

17         MR. GILL:  Yes, Your Honor.

18         THE COURT:  But you've heard the defense concede that

19   information regarding the three specific incidents on April 6,

20   14, and 16 are fair game, having overruled the issue of state

21   secrets.

22         Let me one more time make sure that, that I

23   understand.  This is one of the reasons that courts don't like

24   going through interrogatories or requests for production of

25   documents question by question because it's not the Court's job

USCA4 Appeal: 24-1426    Doc: 17    Filed: 07/15/2024    Pg: 128 of 264
Case 1:19-cv-00853-LMB-JFA   Document 85   Filed 09/16/21   Page 21 of 26 PageID# 694

21

1    to rewrite or make what might be inartful a more artful or

2    specific request.  So we sort of have to live with what, what

3    we've got.

4           MR. GILL:  Yes, Your Honor.

5           THE COURT:  In the interests of efficiency, however,

6    I'm going to try and get us to, you know, an understanding so

7    that everybody understands what is being sought and what is

8    then being provided.

9           So are you asking for information about military

10   activities outside that took place between April 6 and April 16

11   that are not related to those three locations?

12          MR. GILL:  No, Your Honor.  We're asking for again

13   military operations that took place within those two-week

14   period that we stated.  The not related to, I mean, if there's

15   a military operation that took place not even anywhere near

16   that area, then no.  We're not asking, like, on the southern

17   side.

18          THE COURT:  Well, the three locations are, as I

19   understand it, Spring Valley, or Wadi al Rabie --

20          MR. GILL:  Yes, Your Honor.

21          THE COURT:  -- on April 6; the Ayan Zarah district on

22   April 14; and the Hay Alintassar area in Tripoli.

23          MR. GILL:  Yes, Your Honor.

24          THE COURT:  Is that correct?

25          MR. GILL:  That's correct, Your Honor.

Anneliese J. Thomson  OCR-USDC/EDVA (703)299-8595

22

1          THE COURT:  Okay.  And that's the information you're

2    looking for.

3          MR. GILL:  Yes, Your Honor.

4          THE COURT:  That's what you're intending to get from

5    them through your interrogatories and requests for production

6    of documents; is that right?

7          MR. GILL:  Yes, Your Honor.

8          THE COURT:  Very good.  Then based on your

9    representation, the defense counsel's representation, I'm

10   granting the motion, and I'm requiring that any interrogatory

11   requests for production of documents related to those events on

12   those dates be provided fully, and defense counsel has

13   indicated that they have already provided some responses.  I

14   haven't seen them.  I don't need to see them.

15         MR. GILL:  Yes, Your Honor.

16         THE COURT:  But to the extent that any documents have

17   been withheld based either on the objection which has been

18   overruled with regard to state secrets or based on relevance or

19   overbreadth under the theory that it was ambiguous whether or

20   not more information was being sought regarding military

21   operations in other cities or other locations on, on other

22   dates or even that fell on the same date, what I am granting is

23   the ability to collect information directly related to the

24   claims in your amended complaint, which are those locations on

25   those dates.

Anneliese J. Thomson  OCR-USDC/EDVA (703)299-8595

23

1          MR. GILL:  Yes, Your Honor.

2          THE COURT:  Accordingly, that would apply to the

3  information seeking witness information, whether it's in the

4  chain of command or otherwise.

5          On the other hand, I'm denying the request with

6  regard to every potential person in the Libyan National Army.

7  I can't imagine that you would have wanted that --

8          MR. GILL:  No, Your Honor.

9          THE COURT:  -- but to the extent there's any

10  ambiguity, I'm not requiring that that be turned over.

11          It would not be relevant, and it would be overbroad.

12          Likewise, I'm not requiring any information about

13  other military operations that are not related to the events in

14  the amended complaint.

15          So the reason I am giving this much detail is because

16  I'm not trying to specify every single interrogatory and every

17  request for production of documents.  I hope that this guidance

18  will allow both of you to understand the scope of what I am

19  granting.  So I am granting the motion in part, and I'm denying

20  it in part.

21          I'm also denying it with regard to those

22  interrogatories and requests for production of documents that

23  go to Mr. Hifter's authority given the representations both in

24  the answer that he is the duly appointed head of the Libyan

25  National Army and concession that that is not an issue that's

24

 1    really in dispute in this case.

 2            MR. GILL:  Yes, Your Honor.

 3            THE COURT:  That is not a concession as to the other

 4    elements of the TVPA, and so both sides are welcome to argue

 5    about the legal significance and the facts going to what

 6    happened, whether he knew about it, whether he can be held

 7    responsible.

 8            But as I understand it, I am denying the motion with

 9    regard to communications with other governments, with regard to

10    the House of Representatives, with regard to funding sources,

11    under the theory that those are questions that you are

12    propounding in order to establish his authority under color of

13    law.

14            Is that clear?

15            MR. GILL:  Yes, Your Honor.

16            THE COURT:  Okay.  The Haftar's Armed Forces.  It

17    sounds to me like this is a semantic issue.  Tell me what it is

18    you're asking for.  I'm not -- they seem to indicate that to

19    the extent Haftar's Armed Forces is simply a different name for

20    the Libyan National Army --

21            MR. GILL:  Yes, Your Honor.

22            THE COURT:  -- they are conceding that he is the head

23    of the Libyan National Army.

24            MR. GILL:  Yes, Your Honor.  And that's, that's what

25    we're asking for, and we made that clear in our papers as well,

Anneliese J. Thomson OCR-USDC/EDVA (703)299-8595

25

1    that we've heard it referred to as Haftar's Armed Forces and,

2    you know, LNA, so we just used a different term, but it is the

3    LNA that we're, we're looking for.

4            THE COURT:  So that issue is moot now that they've

5    made this representation, or is there something that needs to

6    be done?

7            MR. GILL:  I mean, to the extent that that's the only

8    army that General Hifter is using and not some mercenaries that

9    are outside of the official LNA, that was what we were trying

10   to go for, if there are any mercenaries there.  There have been

11   media reports and such that there are some mercenaries that

12   General Hifter is using that might not be actually incorporated

13   in the official LNA.  So that is why we, we've asked for any

14   Armed Forces that he is -- that he is in charge of, which, I

15   mean, again, we don't think the question is, is overbroad or

16   confusing.  If that's the only Armed Forces that General Hifter

17   has, then he can just state that under, you know, under oath

18   and interrogatory and provide documents of that, and we're

19   fine.

20           THE COURT:  Very good.  Well, based on that

21   specification, I will make sure rather than trying to go

22   through a fuller cross-examination from the bench, that to the

23   extent that Haftar's Armed Forces is not a term of art that

24   refers to some other group of people or that the -- Mr. Hifter

25   has some other organization that he supervises, that should be

Anneliese J. Thomson  OCR-USDC/EDVA (703)299-8595

USCA4 Appeal: 24-1426    Doc: 17      Filed: 07/15/2024    Pg: 133 of 264
Case 1:19-cv-00853-LMB-JFA   Document 85   Filed 09/16/21   Page 26 of 26 PageID# 699

26

1    reflected in the responses.

2            MR. GILL:  Thank you, Your Honor.

3            THE COURT:  Is there anything else that I need to

4    address that I am leaving out?  The motion is granted in part

5    and denied in part, as I've stated from the bench.  My order

6    will simply reflect that.  This transcript will reflect the

7    details.

8            MR. GILL:  Thank you, Your Honor.  That's it.

9            THE COURT:  I will require that any supplementation

10   based on today's argument be made within ten days.

11           MR. GILL:  Yes, Your Honor.  Thank you.

12           THE COURT:  Thank you.

13           You may call the next matter.

14           MS. McKASSON:  Thank you, Your Honor.

15           THE COURT:  Thank you.

16                        (Which were all the proceedings

17                         had at this time.)

18

19                    CERTIFICATE OF THE TRANSCRIBER

20       I certify that the foregoing is a correct transcript from

21   the official electronic sound recording of the proceedings in

22   the above-entitled matter.

23

24   _____
                          /s/
                    Anneliese J. Thomson

25

Anneliese J. Thomson  OCR-USDC/EDVA (703)299-8595

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| AIDA ELZAGALLY, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-00853 (LMB/MSN) |
| | ) | |
| KHALIFA HIFTER, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————— | ) | |
| MUNA AL-SUYID, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-00170 (LMB/MSN) |
| | ) | |
| KHALIFA HIFTER, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————— | ) | |
| ALI ABDALLA HAMZA, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-01038 (LMB/MSN) |
| | ) | |
| KHALIFA HIFTER, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————— | ) | |

## JOINT MOTION TO CONSOLIDATE RELATED
## <u>CASES FOR DISCOVERY AND LIMITED PRETRIAL PROCEEDINGS</u>

All Parties, hereby move this Court to consolidate *Aida Elzagally, et al., v.*

*Khalifa Hifter*, Case No. 1:19-cv-00853 (LMB/MSN) ("*Elzagally*"), *Muna al-Suyid, et*

1

*al., v. Khalifa Hifter*, Case No. 1:20-cv-00170 ("*al-Suyid*"), and *Ali Abdalla Hamza, et al., v. Khalifa Hifter*, Case No. 1:20-cv-01038 (LMB/MSN) ("*Hamza*") for the limited purposes of discovery and pretrial matters, excluding dispositive motions by Parties, pursuant to Federal Rule of Civil Procedure 42(a).

Rule 42(a) permits a court to consolidate actions pending before it if those actions involve "a common question of law or fact." Fed. R. Civ. P 42(a). That standard "is an expansive one, allowing consolidation of the broad range of cases brought in federal court." 8 Moore's Federal Practice § 42.10[1][a] (3d. ed.).

All Parties, jointly and through their respective counsel, hereby respectfully request this Court to consolidate these cases for purposes of discovery and pretrial matters, excluding dispositive motions, for the following reasons:

1. The cases share common questions of law and fact. Here, the *Hamza* Plaintiffs filed suit against Mr. Hifter on September 3, 2020. The *al-Suyid* Plaintiffs filed suit against Mr. Hifter on February 18, 2020. The *Elzagally* Plaintiffs filed suit against Mr. Hifter on June 26, 2019. Each of these lawsuits pending against Mr. Hifter pertain to allegations of substantially similar actions, conduct, or damages within a similar timeframe and location and concerning violations of the same statute (the TVPA).

2. Consolidation will reduce the burden on the Parties and on this Court regarding discovery and limited pretrial matters and conserve judicial resources.

3.  Consolidation will expedite the resolution of issues between the Parties to
sharpen the issues and expedite the resolution of these cases.

4.  The Parties all consent to this consolidation.

WHEREFORE, to promote judicial economy and the expeditious disposition of
these cases and at the Court's encouragement, the Parties respectfully request this
Court limitedly consolidate Case No. 1:19-cv-00853, Case Nos. 1:20-cv-00170 and
1:20-cv-01038.

Dated: October 22, 2021                      Respectfully submitted,

                                             /s/ Lindsay R. McKasson
                                             Lindsay R. McKasson (VSB No. 96074)
                                             Jesse R. Binnall (VSB No. 79292)
                                             Jason C. Greaves (VSB No. 86164)
                                             BINNALL LAW GROUP, PLLC
                                             717 King Street, Suite 200
                                             Alexandria, VA 22314
                                             Tel:  (703) 888-1943
                                             Fax: (703) 888-1930
                                             Email: lindsay@binnall.com
                                                     jesse@binnall.com
                                                     jason@binnall.com

                                             *Attorneys for Khalifa Hifter*

                                             /s/ Thomas M. Craig
                                             Thomas M. Craig, (VSB 58063)
                                             Mark S. Zaid (*Pro Hac Vice*)
                                             Matthew Jury (*Pro Hac Vice*)
                                             FH+H
                                             1751 Pinnacle Drive
                                             Suite 1000
                                             Mclean, Virginia 22102
                                             tcraig@fhhfirm.com
                                             mark@markzaid.com
                                             matthew.jury@mccue-law.com

3

*Attorneys for Hamza Plaintiffs*


/s/ Kevin T. Carroll
Kevin T. Carroll (VSB #95292)
Joseph G. Grasso (*Pro Hac Vice*)
Sarah E. York (VSB #91188)
Wiggin and Dana LLP
800 17th Street, N.W.
Suite 520
Washington, D.C. 20006
kcarroll@wiggin.com
igrasso@wiggin.com
syork@wiggin.com

*Attorneys for al-Suyid Plaintiffs*


/s/ Faisal Gill
Faisal Gill (VSB #93255)
Gill Law Firm
1717 Pennsylvania Avenue, N.W.
Suite 1060
fgill@glawoffice.com

*Attorney for Elzagally Plaintiffs*

4

## CERTIFICATE OF SERVICE

I certify that on October 22, 2021, a copy of the foregoing was filed with the

Clerk of the Court using the Court's CM/ECF system, which will send a copy to all

counsel of record.

Dated: October 22, 2021                    /s/ Lindsay R. McKasson
                                           Lindsay R. McKasson

                                           *Attorney for Khalifa Hifter*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| AIDA ELZAGALLY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-00853 (LMB/MSN) |
| | ) | |
| KHALIFA HIFTER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| MUNA AL-SUYID, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-00170 (LMB/MSN) |
| | ) | |
| KHALIFA HIFTER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ALI ABDALLA HAMZA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-01038 (LMB/MSN) |
| | ) | |
| KHALIFA HIFTER, | ) | |
| | ) | |
| Defendant. | ) | |

## PROPOSED ORDER

This matter comes on the Parties', *Aida Elzagally, et al., v. Khalifa Hifter*, Case

No. 1:19-cv-00853 (LMB/MSN), *Muna al-Suyid, et al., v. Khalifa Hifter*, Case No.

1:20-cv-00170, and *Ali Abdalla Hamza, et al., v. Khalifa Hifter*, Case No. 1:20-cv-

01038 (LMB/MSN), Joint Motion to Consolidate Related Cases for the limited purposes of discovery and pretrial matters, excluding dispositive motions by Parties, pursuant to Federal Rule of Civil Procedure 42(a).

For the reasons stated in the Joint Motion to Consolidate Related Cases for Discovery and Limited Pretrial Proceedings, and because the Court finds good cause exists to consolidate as agreed by the Parties in their joint motion, it is hereby

ORDERED that the joint motion is GRANTED.

**SO ORDERED**.

Entered: _October 22_, 2021

_____ /s/ _____
Leonie M. Brinkema
United States District Judge

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| AIDA ELZAGALLY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19cv0853 (LMB/JFA) |
| | ) | |
| KHALIFA HIFTER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| MUNA AL-SUYID, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20cv0170 (LMB/JFA) |
| | ) | |
| KHALIFA HIFTER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ALI ABDALLA HAMZA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20cv1038 (LMB/JFA) |
| | ) | |
| KHALIFA HIFTER, | ) | |
| | ) | |
| Defendant. | ) | |

**PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS**

This matter is before the court on plaintiffs' motions for default judgment against

defendant Khalifa Hifter ("Hifter" or "defendant") in three consolidated cases. Because

plaintiffs' motions seek relief that would be dispositive of the claims in their complaints, they are

being considered in accordance with 28 U.S.C. § 636(b)(1)(B). Pursuant to 28 U.S.C.

1

§ 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed findings of fact and recommendations, a copy of which will be provided to all interested parties.

## **Factual Background**

Plaintiffs are citizens and/or residents of Libya, and they allege claims against defendant pursuant to the Torture Victim Protection Act ("TVPA"). Plaintiffs allege that defendant used his leadership role with the Libyan National Army ("LNA") to authorize indiscriminate bombing and torture of Libyan civilians, including several of plaintiffs' family members.

### i.    *Elzagally Plaintiffs*

On July 9, 2021, plaintiffs Aida Elzagally, Ayah Tunalli, Alaa Tunalli, Abdulhameed Tunalli, Abdulrrauf Tunalli, Muhammad Tunalli, Abduladeem Tunalli, Mais Ahmed Mayouf, and Abdulhameed Al-Harramah (collectively "Elzagally plaintiffs") filed an amended complaint ("Am. Compl.") (Docket no. 69) alleging claims against defendant pursuant to the TVPA.[1]  (Am. Compl. ¶¶ 64–68).  The Elzagally plaintiffs allege that defendant—a U.S. Citizen—left his home in Virginia in 2015 and moved to Libya to form the LNA.  (Am. Compl. ¶¶ 1, 17–18, 22–25). As "Field Marshall" of the LNA, defendant allegedly authorized the indiscriminate bombing and torture of Libyan citizens.  (Am. Compl. ¶¶ 1–2, 28–32).  The Elzagally plaintiffs allege that their relative, Msaddek Tunalli, was killed on April 14, 2019 when he was struck by a mortar fired while defendant's forces were randomly shelling the area.  (Am. Compl. ¶¶ 33–44).  They further allege that defendant and his forces launched missiles into plaintiff Mais Ahmed Mayouf's neighborhood on April 16, 2019, killing her mother, Mufida Sasi Abu Gasiah, her grandmother, and her aunt, and leaving Mais as the only survivor.  (Am. Compl. ¶¶ 14, 45–53).

---

[1] The Elzagally plaintiffs filed their original complaint on June 26, 2019 alleging several additional claims against defendant.  (Docket no. 1).  The Elzagally plaintiffs' non-TVPA claims were dismissed on September 29, 2020.  (Docket no. 43).

Lastly, the Elzagally plaintiffs allege that plaintiff Abdulhameed Al-Harramah's son, Dr. Ayman Al-Harramah, was killed on April 6, 2019 when defendant bombed the hospital in which Dr. Al-Harramah was working. (Am. Compl ¶¶ 54–59).

### ii.    al-Suyid Plaintiffs

On February 18, 2020, plaintiffs Muna al-Suyid, Abdalla al-Krshiny, Ahmad al-Krshiny, Mahmud al-Krshiny, and Ibrahim al-Krshiny (collectively "al-Suyid plaintiffs") filed a complaint ("Compl.") (Docket no. 1) alleging claims against defendant pursuant to the TVPA.[2] (Compl. ¶¶ 55–71). The al-Suyid plaintiffs allege that their family members were tortured and killed in Benghazi by LNA officials acting under defendant's command as part of a military program called "Operation Dignity." (Compl. ¶¶ 26–46). On October 15, 2014, LNA soldiers acting under defendant's command allegedly fired on plaintiff Muna al-Suyid's home and killed her brothers, Mustafa al-Suyid and Khalid al-Suyid. (Compl. ¶¶ 29–31). The al-Suyid plaintiffs also allege that the soldiers kidnapped, tortured, and killed Muna's father, Abdel Salam al-Suyid, and brother, Ibrahim al-Suyid. (Compl. ¶¶ 30–33). On October 17, 2014, LNA soldiers, again acting under defendant's command, allegedly fired on the al-Krshiny family home, killing two family members and taking plaintiff Ibrahim al-Krshiny and his five surviving brothers as prisoners. (Compl. ¶¶ 34–36). While held captive, Ibrahim and his brother, Mustafa, were allegedly tortured, and Mustafa's body was recovered on November 5, 2014 with bullet wounds to his head and chest. (Compl. ¶¶ 37–44). LNA soldiers also allegedly opened fire on a truck containing LNA prisoners, injuring plaintiffs Abdalla al-Krshiny, Ahmad al-Krshiny, and Mahmud al-Krshiny, and killing their brother, Ali. (Compl. ¶ 45).

---

[2] The al-Suyid plaintiffs' complaint alleged several additional claims against defendant and his sons, Khalid Hifter and Saddam Hifter. (Docket no. 1). All claims except for the TVPA claims against defendant were dismissed on September 29, 2020. (Docket no. 52).

iii.    *Hamza Plaintiffs*

On September 17, 2020, plaintiffs Ali Abdalla Hamza, Nehma Abdalla Al-Mahdi Hamza, Abdelhalim Abdalla Mahdi Hamza, and Salimah Abdullah Abraheem Jibreel (collectively "Hamza plaintiffs") filed an amended complaint ("Am. Compl.") (Docket no. 8) alleging claims against defendant pursuant to the TVPA.[3] (Am. Compl. ¶¶ 199–211). Like the al-Suyid plaintiffs, the Hamza plaintiffs allege that their family members were tortured and killed by LNA soldiers as part of Operation Dignity. (Am. Compl. ¶¶ 112–162). On February 26 and 28, 2017, LNA soldiers operating under defendant's command allegedly fired tank shells into a home in which members of the Hamza family were sheltering, killing plaintiff Ali Abdalla Hamza's brother, Ibrahim Abdalla Hamza, and his sister, Fariha Abdalla Hamza. (Am. Compl. ¶¶ 10, 139–40). The Hamza plaintiffs also allege that LNA soldiers fired machine guns and heavy artillery into several cars containing civilians attempting to flee the city, killing Ali's mother, Aalya Faleh Al-Derbali, his brother, Mahmoud "Naser" Abdalla Hamza, and his sister, Faiza Abdalla Hamza. (Am. Compl. ¶¶ 10, 144). Ali's sister, Abtisam, survived the attack with a gunshot wound to her shin, but she was allegedly taken prisoner and tortured by LNA interrogators. (Am. Compl. ¶¶ 145–46). The Hamza plaintiffs also allege that LNA forces bombed plaintiff Salimah Jibreel's house on January 5, 2017, killing three of her children: Aziza, Maryam, and Mohammad. (Am. Compl. ¶ 159). Salimah, her husband, and one of her children escaped with injuries, but her husband was allegedly captured by LNA forces, tortured, and kept in detention, where he currently remains. (Am. Compl. ¶¶ 159, 161–62).

---

[3] The Hamza plaintiffs' amended complaint alleged several additional claims under the Alien Tort Statute, all of which were dismissed on March 26, 2021. (Docket no. 33).

**Procedural Background**

    *i.      Elzagally Action (1:19-cv-0853-LMB-JFA)*

    The Elzagally plaintiffs filed the original complaint in this action on June 26, 2019. (Docket no. 1). On December 4, 2019, the Elzagally plaintiffs filed an affidavit certifying that defendant was served with the complaint and summons pursuant to Libyan law on November 25, 2019. (Docket no. 8). Defendant failed to file a responsive pleading, and the Clerk's Office entered a default as to defendant on January 9, 2020. (Docket no. 12). The Elzagally plaintiffs filed a motion for default judgment on January 31, 2020 (Docket no. 18), and the court filed a Report and Recommendation on April 23, 2020 recommending that the Elzagally plaintiffs' motion be denied (Docket no. 25). Counsel entered an appearance on behalf of defendant on July 31, 2020 (Docket no. 27), and the Clerk's Entry of Default was set aside on August 6, 2020 (Docket no. 29). Defendant filed a motion to dismiss (Docket no. 32), which the District Judge granted in part on September 29, 2020 (Docket no. 43).

    In early 2021, defendant's counsel requested leave to withdraw, which the District Judge granted on January 12, 2021 (Docket no. 48), and the District Judge entered an order requiring that defendant file an answer to the complaint by February 5, 2021 (Docket no. 49). On February 6, 2021, counsel for defendant entered an appearance and requested an extension of the deadline to respond. (Docket no. 50). Defendant's motion was granted, and he filed an answer to the complaint on February 19, 2021 (Docket no. 54). The Elzagally plaintiffs filed their amended complaint on July 9, 2021 (Docket no. 69), and defendant filed his answer on July 11, 2021 (Docket no. 71). On July 12, 2021, the District Judge entered an amended scheduling order reopening discovery in the case. (Docket no. 73).

On August 17, 2021, the Elzagally plaintiffs filed a motion to compel alleging that defendant's responses to their First Set of Document Requests and First Set of Interrogatories were deficient. (Docket no. 76). In his opposition to the motion, defendant argued that the state secrets privilege recognized for the U.S. executive branch should also apply to foreign governments in TVPA actions and that he should be not be compelled to disclose Libyan military secrets. (Docket no. 79). On September 14, 2021, the court granted the Elzagally plaintiffs' motion in part, rejected defendant's state secrets argument, and directed defendant to provide full and complete responses to the outstanding discovery requests. (Docket no. 84).

On October 2, 2021, the Elzagally plaintiffs served a Notice of Deposition on defendant scheduling a videoconference deposition for October 12, 2021. (Docket no. 97-1). On October 8, 2021, defendant filed a motion for a protective order to prevent his deposition. (Docket no. 92). The Elzagally plaintiffs filed an emergency motion to compel defendant's deposition on October 11, 2021. (Docket no. 95). On October 14, 2021, the court denied defendant's motion for a protective order, finding that defendant's arguments regarding state secrets and related doctrine were "'similar' if not nearly identical" to those that the court had previously rejected. (Docket no. 106). The court further granted the Elzagally plaintiffs' motion to compel and ordered defendant to sit for a deposition within fourteen (14) days after entry of the order.[4]  *Id.*

On October 22, 2021, the District Judge ordered that this case be consolidated with the *al-Suyid* and *Hamza* matters for discovery and pretrial matters. (Docket no. 118). On November 4, 2021, the District Judge ordered that all three actions be stayed pending the conclusion of Libya's apparently upcoming election. (*Elzagally*, Docket no. 123; *al-Suyid*, Docket no. 175; *Hamza*, Docket no. 91).

---

[4] Defendant objected to the order, and the District Judge overruled his objection on October 29, 2021. (Docket no. 121).

ii. *al-Suyid Action (1:20-cv-0170-LMB-JFA)*

The al-Suyid plaintiffs filed their complaint in this action on February 18, 2020. (Docket no. 1). On March 20, 2020, the al-Suyid plaintiffs filed an affidavit certifying that defendant was served by mail on March 14, 2020. (Docket no. 20). Defendant failed to file a responsive pleading, and the Clerk's Office entered a default as to defendant on May 5, 2020. (Docket no. 25). The al-Suyid plaintiffs filed a motion for default judgment on May 22, 2022 (Docket no. 27), and the court filed a Report and Recommendation on June 17, 2020 recommending that the al-Suyid plaintiffs' motion be granted (Docket no. 31). Counsel entered an appearance on behalf of defendant on July 31, 2020 (Docket no. 32), and the Clerk's Entry of Default was set aside on August 6, 2020 (Docket no. 35). Defendant filed a motion to dismiss (Docket no. 38), which the District Judge granted in part on September 29, 2020 (Docket no. 52).

In early 2021, defendant's counsel requested leave to withdraw, which the District Judge granted on January 12, 2021 (Docket no. 56), and the District Judge entered an order requiring that defendant file an answer to the complaint by February 5, 2021 (Docket no. 57). Counsel for defendant entered an appearance and requested an extension of the deadline to respond on February 8, 2021. (Docket no. 59). Defendant's motion was granted, and he filed an answer to the complaint on February 19, 2021 (Docket no. 66).[5] On February 23, 2021, the District Judge entered a scheduling order opening discovery in the case. (Docket no. 67).

On September 10, 2021, the al-Suyid plaintiffs served a Notice of Deposition on defendant scheduling a videoconference deposition on September 22, 2021. (Docket no. 113-10). On September 17, 2021, the al-Suyid plaintiffs filed a motion to compel discovery from and deposition of defendant. (Docket no. 112). In their memorandum in support of their motion, the

---

[5] Defendant filed an amended answer on April 1, 2021. (Docket no. 86).

al-Suyid plaintiffs indicated that defendant served deficient responses to their First Set of Requests for Production, failed to respond entirely to their First Set of Interrogatories by the September 3, 2021 deadline, refused to appear for the September 22 deposition, and refused to reschedule the deposition. (Docket no. 113). On September 24, 2021, defendant filed a motion for a protective order to limit his discovery obligations. (Docket no. 115). In his memoranda in support of his motion and in opposition to the al-Suyid plaintiffs' motion, defendant reasserted largely the same state secrets argument that he had made in his prior opposition to the Elzagally plaintiffs' motion to compel, but he failed to notify the court of the earlier adverse decision in the *Elzagally* matter. (Docket nos 116, 119). On October 1, 2021, the court granted the al-Suyid plaintiffs' motion to compel in part and ordered defendant to respond to the discovery requests within fourteen (14) days after entry of the order. (Docket no. 127). The court further denied defendant's motion for a protective order.[6] (Docket no. 128).

On October 4, 2021, the al-Suyid plaintiffs again served a Notice of Deposition on defendant scheduling a videoconference deposition on October 13, 2021. (Docket no. 145-6). On October 8, 2021, defendant served his objection to the Notice of Deposition asserting the same arguments that had already been rejected in both the instant case and in the *Elzagally* matter. (Docket no. 145-7). Defendant did not appear for his deposition, and the al-Suyid plaintiffs filed another motion to compel defendant's deposition on October 15, 2021 (Docket no. 144). On October 22, 2021, the court granted the al-Suyid plaintiffs' motion to compel and ordered defendant to sit for a deposition within fourteen (14) days after entry of the order.[7] (Docket no. 164). In an affidavit filed with the instant motion, counsel for the al-Suyid plaintiffs

---

[6] Defendant objected to these orders, and the District Judge overruled his objections on October 29, 2021. (Docket no. 173).

[7] Defendant objected to this order, and the District Judge overruled his objection as to the order compelling his deposition. (Docket no. 173).

represents that defendant was noticed for a deposition on November 1, 2021, which was

rescheduled to November 9, 2021.  (Docket no. 200-1 ¶ 4).  The November 9, 2021 deposition

did not occur in light of the District Judge's November 4, 2021 order staying the three cases

(Docket no. 175).

    *iii.*  *Hamza Action (1:20-cv-1038-LMB-JFA)*

  The Hamza plaintiffs filed the original complaint in this action on September 3, 2020

(Docket no. 1) and filed an amended complaint on September 17, 2020 (Docket no. 8).  On

December 2, 2020, the Hamza plaintiffs filed affidavits certifying that defendant was served by

posting and certified mail on December 1 and 2, 2020.  (Docket nos. 9, 10).  Defendant failed to

file a responsive pleading, and the Clerk's Office entered a default as to defendant on January 4,

2021.  (Docket no. 12).  Counsel entered an appearance on behalf of defendant on February 8,

2021 (Docket no. 13), and the Clerk's Entry of Default was set aside on February 23, 2021

(Docket no. 22).  Defendant filed a motion to dismiss (Docket no. 24), which the District Judge

granted in part on March 26, 2021 (Docket no. 33).  Defendant filed an answer on July 20, 2021

(Docket no. 40), and the District Judge entered a scheduling order opening discovery in the case

on July 21, 2021 (Docket no. 41).

  On August 20, 2021, the Hamza plaintiffs served a Notice of Deposition on defendant

scheduling a deposition on September 20, 2021.  (Docket no. 64-1 at 7).  Defendant did not serve

any objections to the notice pursuant to Local Civil Rule 26(C), but defense counsel notified

counsel for the Hamza plaintiffs less than two days before the scheduled deposition that

defendant would not be appearing because "[a]nswering questions by deposition would place

him in criminal jeopardy in Libya" (*Id.* at 20).

On September 24, 2021, defendant filed a motion for a protective order to limit his discovery obligations. (Docket no. 44). In his memorandum in support of his motion, defendant again reasserted largely the same argument as he had made in his prior opposition to the Elzagally plaintiffs' motion to compel (and in his companion motion in the *al-Suyid* case, filed the same day), and he again failed to notify the court of the earlier adverse decision in the *Elzagally* matter. (Docket no. 45). On October 1, 2021, the court denied defendant's motion for a protective order.[8] (Docket no. 55).

On October 1, 2021, the Hamza plaintiffs again served a Notice of Deposition on defendant scheduling a deposition on October 14, 2021. (Docket no. 64-1 at 27). On October 8, 2021, defendant served his objection to the Notice of Deposition asserting the same arguments that had already been rejected in all three cases. (*Id.* at 31–32). Defendant did not appear for his deposition, and the Hamza plaintiffs filed a motion to compel defendant's deposition and for sanctions on October 14, 2021 (Docket no. 64). On October 22, 2021, the court granted the Hamza plaintiffs' motion to compel and ordered defendant to sit for a deposition within fourteen (14) days after entry of the order. (Docket no. 80). The court denied the Hamza plaintiffs' motion for sanctions without prejudice to their ability to seek sanctions at a later date.[9] (*Id.*).

iv.     *Defendant's May 9, 2022 Deposition and the Instant Motions*

On March 11, 2022, the District Judge lifted the stay in the *Hamza* matter and ordered defendant to pay the Hamza plaintiffs' costs incurred due to his failure to attend the September 20 and October 14, 2021 depositions. (*Hamza*, Docket no. 106). On April 22, 2022, the District Judge lifted the stay in the *Elzagally* and *al-Suyid* matters. (*Elzagally*, Docket no. 130; *al-Suyid*,

_____

[8] Defendant objected to this order, and the District Judge overruled his objections on October 29, 2021. (Docket no. 88).

[9] Defendant objected to these orders, and the District Judge overruled his objections on October 29, 2021. (Docket no. 88).

Docket no. 187). The parties in the three cases collectively agreed to conduct a joint deposition of defendant, and it was scheduled for May 9, 2022. (*Hamza*, Docket no. 111). Counsel for defendant appeared before the court on Friday, May 6, 2022 to address some outstanding issues relating to defendant's pending deposition but gave no indication that defendant was unable or unwilling to attend the deposition scheduled for the following Monday.

On May 20, 2022, the al-Suyid and Hamza plaintiffs filed motions for default judgment alleging that defendant failed to attend the May 9, 2022 deposition.[10] (*al-Suyid*, Docket no. 199; *Hamza*, Docket no. 129). Plaintiffs indicated that they received an email from defense counsel on May 7, 2022, one day after counsel's appearance in court, indicating that defendant would be unable to attend the May 9 deposition due to his "official duties and obligations." (*Hamza*, Docket no. 130-1 at 10). Defense counsel did not elaborate further but requested plaintiffs' consent to continue the deposition to mid-June. (*Id.*). Plaintiffs' counsel declined defendant's proposed alternative dates, and defendant failed to appear for the May 9, 2022 deposition. (*Hamza*, Docket no. 130-1 at 9; *al-Suyid*, Docket no. 200-1 ¶¶ 3–5). On June 10, 2022, this case was called in open court, and the parties appeared before the undersigned and presented their arguments on the motions for default judgment.[11]

## Proposed Findings and Recommendations

Plaintiffs allege that defendant has unreasonably and consistently failed to comply with his discovery obligations in each of the three cases. For this reason, plaintiffs seek an order

---

[10] The Elzagally plaintiffs filed their motion for default judgment on May 27, 2022 alleging similar claims. (*Elzagally*, Docket no. 145).
[11] The undersigned also heard argument on motions to withdraw filed by defendant's counsel in each case.

granting default judgment as a sanction in each case pursuant to Fed. R. Civ. P. 37.[12] (*Elzagally*,

Docket no. 145; *al-Suyid*, Docket no. 199; *Hamza*, Docket no. 129). As explained in more detail

below, the undersigned recommends a finding that: (1) defendant has acted in bad faith by

refusing to comply with his litigation obligations, (2) that plaintiffs have been materially

prejudiced by defendant's misconduct, (3) that Rule 37 sanctions are warranted here to deter

discovery non-compliance, and (4) that no sanction less drastic than entry of default as to

defendant's liabilty would likely be effective. For these reasons, the undersigned recommends

that the court grant plaintiffs' motions in part and that default be entered in each case as to

defendant's liability for plaintiffs' TVPA claims.

      i.    *Legal Standard*

Fed. R. Civ. P. 37 gives the court broad discretion to order sanctions for a party's failure

to cooperate in discovery. *See* Fed. R. Civ. P. 37(b)(2)(A). The court's discretion is somewhat

narrower when considering whether to order a default judgment, which the Fourth Circuit has

held should be limited to "that rare case where the conduct represents such 'flagrant bad faith'

and 'callous disregard' of the party's obligation under the Rules as to warrant the sanction not

simply for the purpose of preventing prejudice to the discovering party but as a necessary

deterrent to others." *See Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 504 (4th Cir. 1977).

Before ordering a default judgment as a discovery sanction, the court must consider: "(1)

whether the noncomplying party acted in bad faith; (2) the amount of prejudice his

noncompliance caused his adversary . . .; (3) the need for deterrence of the particular sort of

noncompliance; and (4) the effectiveness of less drastic sanctions." *Mut. Fed. Sav. & Loan*

---

[12] The Hamza plaintiffs also seek an award of attorneys' fees and costs. (*Hamza*, Docket
no. 129).

12

*Ass'n v. Richards & Assoc., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (citing *Wilson*, 561 F.2d at 503–06).

      ii.     *Defendant's Bad Faith Conduct*

Defendant's consistent disregard of deadlines and court orders over several years of litigation provides sufficient evidence of bad faith. Defendant's inability or unwillingness to comply with his obligations began even before the start of discovery. In each case, defendant failed to file responsive pleadings in a timely manner, resulting in a Clerk's entry of default that was later set aside. (*Elzagally*, Docket no. 12; *al-Suyid*, Docket no. 25; *Hamza*, Docket no. 12). In addition, defendant failed to respond timely to the Elzagally and al-Suyid plaintiffs' complaints following withdrawal of his original counsel. (*Elzagally*, Docket no. 49; *al-Suyid*, Docket no. 57). Instead, defendant's counsel entered an appearance and requested an extension of time to respond after the court-ordered deadline had already passed. (*Elzagally*, Docket no. 50; *al-Suyid*, Docket no. 59).

Defendant consistently failed to adhere to his discovery obligations as well. Defendant provided deficient responses to the Elzagally plaintiffs' First Set of Document Requests and First Set of Interrogatories, which necessitated a motion to compel and a court order requiring that defendant provide full and complete responses. (*Elzagally*, Docket nos. 76, 84). Defendant failed to respond entirely to the al-Suyid plaintiffs' First Set of Interrogatories by the deadline and provided deficient responses to their First Set of Requests for Production, again necessitating a motion to compel and a court order. (*al-Suyid*, Docket no. 112, 127).

Between the three cases, defendant has failed to attend at least six separate depositions, properly noticed for October 12, October 13, October 14, September 20, and September 22, 2021, and, most recently, May 9, 2022. (*Elzagally*, Docket no. 97-1; *al-Suyid*, Docket nos. 113-

13

10, 145-6; *Hamza*, Docket nos. 64-1 at 7, 64-1 at 27, 111).  Defendant's refusal to sit for a

deposition has been without adequate justification and in violation of at least one court order.

(*Elzagally*, Docket no. 106).  Defendant has instead engaged in extensive and unnecessary

motions practice and has repeatedly filed duplicative motions for protective orders relying on

state secrets and similar arguments that the court has previously rejected.  (*Elzagally*, Docket no.

92; *al-Suyid*, Docket no. 115; *Hamza*, Docket no. 44).

Defendant's failure to attend his May 9, 2022 deposition is particularly troubling.  Two

days before his deposition, and only one day after appearing before this court and discussing

matters related to that deposition, counsel for defendant indicated that defendant was unable to

attend the deposition due to his "official duties and obligations."  (*Hamza*, Docket no. 130-1 at

10).  Defendant's oppositions to the instant motions provide no further elaboration, stating only

that "[h]is duties in Libya caused an unexpected and unavoidable conflict with his date."

(*Hamza*, Docket no. 137 at 2).  Defendant's oppositions lack evidence any affidavit from

defendant himself certifying under oath a reason for missing the latest deposition or indicating

defendant's genuine intent to sit for a deposition.  Based on defendant's history of discovery

misconduct including failing to appear at other properly noticed depositions, counsel's statement

in the pleadings alone that defendant eventually intends to sit for a deposition is wholly

inadequate (*Hamza*, Docket no. 137 at 1).  Moreover, it is not clear how counsel can represent

that defendant intends to sit for a deposition while simultaneously indicating in motions to

withdraw that defendant has "ceased meaningful communication and cooperation" with counsel.

(Docket no. 203 at 3) (noting that "[a]ttempts to discuss the Defendant's obligations in this case

and the others pending against the Defendant in this Court are now being ignored").  Defendant's

14

blatant and consistent refusal to comply with his discovery obligations fully support a finding of bad faith.

            iii.    *The Prejudicial Effect on Plaintiffs*

        As the direct result of defendant's bad faith conduct, plaintiffs have been unable to secure evidence reasonably necessary for substantive proceedings in their cases. As the *Elzagally* plaintiffs highlight in their memorandum in support of their motion for default judgment, defendant's responses to their interrogatories and requests for document production have been largely deficient. (*Elzagally*, Docket no. 145-1 at 3–4). The Elzagally plaintiffs note that the limited documents produced by defendant consisted entirely of "publicly available LNA public relations statements or copies of the Libyan penal code." (*Elzagally*, Docket no. 145-1 at 3). The Elzagally plaintiffs reasonably argue that it is "difficult to believe that [defendant] does not have access to any responsive documents other than public relations statements, such as plans, budgets, reports, maps, organizational charts, or any other type of non-public document relevant to the events in question." (*Elzagally*, Docket no. 145-1 at 4). The al-Suyid plaintiffs similarly note that nearly all of the few documents that defendant produced in discovery are publicly available and that defendant has consistently refused to produce responsive, non-public documents, even after entry of a protective order (*al-Suyid*, Docket no. 200 at 7–9). As noted above, defendant's prior arguments that he should not be required to produce such documents due to state secrets and related doctrine have been consistently rejected by the court. Nevertheless, it appears that defendant's stalling tactics were successful, as he now maintains that he no longer possesses the requested documents because he is no longer head of the LNA. (*Elzagally*, Docket no. 146 at 1; *al-Suyid*, Docket no. 205 at 1). Assuming this is true, defendant's argument bolsters plaintiffs' claims of prejudice, as plaintiffs no longer have the

15

same ability to secure documents that they should have been provided in response to discovery requests served in mid-2021.

Defendant devotes substantial portions of his oppositions to the argument that plaintiffs have not provided sufficient direct evidence to support their TVPA claims. (*Elzagally*; Docket no. 146; *al-Suyid*, Docket no. 205; *Hamza*, Docket no. 137). As the al-Suyid plaintiffs note, the standard for Rule 37 sanctions does not require that a movant offer direct evidence in support of its substantive claims.[13] (*al-Suyid*, Docket no. 206 at 2). Even considering plaintiffs' burden of production, this is hardly a case in which plaintiffs have offered no admissible evidence such that an order of default judgment would require "too many logical leaps." (*Hamza*, Docket no. 137 at 6); *see also Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1051 (D.C. Cir. 2014). As reflected in the exhibits to defendant's oppositions, plaintiffs have compiled extensive fact and expert witness deposition testimony in support of their claims. (*Elzagally*, Dockets nos. 146-3, 146-4, 146-5, 146-6; *Hamza*, Docket nos. 137-1, 137-2, 137-3, 137-4). The al-Suyid plaintiffs note that they have produced two hundred and twenty-five (225) pages of documents during discovery, including "autopsy photographs, physician's letters, photographs of Defendant with commanders in the Libyan National Army (LNA), who self-admittedly led the attacks on Plaintiffs, and videos of the LNA burning civilian houses." (Docket no. 206 at 2 n.2). That plaintiffs have not offered *more* evidence can be attributed to defendant's failure to adhere to his discovery responsibilities.

Contrary to defendant's suggestion otherwise, his affidavit denying all knowledge of the relevant events can hardly be considered an adequate substitute for thorough and complete discovery responses and deposition testimony taken under oath and subject to cross-examination.

---

[13] The undersigned further notes that plaintiffs' TVPA claims have each survived prior motions to dismiss. (*Elzagally*, Docket no. 43; *al-Suyid*, Docket no. 52; *Hamza*, Docket no. 33).

16

Defendant's refusal to comply with this court's discovery rules and orders has materially prejudiced plaintiffs by preventing them from determining the extent of defendant's knowledge of and responsibility for the events at issue, a key element of their TVPA claims.

### iv.    Need for Deterrence

The extent and duration of defendant's noncompliance supports a finding that Rule 37 sanctions are necessary as a deterrent to similar discovery misconduct. The cases at issue involve serious claims alleging hundreds of millions of dollars of damages against defendant, a high-profile Libyan official subject to extensive media scrutiny. Despite the gravity of the claims at issue, defendant has steadfastly refused to sit for a properly noticed and scheduled deposition after several years of litigation. Notably, defendant fails to address the deterrence factor entirely in any of his oppositions. For these reasons, sanctions are warranted to discourage similarly situated parties from engaging in the same kinds of discovery misconduct.

### v.    Effectiveness of Less Drastic Sanctions

It is apparent that sanctions other than entry of default as to liability would be ineffective at remedying defendant's discovery misconduct. As an initial matter, defendant was previously ordered to pay expenses for missed depositions (*Hamza*, Docket no. 106), but this did not appear to deter him from missing his most recent deposition. Defendant has also been warned multiple times that his failure to comply with his discovery obligations could result in a default (*Hamza*, Docket nos. 100 at 4, 106). *See Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998). Defendant suggests that prohibiting him from testifying or introducing evidence would be a more appropriate sanction (*Hamza*, Docket no. 137 at 5), but this would not address the prejudice to plaintiffs from defendant's failure to cooperate with discovery. As noted above, the likelihood that defendant will ever sit for a deposition is

17

almost nonexistent.  Adopting defendant's proposed sanction would effectively reward defendant

by forcing plaintiffs to meet their burden of proof without the benefit of thorough and complete

discovery.  For these reasons, entry of default as to liabity is the least drastic sanction that would

remedy defendant's failure to comply with his discovery obligations.

Based on the above findings, the undersigned recommends that the court grant plaintiffs'

motions in part and enter a default as to defendant's TVPA liability in each of the underlying

cases.  (*Elzagally*, Docket no. 145; *al-Suyid*, Docket no. 199; *Hamza*, Docket no. 129).  This is

one of the rare circumstances in which a party shows such "callous disregard" of its own

discovery obligations that default judgment is warranted.  *See Wilson*, 561 F.2d at 504.  When

granting default as a discovery sanction pursuant to Fed. R. Civ. P. 37, the court may, in certain

circumstances, also award damages based on the pleadings. *Anderson*, 155 F.3d at 507.  Despite

the egregiousness of his conduct, defendant should be given an opportunity to contest the amount

of damages alleged in each of these cases to ensure that the sanctions are no more severe than

reasonably necessary.  For this reason, the undersigned recommends that the court grant

plaintiffs' motions in part and enter a default as to liability but require plaintiffs to establish their

claims for damages.

In their motion for default judgment, the Hamza plaintiffs also seek an award of $2,249

in cancellation fees resulting from defendant's missed May 9, 2022 deposition, and attorneys'

fees for "deposition preparation, the filing of the instant motion and/or the litigation in its

entirety."  (Docket no. 130 at 8 n.3).  The Hamza plaintiffs do not cite to any authority in support

of their request for attorneys' fees, so the undersigned recommends that it be denied.  The Hamza

plaintiffs' request for costs associated with the May 9, 2022 deposition is reasonable and

consistent with the court's prior order awarding costs incurred for defendant's other missed

depositions. (*Hamza*, Docket no. 106). For these reasons, the undersigned recommends that the Hamza plaintiffs be awarded $2,249 in costs for defendant's most recent deposition.

### Conclusion

For the reasons stated above, the undersigned magistrate judge recommends that plaintiffs' motions for default judgment (*Elzagally*, Docket no. 145; *al-Suyid*, Docket no. 199; *Hamza*, Docket no. 129) be granted in part as to defendant's liability for their TVPA claims. The undersigned recommends that the motions be denied to the extent that they seek an award of damages. The undersigned further recommends that the Hamza plaintiffs' request for attorney's fees be denied and that their request for $2,249 in costs be granted.

### Notice

By means of the court's electronic filing system, the parties are notified that objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of this proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

Entered this 10th day of June, 2022.

_____/s/_____
John F. Anderson
United States Magistrate Judge
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

AIDA ELZAGALLY, et al.,          )
                                 )
            Plaintiffs,          )
                                 )
      v.                         )          1:19-cv-00853 (LMB/JFA)
                                 )
KHALIFA HIFTER,                  )
                                 )
            Defendant.           )

## ORDER

For the reasons stated in open court, it is hereby

ORDERED that Defendant's Motion to Set Aside the Default ("Motion") [Dkt. No. 165]

be held in abeyance until the conclusion of defendant's scheduled deposition which is to begin

on November 6, 2022 at 8:00 a.m.

If the defendant does not appear for this deposition or if he does not answer questions in

compliance with the Court's discovery orders, the Court will deny Defendant's Motion and

proceed with the damages litigation.

The Clerk is directed forward copies of this Order to counsel of record.

Entered this 14 day of October, 2022.

Alexandria, Virginia

_____ /s/
Leonie M. Brinkema
United States District Judge

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| AIDA ELZAGALLY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:19-cv-853 (LMB/JFA) |
| | ) | |
| KHALIFA HIFTER, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

For the reasons stated in open court, the Plaintiffs' Joint Motion Proposing Schedule and

Structure of Trial to Establish Damages [Dkt. No. 164], Plaintiffs' Motion for Leave to File

Reply to Defendant's Opposition to Joint Motion for Schedule and Structure for Trial on

Damages [Dkt. No. 171], Defendant's Objections to Magistrate Judge's Ruling [Dkt. No. 213],

and Defendant's Motion for Reconsideration of Invoking the State Secrets Privilege [Dkt. No.

220] are DENIED; Defendant's Motion to Set Aside Default [Dkt. No. 165] is GRANTED; and

it is hereby

ORDERED that the default entered on July 29, 2022 be and is VACATED.

The Clerk is directed to forward copies of this Order to counsel of record.

Entered this 8th day of September, 2023.

Alexandria, Virginia

/s/
_____
Leonie M. Brinkema
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **AIDA ELZAGALLY, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Civil Action No.: 1:19-cv-853** |
| | : | |
| **KHALIFA HIFTER,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

## MOTION FOR SUMMARY JUDGMENT

COMES NOW, Defendant, by and through his counsel, pursuant to Federal Rule of Civil

Procedure 56, and respectfully requests this Court grant his Motion for Summary Judgment.

Accordingly, for the reasons contained in Defendant's Memorandum of Law in Support

of his Motion for Summary Judgment, filed herewith, Defendant respectfully requests this Court

grant Defendant's Motion.

Dated: February 23, 2024                Respectfully submitted,

                                        KHALIFA HIFTER

                                        By Counsel

                                        /s/ Madison A. Beatty
                                        Robert H. Cox (VSB No. 33118)
                                        Madison A. Beatty (VSB No. 98099)
                                        BRIGLIA HUNDLEY, P.C.
                                        1921 Gallows Road, Suite 750
                                        Tysons Corner, Virginia 22182
                                        (703) 883-0880 [telephone]
                                        (703) 883-0899 [facsimile]
                                        rcox@brigliahundley.com
                                        mbeatty@brigliahundley.com

## <u>CERTIFICATE OF SERVICE</u>

     I certify that on February 23, 2024, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

s/ Madison A. Beatty

Madison A. Beatty (VSB No. 98099)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

|  |  |  |
|---|---|---|
| **AIDA ELZAGALLY, et al.,** | **:** | |
| | **:** | |
| **Plaintiffs,** | **:** | |
| | **:** | |
| **v.** | **:** | **Civil Action No.: 1:19-cv-853** |
| | **:** | |
| **KHALIFA HIFTER** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |
| | **:** | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
## <u>MOTION FOR SUMMARY JUDGMENT</u>

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................... 1

II.  STATEMENT OF UNDISPUTED FACTS ........................................................... 1

III. STANDARD OF REVIEW ................................................................................... 5

IV. ARGUMENT ......................................................................................................... 6

A.  Plaintiffs Lack Standing to Bring Suit in the Eastern District of Virginia. ............................ 7

   1.  Plaintiffs Must be a Legal Representative or Any Person Who May be a Claimant in an Action for Wrongful Death. ........................................................................ 7

   2.  Plaintiffs Fail to Identify Deliberate or Extrajudicial Killings. ........................................ 9

   3.  The Extrajudicial Killing Must be Committed by an Individual Acting Under Actual or Apparent Authority, or Color of Law of Any Foreign Nation. .................................. 11

B.  The Court Must Dismiss this Claim Because It Lacks Jurisdiction. ..................................... 13

   1.  Plaintiffs' Claim Fails to Establish General Personal Jurisdiction Over Mr. Hifter.......... 14

   2.  This Claim Lacks Jurisdiction Under Head-of-State Immunity. ....................................... 15

C.  Plaintiffs Have Failed to Exhaust Their Administrative Remedies in Libya. ....................... 19

   1.  Defendant Has Proven that Plaintiffs Did Not Exhaust Their Administrative Remedies.  19

   2.  Plaintiffs Have Not Proven that Local Remedies are Ineffective, Unduly Prolonged, Inadequate, or Obviously Futile. ......................................................................... 21

D.  Plaintiffs Have Provided No Evidence of Command Responsibility to Support Liability. .. 23

   1.  There is No Evidence that the Libyan National Army was Involved in the Alleged Incidents. ................................................................................................... 24

   2.  There is No Evidence that Mr. Hifter Failed to Prevent any Extrajudicial Killings.......... 25

V.  CONCLUSION ..................................................................................................... 26

i

## TABLE OF AUTHORITIES

**Cases**

*A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 870 F.Supp. 2d 415 (D. Md. 2012)......... 13

*Am. Isuzu Motors, Inc. v. Ntsebeza*, 553 U.S. 1028 (2008) ......................................... 11

*American Institute of Certified Public Accountants v. Affinity Card, Inc.*, 8 F.Supp.2d 372
    (S.D.N.Y. 1998) ................................................................................................... 14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................. 5

*Arar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009)..................................................... 11, 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................. 26

*Baloco v. Drummond Co.*, 640 F.3d 1338 (11th Cir. 2011) ........................................ 7

*Bersoum v. Abotaeta*, 16 Civ. 987 (LGS), 2017 U.S. Dist. LEXIS 127460 (S.D.N.Y. Aug. 10,
    2017).................................................................................................................. 15

*Bersoum v. Mustafa*, 568 F. Supp. 3d 443 (S.D.N.Y. 2021) ...................................... 14

*Boniface v. Viliena*, 338 F. Supp. 3d 50 (D. Mass. 2018).......................................... 22

*Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008) ..................................................... 19

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ......................................................... 5

*Chavez v. Carranza*, 559 F.3d 486 (6th Cir. 2009)................................................... 24

*Chiminya Tachiona v. Mugabe*, 216 F.Supp.2d 262 (S.D.N.Y. 2002) ......................... 25

*Chowdhury v. WorldTel Bangl. Holding, Ltd.*, 746 F.3d 42 (2d. Cir. 2014) ............. 11, 13

*Conn v. Zakharov*, 667 F.3d 705 (6th Cir. 2012)...................................................... 15

*Corrie v. Caterpillar, Inc.*, 403 F. Supp. 2d 1019 (W.D. Wash. 2005) ........................ 21

*Covington Industries, Inc. v. Resintex A.G.*, 629 F.2d 730 (2d Cir. 1980) ................... 14

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ......................................................... 15

*De Lima v. Bidwell*, 182 U.S. 1 (1901) ...................................................................... 12

*Doe I v. Liu Qi*, 349 F. Supp. 2d 1258 (N.D. Cal. 2004) ........................................ 23

*Doe v. Buratai*, 318 F.Supp. 3d 218 (D.C. 2018) ..................................... 14, 16, 17, 18

*Doe v. Qi*, 349 F. Supp. 2d 1258 (N.D. Cal. 2004) .................................................. 8

*Does v. Obiano*, NO. 4:23-cv-00813, 2024 U.S. Dist. LEXIS 8247 (S.D. Tex. Jan. 1, 2024).... 14,
16, 17, 18 ................................................................................................................

*Dogan v. Barak*, 932 F.3d 888 (9th Cir. 2019) .......................................... 17, 18

*Enohoro v. Abubakar*, 408 F.3d 877 (7th Cir. 2005) .............................................. 19

*Ford v. Garcia*, 289 F.3d 1283 (11th Cir. 2002) ................................................... 24

*Fugate v. Moore*, 86 Va. 1045 (1890) ...................................................................... 9

*Giraldo v. Drummond Co.*, Case No.: 2:09-CV-1041-RDP, 2011 U.S. Dist. LEXIS 160998 (N.D.
Ala. Jan. 6, 2011) ...................................................................................................... 8

*Gleich v. Wachovia Sec., LLC*, No. 3:04CV422, 2005 U.S. Dist. LEXIS 16748 (E.D. Va. Mar.
28, 2005) .................................................................................................................... 5

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) .................. 14

*Harmon v. Sadjadi*, 273 Va. 184 (2007) ................................................................. 9

*Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996) ....................................... 25

*Jane W. v. Thomas*, 560 F. Supp. 3d 855 (E.D. Pa. 2021) ..................................... 25

*Jaramillo v. Naranjo*, No. 10-21951-Civ-TORRES, 2021 U.S. Dist. LEXIS 184724 (S.D. Fla.
Sep. 28, 2021) ................................................................................... 20, 22, 23

*Jean v. Dorelien*, 431 F.3d 776 (11th Cir. 2005) .................................................... 19

*Jones v. Chandrasuwan*, 820 F.3d 685 (4th Cir. 2016) ........................................... 5

*Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1995) ................................................ 11, 13

*Khulumani v. Barclay Nat. Bank Ltd.*, 504 F.3d 254 (2d Cir. 2007) ..................................... 11, 13

*Kirschenbaum v. Assa Corp.*, 934 F.3d 191 (2d Cir. 2019) ............................................... 12

*Mamani v. Berzaín*, 533 F. Supp. 3d 1252 (S.D. Fla. 2021) ............................................ 25

*Mamani v. Berzain*, 636 F. Supp. 2d 1326 (S.D. Fla. 2009) ........................................... 22

*Mamani v. Berzaín*, 654 F.3d 1148 (11th Cir. 2011) ...................................................... 10

*Mamani v. Sánchez de Lozada Sánchez Bustamante*, 968 F.3d 1216 (11th Cir. 2020)............... 10

*Matar v. Dichter*, 563 F.3d 9 (2d Cir. 2009)........................................................... 17, 18

*McDaniel v. North Carolina Pulp Co.*, 198 Va. 612 (1956) ............................................. 9

*Mentavlos v. Anderson*, 249 F.3d 301 (4th Cir. 2001)................................................... 11

*Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012) ................................................... 6

*Moore v. Smith*, 177 Va. 621 (1941)..................................................................... 9

*Morgan Guar. Tr. Co. of N.Y. v. Republic of Palau*, 924 F.2d 1237 (2d Cir. 1991) .................. 12

*Mother Doe I v. Al Maktoum*, 632 F.Supp. 2d 1130 (S.D. Fla. 2007) ................................. 15

*Mullinax v. Radian Guar., Inc.*, 311 F. Supp. 2d 474 (M.D.N.C. 2004) ............................. 7

*Pierson v. Ray*, 386 U.S. 547 (1967) .................................................................... 18

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)....................................................... 21

*Samantar v. Yousef*, 560 U.S. 305 (2010)............................................................... 18

*Sikhs for Just. v. Singh*, 64 F. Supp. 3d 190 (D.D.C. 2014)............................................ 14

*Sikhs for Justice v. Gandhi*, 13 Civ. 4920 (BMC), 2014 U.S. Dist. LEXIS 78322 (E.D.N.Y. June 9, 2014).................................................................................................. 8

*Sinaltrainal v. Coca-Cola Co.*, 256 F. Supp. 2d 1345 (S.D. Fla. 2003) ............................. 20

*Walden v. Fiore*, 571 U.S. 277 (2014).................................................................... 14

*Xuncax v. Gramajo*, 886 F. Supp. 162 (D. Mass. 1995)............................................... 8, 21

*Ye v. Zemin*, 383 F.3d 620 (7th Cir. 2004) ......................................................... 17

*Yoshida v. Capital Props. Mgmt.*, 68 Va. Cir. 279 (Cir. Ct. 2005) ...................... 9

*Young v. Carter*, 61 Va. Cir. 682 (2002) ............................................................. 9

*Yousuf v. Samantar*, 699 F.3d 763, 777 (4th Cir. 2012) ………………………………………..17, 18

**Statutes**

28 U.S.C. § 1350 ..................................................................................................... 6

Va. Code. Ann. § 8.01-50(C) (2021) ..................................................................... 8

**Other Authorities**

Curtis A. Bradley, *Conflicting Approaches to the U.S. Common Law of Foreign Official*

    *Immunity*, 115 Am. J. Int'l L. 1 (2021) ........................................................... 18

*Exhaustion of Local Remedies*, 29 FORDHAM INT'L L. J. ...................................... 21

H.R. Rep. No. 102-367 (1991) ............................................................................... 6

*Prosecutor v. Delalic* (Appeals Chamber ICTY, Feb. 20, 2001) .......................... 24

Pub. L. No. 102-256, 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350 note) ........................... 6

S. Rep. No. 102-249 (1991) .................................................................................... 6

**Rules**

FED. R. CIV. P. 56 ..................................................................................................... 1

Defendant Khalifa Hifter ("Mr. Hifter"), by and through the undersigned counsel, hereby files this Motion for Summary Judgment pursuant to FED. R. CIV. P. 56, and avers as follows:

## I.  INTRODUCTION

In 2011, a civil war began in the State of Libya ("Libya") which resulted in hundreds of militias and neighborhood groups clashing. Mr. Hifter was appointed as the Field Marshal of the Libyan National Army ("LNA"), which is also known as the Libyan Arabic Armed Forces, in March of 2015. To date, Libya remains in an intrastate conflict involving numerous militias, tribes, and citizens. Upon the request of the Libyan people, Mr. Hifter publicized an initiative known as "Operation Dignity" designed to reunify the country and free Libya from terrorism.

Plaintiffs have mistakenly filed suit against Mr. Hifter for acts that occurred in the midst of civil war which Mr. Hifter did not commit. Mr. Hifter's goal since the overthrow of Muammar Gaddafi's ("Gaddafi") regime has been to reunify Libya and prevent further harm to his country and its people. Mr. Hifter fully opposes the types of violent acts the Plaintiffs have accused him of. His efforts to unify Libya and defeat terrorism exemplify this.

Plaintiffs do not have a cognizable claim for relief against Mr. Hifter. Through discovery, it has been established that Mr. Hifter was not responsible for any of the allegations raised against him in this case. Mr. Hifter did not order, or have knowledge of, any attacks on civilians, nor did he hold any official position in furtherance of any such attacks. Accordingly, Mr. Hifter has filed this summary judgment motion under FED. R. CIV. P. 56 and requests this Court to dismiss the case against him with prejudice.

## II.  STATEMENT OF UNDISPUTED FACTS

1. In 2011, a civil war broke out in Libya.

2. Mr. Hifter is a Libyan citizen.

1



---

[1] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 29:21-30:1; *Id.* at 39:2-4.
[2] *Id.* at 153:1-5.
[3] *Id.* at 39:6-14.
[4] *Id.* at 39:21-40:3.
[5] *See* Ex. B – Order Appointing K. Hifter.
[6] *See* Ex. C – Hifter Dep., June 26, 2023, at 237:11-238:2.
[7] *Id.* at 209:3-4.
[8] *See* Ex. D – Adopting Resolution 2273 (2016), Security Council Extends Mandate of United Nations Support Mission in Libya until 15 June.
[9] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 47:10-22.

2



12.

13.

14.

15.

16.

17.

18.

19.

20.

21.

---

[10] *Id.* at 70:17-22.
[11] *Id.* at 72:13-22.
[12] *Id.* at 87:16-88:8; *See* Ex. C – Hifter Dep., June 26, 2023, at 228:7-11.
[13] *See* Ex. C – Hifter Dep., June 26, 2023, at 206:12-17.
[14] *Id.* at 211:22-212:10.
[15] *Id.* at 217:1-2.
[16] *Id.* at 219:1-18.
[17] *Id.* at 234:19-22.
[18] *Id.* at 236:12-22.
[19] *Id.* at 236:12-22.

3



22. ████████████████████████████████

████████.[20]

23. ████████████████████████████

████████.[21]

24. ████████████████████████████████

██████.[22]

25. Msaddek Tunalli was a member of the military for over 30 years.[23]

26. Msaddek Tunalli was a military member involved in the ongoing conflicts in Tripoli on April 14, 2019, the day he died.[24]

27. Msaddek Tunalli was in uniform and armed on April 14, 2019, the day he died.[25]

28. Aida Elzagally has no personal knowledge of which militias were fighting in the Ain Zara neighborhood.[26]

29. Abdulhameed Tunalli has no personal knowledge of which militias were fighting in the Ain Zara neighborhood.[27]

30. Abdulrrauf Tunalli has no personal knowledge of which militias were fighting in the Ain Zara neighborhood.[28]

---

[20] *Id.* at 242:17-243:2.
[21] *Id.* at 247:4-9.
[22] *Id.* at 249:1-12.
[23] *See* Ex. E – A. Elzagally Dep., Jan. 10, 2024, at 42:21-43:3; *see also* Ex. F – Abdulrrauf Tunalli Dep., Oct. 14, 2021, at 17:17-18:2.
[24] *See* Ex. F – Abdulrrauf Tunalli Dep., Oct. 14, 2021, at 18:5-11.
[25] *Id.* at 17:17-18:2.
[26] *See* Ex. E – A. Elzagally Dep., Jan. 10, 2024, at 26:7-9.
[27] *See* Ex. G – Abdulhameed Tunalli Dep., Oct. 14, 2021, at 13:14-20.
[28] *See* Ex. F – Abdulrrauf Tunalli Dep., Oct. 14, 2021, at 19:4-14.

31. Mais Ahmed Mayouf has no personal knowledge of which militias were fighting in the Hay Alintassar neighborhood.[29]

32. ███████████████████████████████████████████████████
███████████████████.[30]

33. To date, Plaintiffs have not filed suit in Libya against Mr. Hifter regarding the underlying claims herein.

34. Msaddek Tunalli's family is still looking into seeking remedies in Libya.[31]

## III.    STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[32] In determining if summary judgment is appropriate, the Court will only concern itself with disputes "that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted."[33] Facts are material if they have the ability to affect the outcome of the case under the governing law.[34] "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party."[35] Once the moving party meets their burden that there are no genuine issues of material fact, the burden then shifts to the opposing party to respond.[36]

---

[29] *See* Ex. G – Abdulhameed Tunalli Dep., Oct. 14, 2021, at 12:21-13:10.
[30] *See* Ex. H – Abdulhameed al-Harramah Dep., Oct. 11, 2021, at 16:13-14, 19:6-8.
[31] *See* Ex. E – A. Elzagally Dep., Jan. 10, 2024, at 45:10-15.
[32] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[33] *Gleich v. Wachovia Sec., LLC*, No. 3:04CV422, 2005 U.S. Dist. LEXIS 16748, at *3 (E.D. Va. Mar. 28, 2005) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[34] *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016).
[35] *Id.*
[36] *Celotex Corp.*, 477 U.S. at 322.

5

## IV.    ARGUMENT

Congress enacted the Torture Victim Protection Act of 1991 ("TVPA") in 1992 to "establish[] a civil action for recovery of damages from an individual who engages in torture or extrajudicial killing."[37] "[T]he Torture Victim Protection Act (TVPA) is designed to respond to this situation by providing a civil cause of action in U.S. courts for torture committed abroad."[38] The TVPA states:

> An individual who, under actual or apparent authority, or color of law, of any foreign nation – (1) subjects an individual to torture shall, in a civil action, be liable for damages to that individual; or (2) subjects an individual to extrajudicial killing shall, in a civil action, be liable for damages to the individual's legal representative, or to any person who may be a claimant in an action for wrongful death.[39]

Further, the TVPA defines extrajudicial killing and torture within the meaning of the act.[40] The TVPA ultimately provides a cause of action for aliens and U.S. citizens to sue in U.S. federal courts if all elements of the TVPA are met.[41]

Here, Mr. Hifter cannot be found to have violated the TVPA. First, Plaintiffs lack standing to bring a TVPA suit in the Eastern District of Virginia because select Plaintiffs are not the proper individuals to bring forth such a claim, the alleged acts do not qualify as extrajudicial killings, nor were they committed by Mr. Hifter under the color of law of a foreign nation. Second, this Court lacks jurisdiction over Mr. Hifter, as there is no general personal jurisdiction over him, and he has head-of-state immunity. Third, Plaintiffs have provided no evidence Mr. Hifter is liable for the alleged acts, because there is no evidence that (a) the LNA committed the acts, (b) Mr. Hifter knew

---

[37] Pub. L. No. 102-256, 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350 note); *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 (2012).
[38] S. Rep. No. 102-249, p. 3-4 (1991).
[39] 28 U.S.C. § 1350, note §2(a).
[40] § 1350, note § 3(a)-(b).
[41] *See* S. Rep. No. 102-249, p. 4 (1991); H.R. Rep. No. 102-367, p. 86 (1991).

or reasonably should have known soldiers were committing extrajudicial killings or torture, and/or (c) Mr. Hifter failed to prevent the acts from being committed. Therefore, Mr. Hifter's Motion for Summary Judgment should be granted.

### A. Plaintiffs Lack Standing to Bring Suit in the Eastern District of Virginia.

Plaintiffs lack standing to sue Mr. Hifter under the TVPA because they are improper legal representatives claiming damages on behalf of themselves. A defendant may raise a defense for lack of standing at any time during proceedings if it appears the Court lacks subject matter jurisdiction over the plaintiff's claims.[42] To obtain relief under the TVPA, plaintiffs must be: (1) a legal representative or any person who may be a claimant in an action for wrongful death; (2) of a victim of an extrajudicial killing; and (3) such extrajudicial killing must have been committed by an individual acting under actual or apparent authority, or color of law, of a foreign nation.[43]

> 1. <u>Plaintiffs Must be a Legal Representative or Any Person Who May be a Claimant in an Action for Wrongful Death.</u>

The named Plaintiffs in this action are unable to recover for a wrongful death action. Here, (1) Aida Elzagally alleges she is the wife of decedent, Msaddek Tunalli;[44] (2) Abdulhameed Tunalli is the son of decedent, Msaddek Tunalli;[45] (3) Ayah Tunalli is the daughter of decedent, Msaddek Tunalli;[46] (4) Alaa Tunalli is the daughter of decedent, Msaddek Tunalli;[47] (5) Abdulrrauf Tunalli is the son of decedent, Msaddek Tunalli;[48] (6) Muhammad Tunalli is the son of decedent, Msaddek Tunalli;[49] (7) Abduladeem Tunalli is the son of decedent, Msaddek

---

[42] *Mullinax v. Radian Guar., Inc.*, 311 F. Supp. 2d 474, 480 (M.D.N.C. 2004).

[43] *Baloco v. Drummond Co.*, 640 F.3d 1338, 1346 (11th Cir. 2011).

[44] Elzagally Amended Complaint ("Am. Compl.") ¶ 7, *Elzagally* ECF No. 69.

[45] *Id.* at ¶ 8.

[46] *Id.* at ¶ 9.

[47] *Id.* at ¶ 10.

[48] *Id.* at ¶ 11.

[49] *Id.* at ¶ 12.

7

Tunalli;[50] (8) Mais Ahmed Mayouf is the daughter of decedent, Mufida Sasi Abu Gasiah;[51] (9)

Abdulhameed Al-Harramah is the father of decedent, Ayman Al-Harramah;[52]

Plaintiffs do not specify whether they are filing claims individually or in a representative

capacity, thus they lack standing under the TVPA.[53] The plain language and the legislative history

of the TVPA demonstrates that standing is limited to the victim or an individual bringing a claim

on behalf of the victim.[54] Plaintiffs who fail to act in a representative capacity for the decedents'

estates are "due to be dismissed from this action."[55] "[C]ourts may look to state law for guidance

as to which parties would be proper wrongful death claimants."[56] In Virginia, a wrongful death

claim must be "brought by and in the name of the personal representative of such deceased

person."[57] However, no language under Virginia law allows a claimant to file a wrongful death

claim in his or her individual capacity.[58] Further, there are no allegations that Plaintiffs themselves

were tortured. Consequently, Plaintiffs are barred from bringing individual claims under the

TVPA.

---

[50] Am. Compl. ¶ 13.

[51] *Id.* at ¶ 14.

[52] *Id.* at ¶ 15.

[53] *See id.* at ¶¶ 10, 11, 12, and 15.

[54] *See Doe v. Qi*, 349 F. Supp. 2d 1258, 1313 (N.D. Cal. 2004) (reviewing the history and concluding that TVPA only allows for suits by or on behalf of a victim); *Giraldo v. Drummond Co.*, No.: 2:09-CV-1041-RDP, 2011 U.S. Dist. LEXIS 160998, at *11 (N.D. Ala. Jan. 6, 2011) (holding that "to have standing under the TVPA . . . Plaintiffs ***must*** be seeking damages on behalf of the victim").

[55] *Giraldo*, 2011 U.S. Dist. LEXIS 160998 at *12; *Sikhs for Justice v. Gandhi*, 13 Civ. 4920 (BMC), 2014 U.S. Dist. LEXIS 78322, at *9 (E.D.N.Y. June 9, 2014) (holding because a plaintiff was not tortured, he could only state a claim under the TVPA based on his father's execution).

[56] *Xuncax v. Gramajo*, 886 F. Supp. 162, 191 (D. Mass. 1995) (*quoting* H. Rep. No. 256, 102d Cong., 1st Sess. 87 (1991)).

[57] Va. Code. Ann. § 8.01-50(C).

[58] *Id.*

Plaintiffs have provided no evidence that they have been appointed and/or qualified in Virginia to serve as personal representative for the decedents' estates. In fact, Plaintiffs have not provided any evidence in any jurisdiction, nor have they cited to any Libyan law or custom that appoints them as personal representative. Even if they had, it would be insufficient. "[I]t has been established in this jurisdiction that a foreign administrator, who has acquired no status in Virginia, is without authority to institute in his official capacity any action or suit in the courts of this State."[59] In sum, Plaintiffs have provided no evidence that they have standing to bring claims for wrongful death pursuant to Virginia law.

Virginia law is clear that wrongful death actions must be brought by and in the name of the personal representative of the decedent, and the failure to do so is fatal to such a claim.[60] The Supreme Court of Virginia has consistently held that wrongful death suits are deemed a legal nullity if they are not brought by personal representatives who are appointed/qualified in Virginia.[61] It is not enough to look to the law of the foreign state, because Virginia has an affirmative requirement that a personal representative must be appointed/qualified in Virginia for standing to exist under the Virginia wrongful death statute.[62] Thus, the claims brought by Plaintiffs are improper and must be dismissed due to lack of standing.

### 2.  Plaintiffs Fail to Identify Deliberate or Extrajudicial Killings.

To have standing under the TVPA, Plaintiffs must present some evidence that their relatives' deaths were the result of a purposeful act to take another's life and that the deaths were

---

[59] *Harmon v. Sadjadi*, 273 Va. 184, 193 (2007) (*citing McDaniel v. North Carolina Pulp Co.*, 198 Va. 612, 615 (1956) (*citing Moore v. Smith*, 177 Va. 621, 624 (1941) and *Fugate v. Moore*, 86 Va. 1045, 1047 (1890))).

[60] *Young v. Carter*, 61 Va. Cir. 682, 683 (2002).

[61] *Harmon*, 273 Va. At 193.

[62] *Yoshida v. Capital Props. Mgmt.*, 68 Va. Cir. 279, 287 (2005).

9

not caused by "accidental or negligent" behavior, other external circumstances, or the result of just provocation or sudden passion.[63] The minimal requirement for an extrajudicial killing is that the killing must be "deliberate," which is defined as being "undertaken with studied consideration and purpose."[64]

Here, Plaintiffs do not present any evidence that the LNA was involved in the deaths in 2019, much less any evidence that LNA or Mr. Hifter undertook the killings with consideration and purpose. Plaintiffs fail to bring forward any evidence that creates a causal link between the alleged acts in 2019 and Mr. Hifter. Further, determining that Plaintiffs' relatives were deliberately killed does not alone satisfy the TVPA requirement because, "not all deliberated killings are extrajudicial killings."[65] "Extrajudicial killing" "does not include any such killing that, under international law, is lawfully carried out under the authority of a foreign nation."[66] To determine whether these deliberated killings are extrajudicial, the Court must look to international law.[67]

Unlike in *Mamani v. Bustamante*, where the Court found sufficient "evidence that the decedents were killed by soldiers acting under orders to shoot or kill civilians and evidence that Defendants were connected to those orders,"[68] Plaintiffs here have presented no evidence that LNA soldiers were acting under official orders connected to Mr. Hifter. It has been well-established many factions were in violent conflict and wearing military uniforms throughout Libya during this

---

[63] *Mamani v. Sánchez de Lozada Sánchez Bustamante*, 968 F.3d 1216, 1234-1235 (11th Cir. 2020).
[64] *Mamani v. Berzaín*, 654 F.3d 1148, 1155 (11th Cir. 2011) ("Mamani I").
[65] *Id.*
[66] *Sánchez de Lozada Sánchez Bustamante*, 968 F.3d at 1236-1237 (*citing* Pub. L. No. 102-256, § 3(a).
[67] *Id.* (*citing Doe v. Drummond*, 782 F.3d 576, 606 (11th Cir. 2015) ("[O]n the rare occasions when we do look to general principles of international law for guidance as to what a theory of liability or statutory definition requires, we do so only because the TVPA itself implicitly or explicitly incorporated those principles from international law.")).
[68] *Sánchez de Lozada Sánchez Bustamante*, 968 F.3d at 1239.

time period. Given this undisputed evidence, Plaintiffs cannot legally establish a deliberated, extrajudicial killing under the TVPA. Therefore, their claim is barred.

3. <u>The Extrajudicial Killing Must be Committed by an Individual Acting Under Actual or Apparent Authority, or Color of Law of Any Foreign Nation.</u>

Plaintiffs fail to demonstrate that Mr. Hifter was acting under authority or color of law of any foreign nation. The state-action or color-of-law requirement of the TVPA limits "the reach of federal law," and excludes "merely private conduct" from liability "no matter how . . . wrongful."[69] The TVPA only applies to individuals who act "under actual or apparent authority, or color of law, of any foreign nation."[70] To determine whether a defendant acted under color of foreign law, courts turn to "principles of agency law and to jurisprudence under 42 U.S.C. § 1983."[71] "[F]or purposes of the TVPA, an individual acts under color of law . . . when he acts together with state officials or with significant state aid."[72] A plaintiff "must adequately allege that the [defendant] possessed power under [foreign] law, and that the offending actions . . . derived from an exercise of that power, or that defendants could not have undertaken their culpable actions absent such power."[73]

Here, the Court has ruled that the "whole political structure of Libya is still certainly in flux,"[74] and that the state secrets privilege is not applicable under the principles of comity to the conduct alleged by the Plaintiffs. As such, this Court cannot rule that Mr. Hifter is not protected by the Libyan state secrets privilege while simultaneously ruling that he is acting under actual or

---

[69] *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (quotations omitted).

[70] *See* § 1350 note § 2(a); *Arar v. Ashcroft*, 585 F.3d 559, 568 (2d Cir. 2009); *Kadic v. Karadzic*, 70 F.3d 232, 245 (2d Cir. 1995).

[71] *Kadic*, 70 F.3d at 245.

[72] *Chowdhury v. WorldTel Bangl. Holding, Ltd.*, 746 F.3d 42, 52-53 (2d. Cir. 2014) (citations omitted); *Khulumani v. Barclay Nat. Bank Ltd.*, 504 F.3d 254, 260 (2d Cir. 2007) (per curiam) (internal quotation marks omitted), *aff'd for want of a quorum sub nom. Am. Isuzu Motors, Inc. v. Ntsebeza*, 553 U.S. 1028 (2008); *Kadic*, 70 F.3d at 245 (same).

[73] *Arar*, 585 F.3d at 567-568.

[74] Tr. Sept. 8, 2023, ECF No. 228, at p. 5.

apparent authority of a foreign nation. To fail to recognize that Mr. Hifter lacked official authority in 2019, yet simultaneously rule that the LNA military operations at that time are not protected as a Libyan state secret, would be so conflicting as to cause manifest injustice. Even if this Court finds that Mr. Hifter is acting under the color of law of a foreign nation today, Plaintiffs have failed to provide any evidence that he held any actual or apparent authority under a foreign nation in 2019. "A foreign country was defined by Mr. Chief Justice Marshall and Mr. Justice Story to be one exclusively within the sovereignty of a foreign nation, and without the sovereignty of the United States."[75]

To date, the Libyan House of Representatives has not been recognized as a foreign government by the United States or the international community. The Second Circuit has found that a foreign state is "an entity bearing the 'attributes of statehood,' which include a defined territory and population, self-governance and foreign relations, and the capacity to wage war and enter into international agreements."[76] The GNA is still recognized by the United Nations and the United States of America as Libya's legitimate state government.[77]



.[78] In addition, because Mr. Hifter was not acting with the legitimate state government, it was not possible for Mr.

---

[75] *De Lima v. Bidwell*, 182 U.S. 1, 180 (1901) (*citing The Boat Eliza*, 2 Gall. 4; *Taber v. United States*, 1 Story, 1; The Ship Adventure, 1 Brock. 235, 241.)
[76] *Kirschenbaum v. Assa Corp.*, 934 F.3d 191, 197 (2d Cir. 2019) (*citing Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107, 123 (2d Cir. 2016) (*quoting Morgan Guar. Tr. Co. of N.Y. v. Republic of Palau*, 924 F.2d 1237, 1243-44 (2d Cir. 1991))).
[77] *See* Ex. D – Adopting Resolution 2273 (2016), Security Council Extends Mandate of United Nations Support Mission in Libya until 15 June.
[78] *See* Ex. C – Hifter Dep. June 6, 2023, at 209:11-14.

Hifter to act "together with state officials or with significant state aid."[79] Thus, Plaintiffs have failed to establish sufficient facts to show that Mr. Hifter possessed power under Libyan law and that extrajudicial killings or torture stemmed from this power.

As such, the individuals that committed the alleged extrajudicial killings could not have been official agents of Mr. Hifter, and Mr. Hifter is not liable for their actions. Because Mr. Hifter is not an individual acting under actual or apparent authority, or color of law, of any foreign nation, a claim under the TVPA cannot be brought, and summary judgment in favor of Mr. Hifter is appropriate.

**B.  The Court Must Dismiss this Claim Because It Lacks Jurisdiction.**

The Court must grant summary judgment in favor of Mr. Hifter because it lacks jurisdiction for two reasons: (1) there is no personal jurisdiction over Mr. Hifter, and (2) Mr. Hifter has head-of-state immunity. Despite denying Mr. Hifter's Motion to Dismiss, this Court is still without personal jurisdiction over Mr. Hifter.[80] If a court denies a motion to dismiss regarding a lack of personal jurisdiction, the court still may then grant a motion for summary judgment for lack of personal jurisdiction after additional evidence is revealed.[81] Because the events occurred in Libya, general personal jurisdiction must be established in order for Plaintiffs' claims to move forward. In addition, if the Court finds that Mr. Hifter was acting under the color of law of a foreign nation,

---

[79] *Chowdhury*, 746 F.3d at 52-53 (citations omitted); *Khulumani*, 504 F.3d at 260 (internal quotation marks omitted); *Kadic*, 70 F.3d at 245.

[79] *Arar*, 585 F.3d at 567-568.

[80] Order Denying Defendant's Motion to Dismiss in Part, *Elzagally* ECF No. 43.

[81] *A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 870 F. Supp. 2d 415, 417-18 (D. Md. 2012).

13

then it must find that head-of-state immunity is applicable. Under the common law, foreign officials may be entitled to either status-based immunity or conduct-based immunity.[82]

"Status-based immunity is available to diplomats and heads of state and shields them from legal proceedings by virtue of [their] current official position, regardless of the substance of the claim."[83] "Conduct-based immunity. . . is available to any public minister, official, or agent of the foreign state with respect to acts performed in his official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state."[84] In other words, "conduct-based immunities shield individuals from legal consequences for acts performed on behalf of the state during their tenure in office."[85]

1.  Plaintiffs' Claim Fails to Establish General Personal Jurisdiction Over Mr. Hifter.

Even if the Court has sufficient subject matter jurisdiction, "subject matter jurisdiction is toothless without personal jurisdiction."[86] It is well-established in American law that a "judgment entered against [a party] not subject to the personal jurisdiction of the rendering court is a nullity."[87] There are two types of personal jurisdiction: specific and general personal jurisdiction. Specific jurisdiction occurs when there is an affiliation between the forum and the underlying conduct giving rise to the controversy.[88] "[T]he paradigm forum for the exercise of general jurisdiction [for an individual] is the individual's domicile."[89]

---

[82] *Doe v. Buratai*, 318 F. Supp. 3d 218, 230 (D.C. 2018); *Does v. Obiano*, No. 4:23-cv-00813, 2024 U.S. Dist. LEXIS 8247, at *6 (S.D. Tex. Jan. 1, 2024).
[83] *Id*.
[84] *Id*.
[85] *Sikhs for Just. v. Singh*, 64 F. Supp. 3d 190, 193 (D.D.C. 2014) .
[86] *Bersoum v. Mustafa*, 568 F. Supp. 3d 443, 456 (S.D.N.Y. 2021).
[87] *Id*. (*quoting Covington Industries, Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980)); *see also American Institute of Certified Public Accountants v. Affinity Card, Inc.*, 8 F. Supp.2d 372, 375 (S.D.N.Y. 1998).
[88] *Walden v. Fiore*, 571 U.S. 277, 284 (2014).
[89] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

14

For a court to have general jurisdiction over a party, a party must have contacts in [Virginia] that are "so continuous and systematic as to render [it] essentially at home in the forum State."[90] Because the alleged conduct occurred in Libya rather than Virginia, the Plaintiffs must rely on general personal jurisdiction. Although Mr. Hifter owns property in Virginia, other Circuits have held that mere property ownership is not enough to serve as the basis for general personal jurisdiction.[91] Mr. Hifter's property ownership alone does not give the Eastern District of Virginia personal jurisdiction over him in this lawsuit.



.[95] Accordingly, Mr. Hifter is not "at home" in Virginia, and this Court should grant his motion for summary judgment on the grounds that this Court lacks personal jurisdiction over him.

    2.   This Claim Lacks Jurisdiction Under Head-of-State Immunity.

---

[90] *Bersoum v. Abotaeta*, 16 Civ. 987 (LGS), 2017 U.S. Dist. LEXIS 127460, at *11-13 (S.D.N.Y. Aug. 10, 2017) (*citing Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014) (dismissing TVPA claim for lack of general personal jurisdiction); *accord Waldman v. PLO*, 835 F.3d 317, 332 (2d Cir. 2016) (noting that Daimler's reasoning applies to general jurisdiction over individuals as well as corporations)).

[91] *See Conn v. Zakharov*, 667 F.3d 705, 715 (6th Cir. 2012) (A Russian-citizen owned properties in Ohio, but the court held that this was not enough to establish personal jurisdiction because he did not intend to stay in Ohio, he only used the property for business and tourism, and he did not vote in Ohio or have an Ohio driver's license.); *Mother Doe I v. Al Maktoum*, 632 F. Supp. 2d 1130, 1142 (S.D. Fla. 2007) ("By itself, ownership of property is insufficient to subject a nonresident defendant to the jurisdiction of the courts of this state, unless the cause of action arose out of such ownership.").

[92] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 39:8-14.

[93] *Id.* at 39:2-4.

[94] *Id.*

[95] *Id.* at 39:21-40:3.

If the Court finds that Mr. Hifter was acting under the color of law of a foreign nation, then it must also find that Mr. Hifter is entitled to head-of-state immunity. Determination of foreign official immunity is a two-step process.[96] "First, the foreign-official defendant may request a suggestion of immunity from the State Department. If the request is granted, the district court surrenders its jurisdiction."[97] "In the absence of recognition of the immunity by the [State Department], the district court moves to the second step, in which a district court has authority to decide for itself whether all the requisites for such immunity existed."[98] "In making that decision, a district court inquires whether the ground of immunity is one which it is the established policy of the State Department to recognize."[99] Immunity may be found if (1) the defendant was a "public minister, official, or agent" of the state, (2) "he acted in his official capacity," and (3) "exercising jurisdiction would 'enforce a rule of law against the state.'"[100]

First, if the Court determines that Mr. Hifter was acting under the color of law of a foreign nation, then it must also find that Mr. Hifter was a public official at the time of the events of this Complaint, which would satisfy the first prong for judicial determination of head-of-state immunity. On March 2, 2015, Mr. Hifter was appointed as Commander-in-chief of the LNA.[101] However, if the Court determines that Mr. Hifter was in power at the time of these events in 2019, then the first prong is satisfied.

Second, if the Court finds that Mr. Hifter was a head-of-state official at the time of the allegations of this Complaint, then Mr. Hifter was acting in his official capacity. It is undisputed

---

[96] *Buratai*, 318 F. Supp. at 230.
[97] *Id.*
[98] *Id.*
[99] *Id.*
[100] *Obiano*, 2024 U.S. Dist. LEXIS 8247 at *7.
[101] *See* Ex. B – Order Appointing K. Hifter.

16

that Mr. Hifter was appointed as Commander-in-chief of the LNA by the Libyan House of Representatives.[102]



.[103]

[104]

While Plaintiffs claim that Mr. Hifter is unable to receive head-of-state immunity because he is subordinate to Libya's legislature and head-of-state, Mr. Hifter must merely be a "public minister, official, or agent" of the state to qualify for head-of-state immunity.[105] By interfering with the Libyan government, a decision here would "effectively enforce a rule of law" against Libya.[106] If the Court finds that Mr. Hifter was acting under the color of law of a foreign nation, then it must also recognize Mr. Hifter was acting as a head-of-state, and apply such immunity.

Lastly, while Plaintiffs claim that Mr. Hifter has no right to any conduct-based or foreign-official immunity because his alleged acts violated international human rights *jus cogens* norms,[107] the majority of circuit courts have repeatedly held that conduct-based immunity may still be granted under the circumstances alleged.[108] In *Yousuf v. Samantar*, the Fourth Circuit held that

---

[102] *Id.*
[103] *See* Ex. C – Hifter Dep., June 26, 2023, at 237:18-238:2.
[104] *Id.*
[105] *Obiano*, 2024 U.S. Dist. LEXIS 8247 at *7.
[106] *Buratai*, 318 F. Supp. at 233.
[107] Am. Compl. ¶ 8.
[108] *See Dogan v. Barak*, 932 F.3d 888, 896 (9th Cir. 2019) (declining "to hold that foreign officials are not immune from suit for violations of jus cogens norms"); *Matar v. Dichter*, 563 F.3d 9, 15 (2d Cir. 2009) ("A claim premised on the violation of jus cogens does not withstand foreign sovereign immunity."); *see also Ye v. Zemin*, 383 F.3d 620, 627 (7th Cir. 2004) ("The Executive Branch's determination that a foreign leader should be immune from suit even when the leader is

17

there was *jus cogens* exception to foreign official immunity, which is binding precedent on this Court.[109] Despite the ruling in *Yousuf*, Mr. Hifter contends that that Fourth Circuit decision is an outlier and the remaining jurisdictions including the Second, Seventh, and Ninth Circuits have rejected the existence of that exception.[110] As such, there is a circuit split among the courts. Mr. Hifter contends that the ruling in *Yousuf* is incorrect, and there is not a *jus cogens* exception to foreign official immunity. "The text of the TVPA does not mention immunity, and statutes are normally assumed not to displace the common law by implication."[111] Also, the Executive Branch has not recognized a jus cogens exception to immunity.[112]

Thus, if the Court finds that Mr. Hifter was acting under the color of law of a foreign nation, then it must also find that Mr. Hifter was a public official of Libya, acting in his official capacity as commander-in-chief of the LNA. Therefore, exercising jurisdiction here would improperly enforce a rule of law against the state of Libya, so Mr. Hifter is entitled to head-of-state immunity.

---

accused of acts that violate jus cogens norms is established by a suggestion of immunity."); *Buratai*, 318 F. Supp. at 234 ("Although the D.C. Circuit has not directly addressed the issue, the circuit's caselaw indicates that jus cogens allegations do not defeat foreign-official immunity under the common law.").

[109] *Yousuf v. Samantar*, 699 F.3d 763, 777 (4th Cir. 2012).

[110] *Obiano*, 2024 U.S. Dist. LEXIS 8247 at *11; *see Dogan*, 932 F.3d at 896 (declining "to hold that foreign officials are not immune from suit for violations of jus cogens norms"); *Matar*, 563 F.3d at 15 ("A claim premised on the violation of jus cogens does not withstand foreign sovereign immunity."); *see also Ye*, 383 F.3d at 627 ("The Executive Branch's determination that a foreign leader should be immune from suit even when the leader is accused of acts that violate jus cogens norms is established by a suggestion of immunity."); *Buratai*, 318 F. Supp. 3d at 234 ("Although the D.C. Circuit has not directly addressed the issue, the circuit's caselaw indicates that jus cogens allegations do not defeat foreign-official immunity under the common law.").

[111] *Id.* at *10 (*quoting* Curtis A. Bradley, *Conflicting Approaches to the U.S. Common Law of Foreign Official Immunity*, 115 Am. J. Int'l L. 1, 17 (2021)); *see also Samantar v. Yousef*, 560 U.S. 305, 320 (2010) ("The canon of construction that statutes should be interpreted consistently with the common law helps us interpret a statute that clearly covers a field formerly governed by common law."); *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (holding that Congress must give "clear indication that [it] meant to abolish wholesale all common-law immunities" in a statute).

[112] *Matar*, 563 F.3d at 14; *Buratai*, 318 F. Supp. 3d at 235.

18

### C. Plaintiffs Have Failed to Exhaust Their Administrative Remedies in Libya.

Plaintiffs have not exhausted their administrative remedies in Libya, thus their claims under the TVPA must fail. The TVPA exhaustion requirement "is an affirmative defense" where the defendant bears the initial burden of proof.[113] The Court must decline a claim brought under the TVPA if the claimant has not exhausted all adequate and available remedies "in the place in which the conduct giving rise to the claim occurred."[114] If evidence submitted by the parties conflicts, the Court may "act[] as a fact finder in resolving [a] factual dispute" concerning exhaustion of remedies.[115] Because adequate legal remedies exist in Libya and Plaintiffs have not sufficiently proven that local remedies are ineffective, unduly prolonged, inadequate, or obviously futile, Plaintiffs' claims fail under the TVPA exhaustion requirement.

### 1. Defendant Has Proven that Plaintiffs Did Not Exhaust Their Administrative Remedies.

Exhaustion is an affirmative defense initially requiring the defendant to establish that plaintiffs did not exhaust their administrative remedies.[116] A defendant "must prove the existence of specific domestic remedies that should have been utilized."[117] "Plaintiffs . . . are entitled to a presumption that local remedies have been exhausted, which Defendants must overcome before Plaintiffs are required to prove exhaustion or, presumably, the futility of exhausting local

---

[113] *Jean v. Dorelien*, 431 F.3d 776, 781 (11th Cir. 2005).
[114] 28 U.S.C. § 1350 Note, § 2(b).
[115] *See Bryant v. Rich*, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (adopting this exhaustion of administrative remedies rule from the PRLA, 42 U.S.C. § 1997e(a)).
[116] *Jean,* 431 F.3d at 781.
[117] *Enohoro v. Abubakar*, 408 F.3d 877, 892 (7th Cir. 2005).

19

remedies."[118] Ultimately, to succeed with an exhaustion defense, "a defendant must demonstrate that a plaintiff failed to exhaust all 'adequate and available' remedies."[119]

Here, the undisputed evidence establishes that Plaintiffs have not exhausted their local remedies. Plaintiffs lived in Tripoli at the time the alleged events occurred.[120] Local remedies exist in Libya and specifically exist in both Benghazi and Tripoli. Judicial proceedings in Benghazi were operating (1) all of 2018, (2) all of 2019, except from April to June, (3) all of 2020, except from April to June, (4) all of 2021, except from April to June, (4) all of 2022, and (5) all of 2023.[121] Judicial proceedings in Tripoli were operating (1) from January to May and November to December in 2014, (2) all of 2015, (3) all of 2016, (4) all of 2017, (5) all of 2018, (6) all of 2019, except from January to March, (7) all of 2021, except from September to December, (8) all of 2022, and (9) all of 2023.[122]

Since the overthrow of the Gaddafi regime in 2011, the primary source of law in Libya has been the Constitutional Declaration of the National Transitional Council which states that the foundation for all law in Libya is the Shari'a.[123] The Libyan courts are divided into civil courts, criminal courts, and administrative courts.[124] All matters are heard before judges, because there are no jury trials in Libya.[125] As of 2022, all major Libyan city courts have been fully functional

---

[118] *Sinaltrainal v. Coca-Cola Co.*, 256 F. Supp. 2d 1345, 1357 (S.D. Fla. 2003).
[119] *Jaramillo v. Naranjo*, No. 10-21951-Civ-TORRES, 2021 U.S. Dist. LEXIS 184724, at *26 (S.D. Fla. Sep. 28, 2021).
[120] Am. Compl. ¶ 118.
[121] *See* Ex. I – Declaration of Fathi Younis Toomi, p.10.
[122] *Id.*
[123] *Id.* at ¶ 11.
[124] *Id.* at ¶ 14.
[125] *Id.*

on a full-time basis.[126] Because the Libyan court system is alive and well, Plaintiffs must pursue

this claim in Libya. They have not exhausted their local remedies.

      2.   <u>Plaintiffs Have Not Proven that Local Remedies are Ineffective, Unduly
Prolonged, Inadequate, or Obviously Futile.</u>

     Plaintiffs have not proven that local remedies are ineffective. Here, Mr. Hifter has proven

that specific domestic remedies do exist, and should be utilized.[127] Once a defendant meets their

burden of proof, the burden shifts to the plaintiff to demonstrate that local remedies were

"ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile."[128] The most

common way for a plaintiff to establish their exhaustion of local remedies is by filing suit in that

country.[129] Although the amount of money obtainable in a foreign court may not be as much as a

plaintiff might be able to recover in an American court, that does not mean the remedy is so

inadequate to excuse exhaustion.[130] Application of §2(b) of the TVPA here would "encourage the

development of meaningful remedies" in Libya.[131]

---

[126] *Id.* at p. 10.

[127] *See generally* Ex. I – Declaration of Fathi Younis Toomi.

[128] *Jean,* 431 F.3d at 782; S. Rep. No. 102-249, at 10, 102nd Cong. 1st Sess. 1991, *reprinted in* 1991 WL 258662 (Leg. Hist.) (Nov. 26, 1991).

[129] *See e.g.*, *Xuncax*, 866 at 178 (holding that a plaintiff has properly exhausted their remedies available in the country where the conduct giving rise to their claim occurred where the plaintiff (1) provided 12 hours of testimony to the original court, (2) the criminal case against the defendant had made no progress for several years; and (3) under Guatemalan law, a civil action could not be brought until there was final judgment in the criminal proceeding).

[130] *See Corrie v. Caterpillar, Inc.*, 403 F. Supp. 2d 1019, 1025-26 (W.D. Wash. 2005) (holding that plaintiffs filing under the TVPA had to exhaust available remedies in Israel: "A foreign remedy is adequate even if not identical to remedies available in the United States. Courts usually find a foreign remedy adequate unless it is 'no remedy at all.'") (*quoting Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)).

[131] 28 U.S.C.S. § 1350 Note, § 2(b); *see* H.R. Rep. 102-367, at 5, 102nd Cong. 1st Sess. 1991, 1992 U.S.C.C.A.N. 84, 88, *reprinted in* 1991 WL 255964 (Leg. Hist.) (Nov. 25, 1991). *See also* E. Duruigbo, *Exhaustion of Local Remedies*, 29 FORDHAM INT'L L. J. at 1284 ("[W]e should not lose sight of the fact that the requirement of exhaustion of local remedies provides a window of opportunity to beam the search light on the existing state of affairs in developing

21

Courts have interpreted the TVPA exhaustion requirement in many cases. In *Jaramillo v. Naranjo*, the Southern District of Florida held that plaintiffs exhausted their local remedies because (1) they sought relief through Colombia's criminal justice system and the Columbia Justice and Peace Process, (2) the Colombian court had not acted on the case in the 20 years after the murder, and (3) defendants offered no evidence that plaintiffs did not exhaust their remedies.[132]

In *Mamani v. Berzain*, the Southern District of Florida held that the plaintiffs had not exhausted their remedies in Bolivia because (1) they had not attempted to obtain compensation for the alleged extrajudicial killing from the government, (2) Bolivian law provided compensation, (3) the total monetary compensation was 14-15 times the Bolivian per capita income at the time, and (4) the plaintiffs had already received compensation from the Bolivian government.[133]

In *Boniface v. Viliena*, the Massachusetts District Court held that plaintiffs exhausted their local remedies because (1) the complaint contained detailed descriptions of events where individuals were targeted with threats, violence, and death for reporting a crime or participating in court proceedings, (2) the defendant fled to Massachusetts to avoid prosecution, and (3) the defendant used his political influence in Haiti to avoid accountability for his actions.[134]

In *Doe I v. Liu Qi*, the Northern District of California held that plaintiffs had exhausted their remedies in China because (1) the Chinese government had issued an ordinance prohibiting attorneys from engaging in legal advocacy on behalf of petitioners and that those making allegations against the government could suffer serious reprisals, (2) the plaintiffs were arrested

---

countries and let such discovery inform and form the basis for meaningful social, economic, political, and legal reforms in those countries.").

[132] *Jaramillo*, 2021 U.S. Dist. LEXIS 184724 at *27.

[133] *Mamani v. Berzain*, 636 F. Supp. 2d 1326, 1331-1332 (S.D. Fla. 2009).

[134] *Boniface v. Viliena*, 338 F. Supp. 3d 50, 66-67 (D. Mass. 2018).

after they tried to appeal to the Beijing government on behalf of practitioners who had been arrested, detained, and tortured, and (3) the plaintiffs fled China to escape further persecution.[135]

Here, Plaintiffs are unable to show that local remedies are ineffective, unduly prolonged, inadequate, or obviously futile. At no point have Plaintiffs attempted to file civil remedies in Libya. Plaintiffs have not been persecuted for bringing these complaints in the United States. Further, Plaintiffs have not had to flee the country, rather they still live in Libya even after filing complaints against Mr. Hifter in the United States with no repercussions. Lastly, unlike in *Jaramillo* where the defendant offered no evidence that plaintiffs did not exhaust their remedies, Mr. Hifter has produced evidence that the Libyan court system is operational, and that Plaintiffs have not exhausted their remedies in Libya.[136] Thus, because domestic remedies exist and Plaintiffs have not sufficiently proven that local remedies are ineffective, unduly prolonged, inadequate, or obviously futile, Plaintiffs' claim must fail under the TVPA exhaustion requirement.

### D. Plaintiffs Have Provided No Evidence of Command Responsibility to Support Liability.

Even if the Court finds this suit is proper in the Eastern District of Virginia, Plaintiffs' TVPA claim still fails to provide any evidence of intent or liability by the Defendant. Plaintiffs have provided no evidence to establish that Mr. Hifter is responsible for the alleged events that occurred in 2019. ████████████████████████████████

████████████████████████████████.[137]

Three elements must be established for command responsibility to apply:

> (1) a superior-subordinate relationship between the defendant/military commander and the person or persons who committed human rights abuses;
> (2) the defendant/military commander knew, or should have known, in light

---

[135] *Doe I v. Liu Qi*, 349 F. Supp. 2d 1258, 1319-1320 (N.D. Cal. 2004).
[136] *See generally* Ex. I – Declaration of Fathi Younis Toomi.
[137] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 78:18-79:6.

of the circumstances at the time, that subordinates had committed, were committing, or were about to commit human rights abuses; and (3) the defendant/military commander failed to take all necessary and reasonable measures to prevent human rights abuses and punish human rights abusers.[138]

For the reasons set out below, the Plaintiffs have failed to satisfy these elements.

### 1. There is No Evidence that the Libyan National Army was Involved in the Alleged Incidents.

First, Plaintiffs must establish a superior-subordinate relationship between Mr. Hifter and those behind the alleged conduct. Plaintiffs must allege facts showing that Mr. Hifter had "effective control" over the soldiers' actions.[139] The Eleventh Circuit has explained that "[t]he concept of effective *control* over a subordinate [is] the sense of a material ability to prevent or punish criminal conduct, however that control is exercised."[140] "[A] showing of the defendant's actual ability to control the guilty troops is required as part of the plaintiff's burden under the superior-subordinate prong of command responsibility, whether the plaintiff attempts to assert liability under a theory of *de facto* or *de jure* authority."[141]

Here, the Plaintiffs have provided no evidence to establish that those responsible for the alleged conduct reported to Mr. Hifter.[142] Plaintiffs' claim lacks any firsthand knowledge of the alleged events and is mere speculation. While the TVPA contemplates liability against officers who do not personally execute the torture or extrajudicial killing, Plaintiffs have failed to identify any causal link between the alleged events and the Libyan National Army. Unlike the defendant

---

[138] *Chavez v. Carranza*, 559 F.3d 486, 499 (6th Cir. 2009) (*citing Ford v. Garcia*, 289 F.3d 1283, 1288 (11th Cir. 2002)).

[139] *Mamani v. Berzain*, 21 F. Supp.3d 1353, 1376 (S.D. Fla. 2014).

[140] *Ford*, 289 F.3d at 1290 (*quoting Prosecutor v. Delalic* (Appeals Chamber ICTY, Feb. 20, 2001) ¶ 256).

[141] *Id.* at 1291.

[142] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 154:12-15.

in *Jane W. v. Thomas*, Mr. Hifter was not part of the missions, was not present at the extrajudicial killings or tortures, and did not give any orders instructing the killings or torture.[143]

Plaintiffs have provided no evidence that uniformed LNA members were present at any of the events alleged. During this time period, many individuals wore army uniforms in Libya, including Msaddek Tunalli, even those not affiliated with an army.[144] Absent a causal link to the alleged acts, Mr. Hifter cannot be said to have had control over the individuals involved in the alleged extrajudicial killing and torture of Plaintiffs. Nor can he be said to have control over a person by virtue of them wearing an army uniform.

2.  There is No Evidence that Mr. Hifter Failed to Prevent any Extrajudicial Killings.

Plaintiffs are required to establish that Mr. Hifter "failed to take all necessary and reasonable measures" within his power to prevent or punish the extrajudicial killings.[145] ██████

██████████████████████████████████████████████████████████████████████

██ .[146] Generally, knowledge is proven by showing actual endorsement.[147] Plaintiffs have presented no evidence that Mr. Hifter ordered, endorsed, or failed to take necessary measures to prevent the alleged killings. █████████████████████████████████████████

████████████████████████████ .[148] ██████

██████████████████████████████████████████

██████████████████████████████████████████

---

[143] *Jane W. v. Thomas*, 560 F. Supp. 3d 855, 880 (E.D. Pa. 2021).
[144] *See* Ex. F – Abdulrrauf Tunalli Dep., Oct. 14, 2021, at 17:17-18:2.
[145] *Mamani v. Berzaín*, 533 F. Supp. 3d 1252, 1267, 1293 (S.D. Fla. 2021).
[146] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 154:12-15.
[147] *See, e.g., Chiminya Tachiona v. Mugabe*, 216 F. Supp.2d 262 (S.D.N.Y. 2002); *Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996).
[148] *See* Ex. C – Hifter Dep., June 26, 2023, at 236:12-22.

25

████████████████████████.[149] ████████████████████████████

████████████████████████████████████.[150]

Plaintiffs have failed to provide any evidence sufficient to tie Mr. Hifter to their allegations.

Plaintiffs have not met any of the prongs of the command responsibility doctrine.  They have

presented nothing more than mere speculation about Mr. Hifter's involvement in their allegations.

As the court explained in *Mamani*, such broad accusations are "easy to say about leaders of nations,

but without adequate factual support of more specific acts by these defendants, these 'bare

assertions' are 'not entitled to be assumed true.'"[151] Plaintiffs' inability to establish any element

of command responsibility results in a failure to demonstrate Mr. Hifter's liability of these claims.

Therefore, the failure to establish a causal link between the events that took place and Mr. Hifter

is fatal to Plaintiffs' claims, and summary judgment should be granted.[152]

## V.    CONCLUSION

Defendant, Khalifa Hifter, has established that there are no genuine issues as to any

material fact, and that, as the facts stand, Plaintiffs do not have a viable legal claim against him.

As such, summary judgment should be entered in Mr. Hifter's favor and the case against him

dismissed with prejudice.

Dated: February 23, 2024

---

[149] *See* Ex. A – Hifter Dep., Nov. 6, 2023, at 111:21-112:3.; *see also* Ex. C – Hifter Dep., June 26, 2023, at 239:10-18.

[150] *Id.*

[151] *Mamani I*, 654 F.3d at 1154 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)).

[152] *See Qi*, 349 F. Supp. 2d at 1331-32 (finding that a superior subordinate relationship was established where one defendant had supervisory authority over perpetrators, and another defendant "played a major policy-making and supervisory role in the policies and practices that were carried out") (internal quotation marks omitted).

Respectfully submitted,

KHALIFA HIFTER

By Counsel


/s/ Madison A. Beatty
Robert H. Cox (VSB No. 33118)
Madison A. Beatty (VSB No. 98099)
BRIGLIA HUNDLEY, P.C.
1921 Gallows Road, Suite 750
Tysons Corner, Virginia 22182
(703) 883-0880 [telephone]
(703) 883-0899 [facsimile]
rcox@brigliahundley.com
mbeatty@brigliahundley.com


## CERTIFICATE OF SERVICE

I certify that on February 23, 2024, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.


/s/ Madison A. Beatty
Madison A. Beatty (VSB No. 98099)

**<u>EXHIBIT A</u>** – Nov. 6, 2022, Deposition Transcript filed under seal pursuant to Protective Order entered May 6, 2022

**<u>EXHIBIT B</u>** – Filed under seal pursuant to Protective Order entered May 6, 2022

# **EXHIBIT C** – Filed under seal pursuant to Protective Order entered May 6, 2022

# EXHIBIT D

EN

## ☰ Meetings Coverage and Press Releases

Meetings Coverage
Security Council

---

**7644TH MEETING (AM)**

**SC/12282**
**15 March 2016**

## Adopting Resolution 2273 (2016), Security Council Extends Mandate of United Nations Support Mission in Libya until 15 June

The Security Council today decided to extend until 15 June 2016 the mandate of the United Nations Support Mission in Libya (UNSMIL), under the leadership of the Special Representative of the Secretary-General, and in full accordance with the principles of national ownership.

Unanimously adopting resolution 2273 (2016), the 15-member Council recognized the need for UNSMIL to re-establish its presence in Libya and make the necessary security arrangements to that effect.

Also by the text, the Council requested that the Secretary-General report within 60 days following consultations with the national authorities on recommendations for UNSMIL's support to the subsequent phases of Libya's transition process, and for the Mission's own security arrangements.

The meeting began at 10:04 a.m. and ended at 10:08 a.m.

<u>Resolution</u>

The full text of resolution 2273 (2016) reads as follows:

"*The Security Council*,

"*Recalling* its resolution 1970 (2011) and all its subsequent resolutions on Libya,

"*Reaffirming* its strong commitment to the sovereignty, independence, territorial integrity and national unity of Libya,

"*Taking note* of the report of the Secretary-General on the United Nations Support Mission in Libya (UNSMIL) (S/2016/182),

"*Expressing* its support for the ongoing efforts of UNSMIL and the Special Representative of the Secretary-General to facilitate a Libyan-led political solution to the challenges facing Libya,

"*Recalling* resolution 2259 (2015) which endorses the Rome Communiqué of 13 December 2015 to support the Government of National Accord as the sole legitimate Government of Libya, that should be based in the capital Tripoli,

"*Reiterating* its support for the full implementation of the Libyan Political Agreement of Skhirat, Morocco signed on 17 December 2015 to form a Government of National Accord consisting of the Presidency Council and Cabinet supported by the other institutions of State including the House of Representatives and State Council, and *welcoming* the endorsement in principle of the Libyan Political Agreement by the House of Representatives on 25 January 2016,

"*Recognizing* the importance of continued inclusiveness and *strongly encouraging* all parties in Libya to be part of and engage constructively in good faith with the Agreement,

"*Encouraging* the Government of National Accord to finalize interim security arrangements for stabilizing Libya as a critical step towards tackling Libya's political, security, humanitarian, economic and institutional challenges and to combat the rising threat of terrorism,

"*Reiterating* its request that all Member States fully support the efforts of the Special Representative of the Secretary-General and work with the Libyan authorities and UNSMIL to develop a coordinated package of support to build the capacity of the Government of National Accord, in line with Libyan priorities and in response to requests for assistance, and *further reiterating* its call upon all parties to cooperate fully with the activities of UNSMIL, including taking necessary steps to ensure the security and unhindered movement for the UN and associated personnel,

"*Recognizing* in the current circumstances, the need for a short extension of the mandate of UNSMIL, to enable the Mission to continue to assist the Presidency Council in further work in establishing the Government of National Accord, that should be based in the capital Tripoli, and implementing the Libyan Political Agreement,

"*Recalling* its determination in resolution 2213 (2015) that the situation in Libya continues to constitute a threat to international peace and security,

"1.  *Decides* to extend until 15 June 2016 the mandate of UNSMIL, as set out in paragraph 12 of resolution 2238 (2015), under the leadership of the Special Representative of the Secretary-General, in full accordance with the principles of national ownership, and *recognizes* the need for UNSMIL to re-establish its presence in Libya, and the need to make the necessary security arrangements to this effect;

"2.  *Requests* the Secretary-General to report within 60 days following consultations with the Libyan authorities on recommendations for UNSMIL's support to the subsequent phases of the Libyan transition process and UNSMIL's security arrangements;

"3.  *Decides* to remain actively seized of the matter."

⚠ **For information media. Not an official record.**

---

JA200

# EXHIBIT E

```
1              IN THE UNITED STATE DISTRICT COURT

2          FOR THE EASTERN DISTRICT OF VIRGINIA

3                 ALEXANDRIA DIVISION

4     - - - - - - - - - - - - -x

5    AIDA ELZAGALLY,            :

6    et al.,                    :

7              Plaintiffs,  :   Civil Action No.

8       v.                      :   1:19-cv-853

9    KHALIFA HIFTER,            :

10             Defendant.   :

11   MUNA AL-SUYID, et al.,  :   Civil Action No.

12             Plaintiffs,  :   1:20-cv-170

13      v.                      :

14   KHALIFA HIFTER,            :

15             Defendant.   :

16   ALI ABDULLAH HAMZA,    :   Civil Action No.

17   et al.,                    :   1:20-cv-1038

18             Plaintiffs,  :

19      v.                      :

20   KHALIFA HIFTER,            :

21             Defendant.   :

22   - - - - - - - - - - - - -x
```

Transcript of Aida Mukhtar Elzagally
Conducted on January 10, 2024                                    2

1     Videotaped Deposition of AIDA MUKHTAR ELZAGALLY

2                     Conducted Virtually

3                 Wednesday, January 10, 2024

4                       8:07 a.m. ET

5

6     Job No.: 520747

7     Pages: 1 - 79

8     Reported By: Victoria Lynn Wilson, RMR, CRR

9

10        Videotaped Deposition of AIDA MUKHTAR

11    ELZAGALLY, conducted virtually.

12

13

14

15

16        Pursuant to notice, before Victoria Lynn

17    Wilson, Registered Merit Reporter, Certified

18    Realtime Reporter, Notary Public in and for the

19    State of Maryland.

20

21

22

Transcript of Aida Mukhtar Elzagally
Conducted on January 10, 2024                    42

| | | |
|---|---|---|
| 1 | MS. BEATTY:  Yes. | 11:59:53 |
| 2 | A  Yes.  Yes, social media and media.  I have | 12:00:08 |
| 3 | seen it through social media and media. | 12:00:12 |
| 4 | Q  And this is your husband, Msaddek Tunalli; | 12:00:14 |
| 5 | correct? | |
| 6 | A  Yes, ma'am. | 12:00:23 |
| 7 | Q  Is that his military uniform that you | 12:00:25 |
| 8 | mentioned earlier? | 12:00:28 |
| 9 | A  Yes, this was his military uniform. | 12:00:37 |
| 10 | Q  And he was not wearing this on the day -- | 12:00:42 |
| 11 | on April 14, 2019. | 12:00:46 |
| 12 | A  I don't recall whether he was wearing this | 12:01:08 |
| 13 | uniform or not.  I'm not sure. | 12:01:10 |
| 14 | Q  That's okay. | 12:01:15 |
| 15 | Similar to the Libyan National Army, | 12:01:23 |
| 16 | Mr. Tunalli wore his uniform daily though; | 12:01:25 |
| 17 | correct? | |
| 18 | A  Yes.  Yes, a military uniform. | 12:01:42 |
| 19 | Q  What was his rank in the military? | 12:01:46 |
| 20 | A  He was a brigadier. | 12:02:01 |
| 21 | Q  And how long did he serve in the military? | 12:02:04 |
| 22 | A  I don't remember. | 12:02:24 |

USCA4 Appeal: 24-1426    Doc: 17    Filed: 07/15/2024    Pg: 208 of 264

Transcript of Aida Mukhtar Elzagally
Conducted on January 10, 2024                       43

| | | |
|---|---|---|
| 1 | Q  Do you have a general number, as in since | 12:02:29 |
| 2 | he was an adult? | 12:02:34 |
| 3 | A  I'd say about 30 years, about 30 years. | 12:02:56 |
| 4 | Q  Did he have any other professions besides | 12:03:02 |
| 5 | the military? | 12:03:06 |
| 6 | A  No. | 12:03:12 |
| 7 | Q  What were his responsibilities in the | 12:03:19 |
| 8 | military? | 12:03:23 |
| 9 | A  I don't know. | 12:03:32 |
| 10 | Q  Did he have any individuals underneath | 12:03:35 |
| 11 | him, any troops underneath him? | 12:03:38 |
| 12 | A  I don't know. | 12:03:52 |
| 13 | Q  Do you know where he went to work every | 12:04:18 |
| 14 | day? | 12:04:32 |
| 15 | A  What do you mean?  Where he used to go? | 12:04:32 |
| 16 | Q  Did he go to an office building?  Did he | 12:04:36 |
| 17 | go to a specific base? | 12:04:38 |
| 18 | A  His office was in Ainzar. | 12:04:52 |
| 19 | Q  What hours did he work? | 12:04:56 |
| 20 | A  Morning.  In the morning. | 12:05:07 |
| 21 | Q  And when he worked in the Ainzar District, | 12:05:17 |
| 22 | did he go out to defend the city from the Libyan | 12:05:21 |

Transcript of Aida Mukhtar Elzagally
Conducted on January 10, 2024                          26

| | | |
|---|---|---|
| 1 | Q  Did you personally see any of his -- any | 10:16:03 |
| 2 | LNA members in the Ainzar District? | 10:16:10 |
| 3 | A  No.  No, I did not see any of his | 10:16:35 |
| 4 | allies -- allies. | 10:16:42 |
| 5 | Q  LNAs, Libyan National Army? | 10:16:45 |
| 6 | A  Yes.  Yes. | 10:16:49 |
| 7 | Q  So, you have not seen any of the Libyan | 10:17:14 |
| 8 | National Army members in person in April of 2019. | 10:17:17 |
| 9 | A  That's correct, I did not see any. | 10:17:31 |
| 10 | Q  In April of 2019. | 10:17:32 |
| 11 | A  No. | 10:17:44 |
| 12 | MR. GILL:  Mr. Interpreter, I just want to | 10:17:47 |
| 13 | be clear because I'm a little confused.  Did you | 10:17:49 |
| 14 | interpret for her "LNA members" or "allies"? | 10:17:52 |
| 15 | THE INTERPRETER:  Actually, I -- I, | 10:17:56 |
| 16 | actually -- thank you, Mr. Gill, for correcting | 10:17:58 |
| 17 | me. | 10:18:01 |
| 18 | Actually, I first started, "allies," | 10:18:02 |
| 19 | "allies," and then, you know, I corrected what -- | 10:18:04 |
| 20 | based on what counsel for defendant stated, | 10:18:06 |
| 21 | clarified, that was the LNA, the Libyan National | 10:18:10 |
| 22 | Army, which I did. | 10:18:14 |

Transcript of Aida Mukhtar Elzagally
Conducted on January 10, 2024                              45

| | | |
|---|---|---|
| 1 | uniform? | 12:07:43 |
| 2 | A  Yes. | 12:07:52 |
| 3 | Q  And did he have a weapon on him on | 12:07:55 |
| 4 | April 14, 2019? | 12:07:58 |
| 5 | A  He -- it was a handgun on.  He used to, | 12:08:15 |
| 6 | you know, put his handgun on him. | 12:08:24 |
| 7 | Q  Do you recall if he had that handgun on | 12:08:27 |
| 8 | him on April 14, 2019? | 12:08:30 |
| 9 | A  I don't remember April the -- the 14th. | 12:08:53 |
| 10 | Q  Okay.  Did you attempt to file any action | 12:09:06 |
| 11 | in the State of Libya relating to the death of | 12:09:12 |
| 12 | your husband? | 12:09:14 |
| 13 | A  I did not.  I was thinking to file a | 12:09:34 |
| 14 | lawsuit.  This is an option.  I'm still thinking | 12:09:47 |
| 15 | to file a lawsuit. | 12:10:01 |
| 16 | Q  A lawsuit in Tripoli? | 12:10:07 |
| 17 | A  Yes, in Tripoli. | 12:10:13 |
| 18 | Q  How did you learn about filing a lawsuit | 12:10:17 |
| 19 | in the United States? | 12:10:20 |
| 20 | A  In Virginia, I have reached out to | 12:10:43 |
| 21 | institutions. | 12:10:47 |
| 22 | Q  Were you the one to reach out to the | 12:10:50 |

# EXHIBIT F

Page 1

UNITED STATES DISTRICT COURT
FOR THE  EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

----------------------------------x
AIDA ELZAGALLY, as the wife
of MSADDEK TUNALLI, deceased

AYAH TUNALLI, as the daughter
of MSADDEK TUNALLI, deceased          Case No.
                              1:19-cv-00853-LMB-MSN

ALAA TUNALLI, as the daughter
of MSSADDEK TUNALLI, deceased

ABDULHAMEED TUNALLI, as the son
Of MSSADDEK TUNALLI, deceased

ABDULRRAUF TUNALLI, as the son
of MSSADDEK TUNALLI, deceased

MUHAMMAD TUNALLI, as the son
of MSSADDEK TUNALLI, deceased

ABDULADEEM TUNALI, as the son
of MSSADDEK TUNALLI, deceased

MAIS AHMED MAYOUF, as the daughter
of MUFIDA SASI ABU GASIAH, deceased

ABDULHAMEED AL-HARRAMAH, as
the father of AYMAN AL-HARRAMAH,
deceased

               Plaintiffs,
          vs.

KHALIFA HAFTAR, individually,
last known address in Libya,


               Defendant.
----------------------------------x

       Deposition of ABDULRRAUF TUNALLI
     Thursday, October 14, 2021 - 6:14 p.m.

Reported by:
Jennifer Ocampo-Guzman, CRR, CLR
Job No:3357

Page 17

```
 1        A.    There are a lot of armed forces.

 2        Q.    Do you personally know anyone that

 3   is in Hifter's army?

 4        A.    No.

 5        Q.    Earlier you said that your father

 6   served in the military up until the time of

 7   his death.  He was not a part of Hifter's

 8   army; is that correct?

 9        A.    Of course.  He was against Haftar.

10        Q.    What was the name of the military

11   for which your father served?

12        A.    It was a part of the head of the

13   military division.

14        Q.    Was that army a part of the GNA or

15   the Government of National Accord?

16        A.    Yes, the National Libyan Army.

17        Q.    Your father died on April 14, 2019;

18   is that correct?

19        A.    Yes.

20        Q.    Did you see your father on that

21   day?

22        A.    I was working that day at a car

23   repair shop that provides -- an auto shop,

24   and I saw him that morning, and then I left.

25        Q.    Was he wearing his military
```

Page 18

1    uniform?

2         A.   Yes.

3         Q.   Do you know whether --

4              MS. McKASSON:  Strike that.

5         Q.   You said earlier that your father

6    was a part of the National Libyan Army.

7              Do you know whether he was fighting

8    against Mr. Haftar or his army on the day of

9    his death?

10        A.   Yes, he was fighting against

11   Haftar.

12        Q.   Is that how your father died, while

13   he was fighting against Mr. Hifter?

14        A.   Yes, and he was helping people to

15   escape from their houses when they were being

16   attacked.

17        Q.   Since your father died, have you

18   had any medical treatment as a result of his

19   death?

20        A.   What do you mean by "medical"?

21        Q.   Have you gone to any doctors

22   because of your father's death?

23        A.   No, me personally, no.

24             Just psychologically, of course,

25   I'm thinking, and I am affected.

USCA4 Appeal: 24-1426    Doc: 17    Filed: 07/15/2024    Pg: 215 of 264

1        Q.    Have you gone for any psychiatric

2    treatment?

3        A.    No.

4        Q.    Earlier you stated that you were

5    working in an auto repair shop on the day

6    your father died; is that correct?

7        A.    Yes.

8        Q.    How far away was that auto repair

9    shop from the Ayan Zarah District?

10       A.    Approximately 20 minutes.  It's

11   close by.

12       Q.    You were not present for your

13   father's death; is that correct?

14       A.    No, I was not next to him the

15   moment when he died.  He fell as a martyr in

16   the field of war.

17       Q.    Have you filed any action or

18   complaint in Libya relating to your father's

19   death?

20       A.    No.

21       Q.    Why not?

22       A.    There is no point of trying to open

23   a case here.

24       Q.    Can you explain that to me?

25       A.    If we try to pursue any legal

# EXHIBIT G

Page 1

UNITED STATES DISTRICT COURT
FOR THE  EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

-----------------------------------x
AIDA ELZAGALLY, as the wife
of MSADDEK TUNALLI, deceased

AYAH TUNALLI, as the daughter
of MSADDEK TUNALLI, deceased       Case No.
                                1:19-cv-00853-LMB-MSN
ALAA TUNALLI, as the daughter
of MSSADDEK TUNALLI, deceased

ABDULHAMEED TUNALLI, as the son
Of MSSADDEK TUNALLI, deceased

ABDULRRAUF TUNALLI, as the son
of MSSADDEK TUNALLI, deceased

MUHAMMAD TUNALLI, as the son
of MSSADDEK TUNALLI, deceased

ABDULADEEM TUNALI, as the son
of MSSADDEK TUNALLI, deceased

MAIS AHMED MAYOUF, as the daughter
of MUFIDA SASI ABU GASIAH, deceased

ABDULHAMEED AL-HARRAMAH, as
the father of AYMAN AL-HARRAMAH,
deceased

                    Plaintiffs,
            vs.

KHALIFA HAFTAR, individually,
last known address in Libya,


                    Defendant.
-----------------------------------x

        Deposition of ABDULHAMEED TUNALLI
      Thursday, October 14, 2021 - 3:10 p.m.

Reported by:
Jennifer Ocampo-Guzman, CRR, CLR
Job No.: 3357

1           (Discussion off the record.)

2           MR. GREAVES:  Let's go back on the

3       record.

4       Q.   And Mr. Tunalli, can you just

5    confirm now that the court reporter is

6    recording again, that your brother has left

7    the room?

8       A.   Yes, Abdulrraouf Tunalli has left

9    the room.

10       Q.   There is no one else in the room at

11    this time?

12       A.   No one else.

13       Q.   If anyone does come into the room,

14    please feel free to interrupt me and let me

15    know.

16       A.   That's fine.  Yes, that's no

17    problem.  If you had asked me from the very

18    beginning, that I have to be alone, I

19    wouldn't let my brother to be present here.

20       Q.   It's no problem.  My mistake.

21           I want to ask about the day that

22    your father was killed.

23           Where were you that day?

24       A.   I was working -- the day I was

25    working at a local pharmacy and I remember

 1    receiving a phone call informing me that my

 2    father has been wounded by a bullet and that

 3    he was taken to an emergency room at a local

 4    hospital.

 5         Q.   Was that April 14th of 2019?

 6         A.   Yes, yes, it is.

 7         Q.   Had you seen your father earlier in

 8    that day?

 9         A.   No, no, I haven't.  No, I haven't.

10    I was at work.

11         Q.   Did you live in the same house as

12    your father at that time period?

13         A.   Yes.

14         Q.   When was the last time you had seen

15    your father in person before his death?

16         A.   I am not sure.  I don't remember

17    clearly.  Possibly a couple of days prior to

18    his death, because the situation was very

19    chaotic.  There was a war happening, because

20    of the fighting and Haftar's forces attacking

21    the city.

22         Q.   Are you aware of --

23              MR. GREAVES:  Strike that.

24         Q.   Do you remember what your father

25    was wearing the last time you saw him?

# **EXHIBIT H** – Filed under seal pursuant to Protective Order entered May 6, 2022

# EXHIBIT I

## DECLARATION OF FATHI YOUNIS TOOMI

I, Fathi Younis Toomi, affirm and declare as follows:

1. I am over 18 years of age, of sound mind, and otherwise competent to make this declaration. The statements set out below are based on my personal knowledge and experience.

2. I am a citizen of Libya and have resided and worked in Tripoli, Libya for most of my life, although I currently reside and work in Benghazi, Libya.

3. I received a bachelor's degree in law at Naser University in Tripoli, Libya in 1992.

4. I received a diploma in accounting from the National Institute of Administrative and Financial Sciences in Tripoli in 2001.

5. I currently serve as a Legal Adviser to the Prime Minister of the Libyan Government in Benghazi, Libya as well as a Legal Adviser to the Minister of Planning and Finance of the Libyan Government in Benghazi, Libya.

6. From 1992 to the present, I have served in several legal positions within the Libyan Government, including as a litigator in the Department of State Litigation (roughly equivalent to the U.S. Office of the Solicitor General) from 1993 to 1997. A true and correct copy of my resume is attached to my declaration.

7. Despite some disruptions in judicial operations, the Courts in Libya have been operating as normal for much of the time between 2014- and the present date.

8. Courts in Benghazi were operating during (1) all of 2018, (2) all of 2019 except from April to June, (3) all of 2020 except from April to June, (4) all of 2021 except from April to June, (4) all of 2022, (5) all of 2023, and (6) all of 2024 to date.

1

9. Courts in Tripoli were operating during (1) January to May and November to December in 2014, (2) all of 2015, (3) all of 2016, (4) all of 2017, (5) all of 2018, (6) all of 2019 except from January to March, (7) all of 2021 except from September to December, (8) all of 2022, (9) all of 2023, and (10) all of 2024 to date.

10. I have attached to my declaration a chart that accurately summarizes the availability of judicial proceedings in Libya during the time period from 2014 to date.

11. The Libyan legal system is civil in nature rather than common law based. The codified laws prior to 1969 in Libya are modelled closely on those of Egypt and, consequently, the Napoleonic Codes of France in addition to the principles of the Islamic Shari'a ("Shari'a").

12. Since the overthrow of the Gaddafi regime in 2011, the primary source of law in Libya has been the Constitutional Declaration of the National Transitional Council (the "Constitutional Declaration"), which states that the foundation for all law in Libya is the Shari'a. The Constitutional Declaration is intended to be a transitional document; the permanent constitution is currently still in the drafting phase.

13. As a general rule, the sources of law in Libya for civil matters follow the following hierarchy:

   a. legislation;

   b. principles of Shari'a Law;

   c. prevailing custom; and

   d. principles of natural law and principles of justice.

14. The Libyan courts are divided into civil courts, criminal courts, and administrative courts. All matters are heard before judges; there are no jury trials in Libya.

15. Civil proceedings in Libya are initiated in the civil Court of First Instance or the Partial Court. Decisions of the Partial Court are automatically appealable to the Court of First Instance, and decisions of the Court of First Instance are automatically appealable to the Court of Appeal. Appeals can be based on both the facts and the law of a case. An appeal involves a rehearing of the matter and new evidence may be adduced. Any judgment of the Court of Appeal is subject to a further appeal to the Supreme Court; however, such an appeal is only heard on matters of law and with the permission of the Supreme Court.

16. The judicial system in Libya is inquisitorial in nature and judges have wide powers to investigate and establish the facts and then apply the law to these facts. Judges may be assisted by court appointed experts whenever a court needs to consider technical matters such as accountancy, banking, engineering, etc. Cases before the lower bench of the Court of First Instance are generally determined before a single judge, whereas matters before the Court of Appeal will be heard by a panel of three judges.

17. Article 166 of the Civil Code, which governs civil liability, states that: "Every fault which causes injury to another imposes an obligation to make reparation upon the person by whom it is committed." The elements required under Article 166 to establish liability and obtain reparations are fault, causation, and injury.

18. Under Libyan law, damages are awarded to compensate for an injury. The damages awarded must be commensurate with the losses suffered (i.e. damages cannot exceed the amount of loss). Under Article 224 of the Civil Code, the judge will fix the amount of damages if not otherwise fixed by contract or by law. Damages will include profits lost by the claimant, to the extent that such lost profits are a normal result of the injury.

JA221

19. In Civil Appeal No. 835/55, 02/12/2010 [unpublished], the claimant filed a claim against the Libyan State security apparatus alleging that he was arrested and imprisoned (effectively by extrajudicial abduction and detention) without a warrant from the public prosecution or the judiciary. The Supreme Court found that the alleged acts were unlawful. It held that law enforcement duties must be conducted in accordance with the regulations and procedures set out by the law, otherwise the conduct is invalid, and the perpetrator will be liable. The Supreme Court found that the officers violated the procedures of arrest and detention and therefore were liable.  The Supreme Court further ruled that the independence of a government body does not equate to unfettered authority; rather, the government body is subject to the authority and supervision of the State.

20. In Civil Appeal No. 195/56, 26/05/2011 [unpublished], the claimants brought claims for compensation for the years they spent in prison and the torture and abuse they suffered during that time. The Supreme Court held that this was a violation of the human right to freedom and dignity rendering the treatment of the claimants in prison a criminal offence. The Supreme Court stated that compensation arising from this conduct would be decided pursuant to the rules governing liability arising out of harmful acts, a determination within the jurisdiction of the Court of First Instance.

21. In Civil Appeal No. 217/56, 14/01/2013, the Supreme Court stated that damages include moral damages which compensate damage to the person's dignity, emotions, or status.

22. In Paragraph 9 of the *Hamza* Complaint, Plaintiffs allege that they are "unable to exhaust any remedies in Libya because there is no functioning or effective justice system to

4

adjudicate their claims." This statement is inaccurate. As of 2022, all Libyan Courts have been functional, and criminal and civil suits may be filed.

23. In Paragraph 47 of the *Hamza* Complaint, Plaintiffs allege that they "do not have the ability to seek a legal remedy or appropriate civil relief in Libya." This statement is inaccurate. Article 166 of the Civil Code, which governs civil liability, allows Plaintiffs to seek a civil remedy for alleged torts in Libya.

24. In Paragraph 209 of the *Hamza* Complaint, Plaintiffs allege they "are unable to exhaust adequate remedies in Libya where the conduct giving rise to the claim occurred given the on-going hostilities and dysfunctional judicial systems and any such attempts would be futile or otherwise create risk of reprisal." This statement is inaccurate. Plaintiffs may seek legal remedies in Libya on the alleged civil torts.

25. In Paragraph 8 of the *al-Suyid* Complaint, Plaintiffs allege that they "cannot seek justice in Libya, which is largely controlled by the Defendants and their cohorts." This statement is inaccurate. Defendant is not in control of the judicial system in Tripoli, and Plaintiffs may bring forward a civil claim against Defendant.

26. In Paragraph 51 of the *al-Suyid* Complaint, Plaintiffs allege that "[t]his is not an environment in which Plaintiffs may practically or safely pursue justice in a Libyan court, seeking personal damages against the field marshal of the LNA who controls the government in much of Libya, including Plaintiffs' home jurisdiction. Their relief can come only in U.S. federal courts." This statement is inaccurate. The Libyan Courts have been fully functional as of 2022. Prior to 2022, the Courts were functional with periodic pauses in activity due to COVID-19 and ongoing conflicts.

JA223

27. The Plaintiffs' claims in the underlying actions pending in the Eastern District of
Virginia: *al-Suyid, et.al v. Hifter* (1:20-cv-170), *Elzagally, et. al v. Hifter* (1:19-cv-853),
and *Hamza, et. al v. Hifter* (1:20-cv-1038) may be brought forward in Libya under Article
166 of the Civil Code.

28. Exemplary (punitive) damages are not available under Libyan Law.

29. I confirm that I understand my duty to the Court and have complied with and will
continue to comply with it.

30. I confirm that I have made clear which facts and matters in this report are within my own
knowledge and which are not. Those that are within my own knowledge I confirm to be
true.

31. The opinions I have expressed represent my true and complete professional opinions on
the matters to which they refer.

I declare under the penalties of perjury pursuant to the laws of the United States of America
that the foregoing is true and correct.

Signed on this 23rd day of February, 2024.

Signed (electronically) and executed in
accord with 10 CFR 2.304(d) by:

_____

Fathi Younis Toomi

Address: Building 102, Apt. 4
Alsouiai Alkhitouni Street
Abuhrida, Tripoli 00218 (Libya)
Phone No.: +218912149212
E-mail Address: fat2gar@gmail.com

6

JA224

# FATHI YOUNIS TOOMI

Email: fat2gar@gmail.com
Mobile No.: +218912149212

## Personal Details

Date of Birth: April 24, 1969
Gender: Male
Nationality: Libyan
Civil status: Married

## Education

Diploma in Accounting                                                        2000 - 2001
National Institute of Administrative and Financial Sciences, Tripoli

Bachelor's Degree in Law                                                     1991 - 1992
Naser University, Tripoli

## Employment

Legal Adviser to the Prime Minister                            May 2023 to Present
Libyan Government, Benghazi

Legal Adviser to the Minister of Planning and Finance         June 2022 to Present
Libyan Government, Benghazi

Legal Adviser to the Minister of Finance                      Jan 2017 to Oct 2018
Government of National Accord, Tripoli

Director, Office of Legal Affairs                             March 2013 to Dec 2019
Libya Trade Network, Tripoli

Director, Office of Legal Affairs of the Ministry of Finance  Nov 2011 to Feb 2013
Libyan Government, Tripoli

Legal Adviser to the General People's Committee for Finance   July 2010 to Oct 2011
Libyan Arab Jamahiriya, Tripoli

Assistant Controller of the Libyan Mission to the United Nations   Feb 2006 to June 2010
United Nations, New York

Legal Adviser to the General People's Committee for Finance   Dec 1997 to Jan 2006
Libyan Arab Jamahiriya, Tripoli

Staff Attorney, Department of State Litigation               Jan 1993 to Dec 1997
Libyan Arab Jamahiriya, Tripoli

Legal Adviser, Advisory and Legislative Department           Oct 1992 to Dec 1992
Libyan Arab Jamahiriya, Tripoli

## Memberships and Other Activities

- Member of Supervisory Board – Libyan Iron and Steel Company
- Member of the drafting committee for the Libyan E-commerce Transactions Law and the implementing regulations for the Labor Relations Act and the Local Government Act, among others.
- Member of the Ministry of Finance committee charged with supervising the execution of civil judgments against the Libyan State.
- Member of several investigative and audit committees and disciplinary boards charged with the investigation of financial and administrative offenses.
- Member of several committees charged with overseeing the closure of Libyan embassies and consulates abroad.
- Lecturer on financial and administrative legislation, training courses for members of the National Accounting Office.
- Member of the Committee on Administrative and Financial Matters (Fifth Committee) of the General Assembly of the United Nations in New York.

## Status of Judicial Operations in Major Libyan Cities (2014-2024)

| Year | Tripoli | Benghazi | Sabha | Misrata | Zawiya | Notes |
|------|---------|----------|-------|---------|--------|-------|
| 2014 | Operating Jan to May and Nov to Dec | Operating Jan to Oct; suspended Nov to Dec | Operating all year | Operating all year | Operating all year | • Conflict in Tripoli erupted in June, leading to a temporary suspension of judicial operations from June to November 2014.<br>• Conflict in Benghazi caused a suspension of judicial operations from late 2014 until 2017. |
| 2015 | Operating all year | Suspended all year | Operating all year | Operating all year | Operating all year | • Conflict in Benghazi continued to disrupt judicial operations. |
| 2016 | Operating all year | Suspended all year | Operating all year | Operating all year | Operating all year | • Conflict in Benghazi continued to disrupt judicial operations. |
| 2017 | Operating all year | Suspended all year | Operating all year | Operating all year | Operating all year | • Conflict in Benghazi continued to disrupt judicial operations. |
| 2018 | Operating all year | Operating all year | Operating all year | Operating all year | Operating all year | • Situation normal all year. |
| 2019 | Suspended from Jan to Mar | Suspended from Apr to Jun | Suspended from Apr to Jun | Operating all year | Operating all year | • Conflict across Libya disrupted judicial operations in Tripoli, Benghazi and Misrata from mid-2019 to late 2021. |
| 2020 | Suspended all year | Suspended from Apr to Jun | Suspended from Apr to Jun | Suspended from Apr to Jun | Suspended from Apr to Jun | • COVID-19 pandemic disrupted judicial operations between April and June; all cities affected.<br>• Judicial operations in Tripoli suspended all year. |
| 2021 | Suspended from Sep to Dec | Suspended from Apr to Jun | Suspended from Apr to Jun | Operating all year | Operating all year | • Conflict across Libya disrupted judicial operations in Tripoli, Benghazi and Misrata at various times during 2021. |
| 2022 to 2024 | Operating normally | Operating normally | Operating normally | Operating normally | Operating normally | • Situation normal throughout 2022, 2023 and 2024 to date. |

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| AIDA ELZAGALLY, et al. ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No.   1:19-cv-0853 (LMB/JFA) |
| ) | |
| KHALIFA HIFTER ) | Filed Under Seal |
| Defendant, ) | Protective Order |
| ) | ECF Np. 199 |

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs Aida Elzagally, Abdulhameed Tunalli, Ayah Tunalli, Alaa Tunalli, Abdulrrauf Tunalli, Muhammad Tunalli, Abduladeem Tunalli, Mais Ahmed Mayouf and Abdulhameed Al-Haramah ("Plaintiffs"), by counsel and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, submit this reply brief in opposition to Defendant Khalifa Haftar's Motion for Summary Judgment. For the reasons set forth in this brief, Defendant's Motion should be denied.

## I.      INTRODUCTION

Hiftar moved for summary judgment on Plaintiff's claims based on his denial of knowledge of deaths of Plaintiffs' respective next of kin, Plaintiffs' lack of standing and lack of this Court's jurisdiction over Hiftar due to not acting under color of authority of a foreign state recognized by the US government. Plaintiffs challenge all grounds based on the facts and case law cited herein.

## II.     STATEMENT OF DISPUTED MATERIAL FACTS SUPPORTING PLAINTIFF'S CLAIMS

██████ Civil courts in Libya are not available for recourse for torture and killings. ██

████████████████████████████

2.      Defendants has generally denied knowledge or responsibility for Plaintiffs fact and expert witness deposition testimony submitted in support of their TVPA claim. (ECF nos. 146-3, 146-4, 146-5, 146-6).

3.      Plaintiffs are immediate family members of decedents in a society with no accessible marriage, birth, death or civil court records.

4.      Libya has no functioning civil court system to seek redress.

████ Hiftar is ultimately responsible for his troops ████



████ Defendant ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

7.      The Libyan National Army ████████████████████████

████████████████████████

## III.    ARGUMENT

### A.    Summary Judgment Standard

Rule 56(c) requires that "[a] party asserting that a fact…is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the records; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

The relevant inquiry at the summary judgment stage analyzes "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Even though summary judgment may be an appropriate tool to eliminate trial in some cases, it "must be used carefully so as not ... to foreclose trial on genuinely disputed facts." *Thompson Everett, Inc. v. National Cable Adv., LP*, 57 F.3d 1317, 1322-23 (4th Cir.1995). "The question at the summary judgment stage is not whether a jury is sure to find a verdict for the plaintiff; the question is whether a reasonable jury could rationally so find." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 334 (4th Cir. 2011) (emphasis in original).

**B.   Defendant Hifter stipulated that he is an individual who acted under actual or apparent authority or under the color of law.**

Defendant attempts to argue that Plaintiffs cannot establish an essential element of the TVPA, but he has forgotten that he in fact stipulated to this exact element in order to free himself of the obligation of providing essential discovery in this matter.

On September 13, 2021, on Plaintiff's Motion to Compel Discovery, Defendant argued that providing specific information regarding the Libyan National Army would put Defendant Hifter's life at risk. *See* Exh. 15, 9:16-20. Judge Nachmanoff asked Plaintiffs if they would need the information they were seeking if the issue of Defendant being an individual acting under actual or apparent authority or under the color of law was not in dispute. *Id.* at 5:7-21. Plaintiffs agreed that the information would not be necessary if Defendant stipulated to such element of the TVPA. *Id.* at 15, 5:22-6:4. Judge Nachmanoff specifically asked Defendant

> Is it your position that the defendant is not going to seek to have the case dismissed on summary judgment or on another motion to dismiss or at trial based on the failure of the plaintiffs to be able to establish that he was acting at the time under color of law or the authority of the state of Libya?

*Id.* at 13:25-14:5.Judge Nachmanoff went further to state that the stipulation dealt specifically to the issue of the color of law or his actual or apparent authority. *Id.* at 14:11-15:3. Lindsay McKasson,

then counsel for Defendant in this matter, agreed, stating that "[Hifter] has authority as the field marshal of the LNA, and I think that is undisputed." *Id.* at 15:4-5. Judge Nachmanoff then stated that Ms. McKasson's response was a clear statement made in open court and addressed the issue sufficiently, and thus limited the scope of the discovery based on this stipulation. *Id.* at 15:6-8, 23:21-24:1, 24:3-13.

Thus, Defendant cannot argue that Plaintiffs cannot establish that he is not an individual acting under actual or apparent authority or under the color of law.

**C.    Plaintiffs are Qualified as Representatives with Standing**

Defendant argues in his Memorandum that none of the Plaintiffs in this action are suing as representatives of the decedents. As an analogue to a cause of action under the TVPA, consider that Virginia law neither precludes not requires residency and formal appointment as an administrator to bring a cause of action for wrongful death. The relevant section of Virginia Code § 64.2-454 in its title envisages non-resident parties bringing an action for wrongful death. *See Id.* Appointment of administrator for prosecution of action for personal injury or wrongful death against or on behalf of estate of deceased resident or nonresident states:

> If a fiduciary has been appointed in a foreign jurisdiction, the fiduciary may qualify as administrator. The appointment of a fiduciary in a foreign jurisdiction shall not preclude a resident or nonresident from qualifying as an administrator for the purposes of maintaining a wrongful death action pursuant to § 8.01-50 or a personal injury action in the Commonwealth.

Each of the Plaintiffs has been clearly identified in the pleadings and subsequent motions as next of kin to the deceased individual: spouse, parent or child. None of the cases nor statutes cited by Defendant negate a cause of action based on failure of the incantation of the word "estate," "capacity," or representative. The Court shall not be led to dismiss this action when it is clear from the pleadings that no plaintiff in this case is claiming torture or death of himself or herself; rather that of an immediate relative with standing to bring a cause of action, in this case under the TVPA.

**D.      Hifter Can be Held Liable Under the TVPA**

After depositions and production of documents, Plaintiffs have corroborated their allegations that their respective next of kin were civilians killed by weapons exclusively used by forces of LNA commanded by Hifter.  Granting the Defendant summary judgment at this stage contravenes the fundamental motion of assembling a jury to determine the facts at issue. Only then can the Court determine whether Hifter is liable for these killings.

**A.  Evidence Points to Civil Liability for Defendant on Plaintiffs' TVPA Claim**

As explained by the United States Supreme Court, the TVPA makes available to all individuals, not just foreign citizens, a civil cause of action for torture and extrajudicial killing that may be brought against natural persons. *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1432 (2018). *See also Mohamad v. Palestinian Authority*, 566 U. S. 449, 451-452, 454 (2012). Specifically, the Act states that;

> "[a]n individual who, under actual or apparent authority, or color of law, of any foreign nation—(1) subjects an individual to torture shall, in a civil action, be liable for damages to that individual; or "(2) subjects an individual to extrajudicial killing shall, in a civil action, be liable for damages to the individual's legal representative, or to any person who may be a claimant in an action for wrongful death.  . . . 28 U.S.C.S. § 1350 note.

**1.      Plaintiffs can establish deliberate or extrajudicial killings.**

The TVPA defines an extrajudicial killing by stating

> For the purposes of the TVPA, the term 'extrajudicial killing' means a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples. Such term, however, does not include any such killing that, under international law, is lawfully carried out under the authority of a foreign nation."

28 U.S.C.S. § 1350 note. First, it is clear that these actions were deliberate. By the continued acts of bombing numerous civilian areas of Western Libya, the LNA has made their intent shown and these actions are not mistakes. *See* Exhibit 7, p. 4, ¶14. Further, these actions were not authorized by a

previous judgment by a regularly constituted court. It was a deliberate act taken upon innocent victims for the control of Western Libya. Bombing innocent civilians is an internationally known war crime and is not subject to any lawful authority of a nation.

Here, Plaintiffs can establish deliberate and extrajudicial killings. First, it is well settled that Hifter's troops have a repeated history of bombing civilian areas in their pursuit of taking over Western Libya. *Id.* Second, eyewitnesses ██████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████

**2.**    Plaintiffs can establish that Hifter is liable through command responsibility.

Defendant further argues that Plaintiffs fail because it cannot be shown that Hifter himself ordered the LNA's actions. However, it is not necessary to prove that Hifter himself committed the extrajudicial killing of decedents or that he specifically ordered them. In recommending a default judgement in the *Al Suyid* case against Hifter, Judge Anderson stated:

> The Ninth Circuit in *Hilao* described the principle of "command responsibility" as that which "holds a superior responsible for the actions of subordinates" and found the United States had moved toward recognizing the applicability of the principle for torture occurring during peacetime, not just during wartime. *Hilao v. Estate of Marcos*, 103 F.3d 767, 777 (9th Cir. 1996). Further, as the court cited, the legislative history of the TVPA evidenced this move, explaining that under international law "responsibility for torture, summary execution, or disappearances extends beyond the person or persons who actually committed those acts—anyone with higher authority who authorized, tolerated or knowingly ignored those acts is liable for them." *Id*. (citing S. Rep. No. 249, at 9 (1991)). More recently, the Supreme Court has affirmed that "the TVPA contemplates liability against officers who do not personally execute the torture or extrajudicial killing." *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 458, 132 S. Ct. 1702, 182 L. Ed. 2d 720 (2012).

The record in this case shows ample evidence that Hifter's personnel committed these acts in violation of the TVPA and did so for the purpose of killing innocent civilians. Decedents in this matter were killed by indiscriminate bombings in civilian areas. (*Elzagally*, Dockets nos. 146-3, 146-4, 146-5, 146-6.) Further, Plaintiffs have developed evidence that combatants under the

command and equipped by Hifter committed these killings. *See* Exhibit 2A at 6:13-22. This

Court has likewise recognized liability by a Defendant under the TVPA *in Bashe Abdi Yousuf*

*v. Mohamed Ali Samantar*, 2012 U.S. Dist. LEXIS 122403, 2012 WL 3730617, where Judge

Brinkema wrote:

> The Supreme Court recently affirmed that "the TVPA contemplates liability against
> officers who do not personally execute the torture or extrajudicial killing." *Mohamad
> v. Palestinian Auth.*, 132 S. Ct. 1702, 1709, 182 L. Ed. 2d 720 (2012) (citation
> omitted). Even before Mohamad, "virtually every court to address the issue" has
> "recogniz[ed] secondary liability for violations of international law since the founding
> of the Republic." *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 396 (4th Cir. 2011) (internal
> quotation marks and alterations omitted); accord *Doe VIII v. Exxon Mobil Corp.*, 654
> F.3d 11, 19, 397 U.S. App. D.C. 371 (D.C. Cir. 2011) (citing *The Presbyterian Church
> of Sudan v. Talisman*, 582 F.3d 244, 258-59 (2d Cir. 2009); *Khulumani v. Barclay
> Nat'l Bank*, 504 F.3d 254, 260 (2d Cir. 2007) (per curiam); *Sinaltrainal v. Coca-Cola
> Co.*, 578 F.3d 1252, 1258 n.5 (11th Cir. 2009), abrogated on other grounds, Mohamad,
> 132 S. Ct. at 1706 & n.2). For command responsibility to apply, three elements must
> be established: (1) [A] superior-subordinate relationship between the
> defendant/military commander and the person or persons who committed human
> rights abuses;  [*32] (2) the defendant/military commander knew, or should have
> known, in light of the circumstances at the time, that subordinates had committed,
> were committing, or were about to commit human rights abuses; and (3) the
> defendant/military commander failed to take all necessary and reasonable measures
> to prevent human rights abuses and punish human rights abusers. *Chavez*, 559 F.3d at
> 499 (holding that "command responsibility does not require proof that a commander's
> behavior proximately caused the victim's injuries") (citing *Ford v. Garcia*, 289 F.3d
> 1283, 1288 (11th Cir. 2002)); *see also Hilao*, 103 F.3d at 776-79 (same); *see generally
> Doe v. Qi*, 349 F. Supp. 2d 1258, 1329 (N.D. Cal. 2004) ("The principle of command
> responsibility that holds a superior responsible for the actions of subordinates appears
> to be well accepted in U.S. and international law in connection with acts committed
> in wartime . . . .") (citing In re Yamashita, 327 U.S. 1, 14-16, 66 S. Ct. 340, 90 L. Ed.
> 499 (1946)). *Samantar* at 31-32.

Here, it is clear that a jury can find Hifter liable under the command responsibility of the

TVPA. First, there is evidence of the existence of a superior-subordinate relationship between Hifter

and the LNA. In his deposition, ███████████████████████████████████

████████████████████████████████████████ He states that ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ Second, it is clear

that Hifter knew or should have known that his troops committed, were committing, or planned to

commit these attacks. The LNA has committed numerous bombings of civilian areas in Tripoli while under the command of Hifter. *Citing* Final report of the Panel of Experts on Libya established pursuant to Security Council resolution 1973 (2011) S/2019/914. *See* Exh. 8. Specifically, the 376-page report states:

> . . .until now, the only night operational capability for the delivery of explosive ordnance by the HAF [Haftar Armed Forces] was the Wing Loong unmanned combat air vehicle (UCAV), and possibly the IOMAX Archangel. The HAF is not operating any assets under its sole control with a night operational capability to accurately and precisely deliver HE A/C bombs of the type used in this incident. The attack on Tajoura shows some of the hallmarks of the use of precision guided munitions (PGM), as the odds of two unguided 'dumb' aircraft bombs both hitting the roofs of buildings, in what is a relatively under developed area in terms of low spatial density infrastructure, would be very low. *Id.* at 126, paragraph 14.

Further, there is evidence in the record that ████████████████████████████████
████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████:9.

Whether the targets were civilians is also a fact for the jury to decide. Defendant states that Plaintiff ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
██████████████████████████████ Virginia Model Jury Instruction 2.060 states:

Party Bound by His Own Testimony

When one of the parties testifies unequivocally to facts within his own knowledge, those statements of fact and the necessary inferences from them are binding upon him. He cannot rely on other evidence in conflict with his own testimony to strengthen his case.

**However, you must consider his testimony as a whole, and you must consider a statement made in one part of his testimony in the light of any explanation or**

**clarification made elsewhere in his testimony.** [Emphasis added]

While Hifter states that he does not know any facts related to these killings, his command of LNA forces is irrefutable and this evidence, combined with genuine issues of fact regarding his knowledge of his troops' action in eastern Libya, should prevent this Court from granting summary judgement to Hiftar on Plaintiffs' TVPA claim.

### E.    Defendant cannot establish head of state immunity.

Plaintiffs rely on the multitude of litigation that has taken place in this action already in direct conflict with Defendant's arguments regarding head of state immunity. First, this Court rightfully gave the U.S. State Department the ability to weigh in and state that immunity should be granted to Defendant. The U.S. Department took no such action. Plaintiffs rely on this Court's earlier decisions on the issue and also on the binding law of the Fourth Circuit in *Samantar*, where the Court states

> Moreover, we find Congress's enactment of the TVPA, and the policies it reflects, to be both instructive and consistent with our view of the common law regarding these aspects of *jus cogens*. Plaintiffs asserted claims against Samantar under [**35] the TVPA which authorizes a civil cause of action against "[a]n individual who, under actual or apparent authority, or color of law, of any foreign nation . . . subjects an individual to torture" or "extrajudicial killing." Pub. L. 102-256, § 2(a), 28 U.S.C. 1350 note. "The TVPA thus recognizes explicitly what was perhaps implicit in the Act of 1789—that the law of nations is incorporated into the law of the United States and that a violation of the international law of human rights is (at least with regard to torture) *ipso facto* a violation of U.S. domestic law." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 105 (2d Cir. 2000). Thus, in enacting the TVPA, Congress essentially created an express private right of action for individuals victimized by torture and extrajudicial killing that constitute violations of *jus cogens* norms. *See* S. Rep. No. 102-249, at 8 (1991) ("[B]ecause no state officially condones torture or extrajudicial killings, few such acts, if any, would fall under the rubric of 'official actions' taken in the course of an official's duties.").

*Yousuf v. Samantar*, 699 F.3d 763, 777 (4th Cir. 2012).

There is no doubt that the bombing of civilians is a violation of *jus cogens* norms. Thus, Hifter is not entitled to head of state immunity in order to shield himself from liability in this matter.

### F.    Plaintiffs have established evidence that there are no adequate and available legal remedies in Libya.

While the TVPA requires the exhaustion of all adequate remedies in the place where the conduct giving rise to the action occurred, an allegation of failure to exhaust remedies is an affirmative defense for which Defendant bears the burden of proof. "[Defendant] bears the burden of showing the availability and adequacy of the foreign remedies he contends Plaintiffs failed to exhaust." *Lizarbe v. Rondon*, 2009 U.S. Dist. LEXIS 70647, *6 (D.Md. Aug. 12, 2009) (citing *Jean v. Dorelien*, 431 F.3d 776, 781 (11th Cir. 2005)). This burden of proof is substantial. *Dorelien*, 431 F.3d at 781. "To the extent that there is any doubt . . . both Congress and international tribunals have mandated that . . . doubts [concerning the TVPA and exhaustion are to] be resolved in favor of the plaintiffs." *Enahoro v. Abubakar*, 408 F.3d 877, 892 (7th Cir. 2005).

First, Defendant attempts to utilize expert opinion as support to meet the burden of their affirmative defense when this Court made clear that they had lost any chance to present such evidence. [ECF Doc. No. 229, 234]. Defendant specifically asked to late designate an expert on the legal system in Libya even though the deadline for designating experts had well passed, and the Court denied such motion. Defendant's attempt to use such inadmissible evidence to support their Motion for Summary Judgment should be completely ignored by this Court.

Second, Plaintiffs have established through evidence the unavailability of an adequate legal remedy in Libya. Through their expert, Plaintiffs can establish that the legal system in Libya is one that has in repeated instances (1) not taken actions required by law or (2) taken actions which legitimize wrongdoing in violation of the law. Further, the expert can speak to whether the Libyan legal court is even equipped to handle the adjudication of the rights of hundreds, even thousands, and individuals whose human rights have been violated. Further, the expert can speak to the lack of any acknowledgment in the Libyan legal system, whether in the penal code or elsewhere, of the prohibition of war crimes or crimes against humanity.

Last, by Defendant's own arguments throughout this litigation, it is clear that there is no adequate legal remedy in Libya. As Defendant has stated numerous times, Libya is in the midst of a civil war, in which two factions of the country have created their own independent governing systems. Thus, any kind of adjudication from one court within Libya would not hold any enforceability against actors working under the competing faction. Thus, despite Defendant's efforts to improperly introduce expert opinion regarding the legal system in Libya, the running of courts is not enough to show an adequate legal remedy.

**G.      Plaintiffs are entitled to damages under the TVPA.**

Under the TVPA, individuals who may be claimants under the action are those "who may be [] claimant[s] in an action for wrongful death." 28 U.S.C. § 1350, note § 2(a)(2) (2006). The TVPA "suggests looking to state law for 'guidance' regarding which parties would be proper wrongful death claimants and permits suit 'by the victim or the victim's legal representative or a beneficiary in a wrongful death action.'" *Sikhs for Justice Inc. v. Indian Nat'l Cong. Party*, 17 F. Supp. 3d 334, 346 (S.D.N.Y. 2014)(emphasis added)(quoting S. Rep. No. 102-249 at *7 (1991)), aff'd sub nom. *Sikhs for Justice, Inc. v. Nath*, 596 F. App'x 7 (2d Cir. 2014); see also *Baloco ex rel. Tapia v. Drummond Co.*, 640 F.3d 1338, 1349 (11th Cir. 2011) ("[S]tate law should govern the determination of whether a plaintiff is a claimant in an action for wrongful death and, where state law would provide no remedy, a court may apply the foreign law that would recognize the plaintiff's claim."). Pursuant to Va. Code § 8.01-52, damages for wrongful death:

> shall be distributed as specified under § 8.01-54 to (i) the surviving spouse, children of the deceased and children of any deceased child of the deceased, and the parents of the decedent if any of such parents, within 12 months prior to the decedent's death, regularly received support or regularly received services from the decedent for necessaries, including living expenses, food, shelter, health care expenses, or in-home assistance or care, or (ii) if there be none such, then to the parents, brothers and sisters of the deceased, and to any other relative who is primarily dependent on the decedent for support or services and is also a member of the same household as the decedent or (iii) if the decedent has left both surviving spouse and parent or parents, but no child

> or grandchild, the award shall be distributed to the surviving spouse and such parent
> or parents or (iv) if there are survivors under clause (i) or clause (iii), the award shall
> be distributed to those beneficiaries and to any other relative who is primarily
> dependent on the decedent for support or services and is also a member of the same
> household as the decedent or (v) if no survivors exist under clause (i), (ii), (iii), or (iv),
> the award shall be distributed in the course of descents as provided for in § 64.2-200.

As stated earlier challenging Defendant's arguments that Plaintiffs lack standing, each Plaintiff in

this case is an immediate family member of decedents that are entitled to recover under the wrongful

death statute. Aida Elzagally, is the surviving spouse of Msaddek Tunalli, and their children, Ayah

Tunalli, Alaa Tunalli, Abdulhammed Tunalli, Abdulrauff Tunalli, Muhammad Tunalli, and

Abduladeem Tunalli, are all entitled to damages under the statute. *See* Exh. 4. Further, Mais Ahmed

Mayouf is the birth daughter of Mufida Sasi Abu Gasiah and is entitled to damages under the

wrongful death statute. *See* Exh. 5. Last, Abdulhameed Al-Harramah is the father of the decedent,

Dr. Ayman Al-Harramah, who left no spouse or children. *See* Exh. 6. Thus, all plaintiffs in this matter

are entitled to damages under the TVPA.

### H.      Hifter Waived Any Objections to Personal Jurisdiction by Subjecting Himself to this Court.

Defendant now argues at this summary judgment stage that this case should be dismissed for

lack of personal jurisdiction. However, Defendant has waived such argument. Defendant filed a

motion to dismiss in this matter on August 20, 2020. ECF No. 34. In this Motion, Defendant fails to

mention or raise any defense concerning lack of personal jurisdiction over Defendant Hifter for lack

of residency. Instead, his motion was based on head of state immunity, failure to exhaust all remedies,

failure to state a claim, non-justiciable political question, and insufficient service of process. *Id.*.

Consistent with Rule 12(h)'s plain language and well-established authority, defendant [*687]

Soviero waived his Rule 12(b)(2) defense of lack of personal jurisdiction by failing to raise the

defense in his Rule 12 motion to dismiss. *Ins. Corp. of Ireland Ltd. v. Compagnie des Bauxites de*

*Guinee*, 456 U.S. 694, 704, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982) (noting that a defense of lack

of personal jurisdiction is waived "if not timely raised in the answer or a responsive pleading"); Fed. R. Civ. P. 12(h)(1)(A) ("A party waives any defense listed in Rule 12(b)(2)-(5) by: . . . omitting it from a motion in the circumstances described in Rule 12(g)(2) . . ."); Fed. R. Civ. P. 12(g)(2) ("Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.").

## II.    CONCLUSION

Accordingly, for the foregoing reasons, Plaintiffs respectfully ask this Court to deny Defendant's Motion for Summary Judgment on the grounds that Defendant's liability for Plaintiffs' deaths under the TVPA can be proven at trial.

Respectfully submitted,

*FMG*

Faisal Gill (VSB 93255)
Gill Law Firm
1717 Pennsylvania Ave Suite 1025
Washington DC 20006
fgill@glawoffice.com
310-418-6675
Counsel for Plaintiffs

### CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of March, 2024, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record in this case:

*FMG*

Faisal Gill (VSB 93255)
Counsel for Plaintiffs

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| AIDA ELZAGALLY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:19-cv-853 (LMB/JFA) |
| | ) | |
| KHALIFA HIFTER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| MUNA AL-SUYID, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 1:20-cv-170 (LMB/JFA) |
| v. | ) | |
| | ) | |
| KHALIFA HIFTER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ALI ABDALLA HAMZA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 1:20-cv-1038 (LMB/JFA) |
| v. | ) | |
| | ) | |
| KHALIFA HIFTER, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

For the reasons stated in open court, it is hereby

ORDERED that in civil action 1:19-cv-853 plaintiffs' Motion for Summary Judgment,

[Dkt. No. 240], be and is DENIED; defendant's Motion for Summary Judgment, [Dkt. No. 244],

be and is GRANTED IN PART for lack of general personal jurisdiction, and DENIED in all

other respects; and plaintiffs' Amended Complaint, [Dkt. No. 69], be and is DISMISSED WITH

PREJUDICE; and it is further

ORDERED that in civil action 1:20-cv-170 plaintiffs' Motion for Summary Judgment,

[Dkt. No. 270], be and is DENIED; defendant's Motion for Summary Judgment, [Dkt. No. 266],

be and is GRANTED IN PART for lack of general personal jurisdiction, and DENIED in all

other respects; and plaintiffs' Complaint, [Dkt. No. 1], be and is DISMISSED WITH

PREJUDICE; and it is further

ORDERED that in civil action 1:20-cv-1038 plaintiffs' Motion for Summary Judgment,

[Dkt. No. 224], be and is DENIED; defendant's Motion for Summary Judgment, [Dkt. No. 230],

be and is GRANTED IN PART for lack of general personal jurisdiction, and DENIED in all

other respects; and plaintiffs' Amended Complaint, [Dkt. No. 8], be and is DISMISSED WITH

PREJUDICE.

The Clerk is directed to enter judgment in favor of defendant in each of the three above-

captioned civil actions pursuant to Fed. R. Civ. P. 58; forward copies of this Order to counsel of

record; and close these civil actions.

Entered this 12th day of April, 2024.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

```
 1                  UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF VIRGINIA
 2                      ALEXANDRIA DIVISION

 3      ------------------------x
       AIDA ELZAGALLY, et al.,    :     Civil Action No.:
 4                                :     1:19-cv-853
                   Plaintiffs,    :
 5          versus                :
                                  :     Friday, April 12, 2024
 6      KHALIFA HIFTER,           :     Pages 1-15
                                  :
 7                   Defendant.   :
       ------------------------x
 8      MUNA AL-SUYID, et al.,    :     Civil Action No.:
                                  :     1:20-cv-170
 9                   Plaintiffs,  :
            versus                :
10                                :
       KHALIFA HIFTER,            :
11                                :
                     Defendant.   :
12      ------------------------x
       ALI ABDALLA HAMZA, et al., :     Civil Action No.:
13                                :     1:20-cv-1038
                   Plaintiffs,    :
14          versus                :
                                  :
15      KHALIFA HIFTER,           :
                                  :
16                   Defendant.   :
       ------------------------x

17
               The above-entitled cross motions for summary
18      judgment hearing was heard before the Honorable Leonie M.
       Brinkema, United States District Judge.  This hearing
19      commenced at 10:02 a.m.

20                       A P P E A R A N C E S:

21      FOR THE PLAINTIFFS:    MARK ZAID, ESQUIRE
        (Hamza)                MARK S. ZAID, P.C.
22                             1250 Connecticut Avenue, NW
                               Suite 700
23                             Washington, D.C.  20036
                               (202) 330-5610

24

25
                                                              1
```

```
 1                    A P P E A R A N C E S:

 2    FOR THE PLAINTIFFS:    THOMAS CRAIG, ESQUIRE
      (Hamza)                FH&H PLLC
 3                           1751 Pinnacle Drive
                             Suite 1000
 4                           Tysons, Virginia  22102
                             (703) 590-1234
 5
      FOR THE PLAINTIFFS:    FAISAL GILL, ESQUIRE
 6    (Elzagally &          GILL LAW FIRM
      al-Suyid)             1155 F Street
 7                           Suite 1050
                             Washington, D.C.  20004
 8                           (202) 570-8223

 9    FOR THE DEFENDANT:     ROBERT COX, ESQUIRE
                             MADISON BEATTY, ESQUIRE
10                           JAMES HUNDLEY, ESQUIRE
                             BRIGLIAHUNDLEY, P.C.
11                           1921 Gallows Road
                             Suite 750
12                           Tysons Corner, Virginia  22182
                             (703) 883-9103
13
              COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
14

15

16

17

18

19

20

21

22

23

24

25
                                                              2
```

1               P R O C E E D I N G S

2          THE DEPUTY CLERK:  Civil Action Numbers

3     1:19-cv-853, 1:20-cv-170 and 1:20-cv-1038.  Elzagally, et

4     al. versus Hifter; al-Suyid, et al. versus Hifter, et al;

5     and Hamza, et al. versus Hifter.

6          Counsel, if you'll please note your appearances

7     for the record.

8          MR. ZAID:  Good morning, Your Honor.  Mark Zaid

9     and Tom Craig for the Khalifa -- sorry, for the Hamza -- I'm

10    on the wrong side.  I started off -- it's early in the

11    morning, Your Honor.  The Hamza plaintiffs.

12         THE COURT:  Good morning.

13         MR. GILL:  Good morning, Your Honor.  Faisal Gill

14    for the Elzagally and the al-Suyid plaintiffs.

15         THE COURT:  Good morning.

16         MR. COX:  Good morning, Your Honor.  Bob Cox with

17    BrigliaHundley representing the defendant, Khalifa Hifter.

18    Also with me from my law firm are Madison Beatty and Jim

19    Hundley.

20         THE COURT:  All right.  Good morning.  We have

21    before us today cross motions for summary judgment.

22         Now, as you know, motions for summary judgment can

23    only be granted if the Court is satisfied that there are no

24    material issues of fact that are in dispute.  And, quite

25    frankly, nearly all of the arguments that are made in these

3

1    motions are, in my view, too factually involved that they

2    could properly be subject for summary judgment.

3            There is, however, one issue that has been in this

4    case from the time that they were first filed -- in

5    different formats, but it's always been there -- and that is

6    the issue of whether or not this Court has appropriate

7    personal jurisdiction over Mr. Hifter.

8            Now, it's very interesting that this is now the

9    time when discovery is complete and the summary judgment

10   motions were to have addressed this issue.  It certainly was

11   raised in the defendant's papers.

12           In two of the three cases -- in all three cases

13   the plaintiff -- the defendant has consistently argued that

14   the Court does not have personal jurisdiction.  In two of

15   the three cases, that argument was raised, but the basis for

16   claiming no personal jurisdiction was head of state

17   immunity.  In the third case, however, with new counsel,

18   Mr. Hifter also raised the issue that this Court does not

19   have general personal jurisdiction over the defendant.

20           This Court has, and the parties have agreed that

21   all three cases, because there's such an overlap of core

22   issues, would be basically treated as one overall case, and

23   that is reflected in the fact that, for example, the

24   depositions were taken -- of the defendant were taken by all

25   the counsel together.

4

 1          And so, in my view, general personal jurisdiction

 2   is the core issue for which the factual record does not

 3   appear to be in dispute, and it's now just a matter of the

 4   Court applying rules of law to the facts in this case.  And

 5   as I understand the facts of this case, they are the

 6   following -- and this is the time for everybody to clear up

 7   the record if the Court misunderstands it.

 8          Mr. Hifter is both a Libyan and U.S. citizen.  He

 9   was born -- he was a native of Libya, came to the United

10   States after having lived in Libya for many years, became

11   naturalized in the United States and lived here

12   approximately 23 years.

13          It is uncontested, as I understand this record,

14   that in 2011, he left the United States.  In particular, he

15   left Virginia.  And, according to the record that's before

16   this Court, even though there were different representations

17   made earlier on in the case before discovery was complete,

18   there is no evidence in this record that at any point after

19   he left in 2011 did he ever physically return to this

20   district.  If I misunderstand the record, this is the time

21   to clarify it.

22          It is also uncontested that he has never voted in

23   any election, and, at most, the only property he has

24   admitted to owning in this district is a condominium, one

25   condominium, in which he has apparently not lived since

                                                          5

1    2011.

2            There is references to another piece of property

3    which he doesn't even know where it's located, and I haven't

4    seen anywhere in the record where that other property, which

5    is described as a farm, has been identified, whether it's in

6    the Western District of Virginia, the Eastern District of

7    Virginia or where it is.

8            That would appear to be the only evidence in this

9    case of his contacts with this jurisdiction in over, what,

10   12, 13 years.  And I don't believe under the Virginia

11   long-arm statute or under the principles of due process that

12   that is sufficient evidence of purposeful and meaningful

13   contacts with this jurisdiction that would permit this Court

14   to exercise jurisdiction over this defendant.

15           Now, the defendants did raise the issue of

16   personal jurisdiction, general personal jurisdiction, in the

17   motions for summary judgment, and the only opposition that I

18   saw from the plaintiffs -- unless I've misread your

19   papers -- was an argument that that had been waived.

20           And, as I said, I don't think under the unique

21   facts of this -- of these cases, that that has been waived.

22   The mere fact that the defendant sat for a deposition, as

23   you know, that was highly forced by the Court.  He was

24   required or he would face sanctions by the Court.  That was

25   not a voluntary, in my view, agreement to be deposed, and

6

1  that is, in part, what the plaintiff -- the defendant has

2  argued.

3         So I want to hear from the plaintiff as to whether

4  there is any other evidence that you believe is properly,

5  first of all, within your summary judgment papers, that

6  would support the Court finding that general personal

7  jurisdiction is, in fact, appropriate in this case.  All

8  right.

9         MR. CRAIG:  Your Honor, I think that your

10  recitation of facts was correct, but I think it's

11  incomplete.  I think there's one another fact.

12         THE COURT:  All right.  I want to know what other

13  facts do you have, number one; and, number two, were they in

14  the summary judgment papers?

15         MR. CRAIG:  The other fact is that in the -- and

16  this was discussed in the Rule 12 motions and hearing, the

17  plaintiff entered into a contract in this jurisdiction in

18  2017 to hire a PR firm presumably to --

19         THE COURT:  Where is that evidence in the summary

20  judgment record?

21         MR. CRAIG:  Your Honor, this was --

22         THE COURT:  It's not in the record.  It's not --

23  summary judgment is you give the Court the uncontested

24  facts.

25         Now, I've been through his deposition.  I've read

                                                        7

```
 1   it twice -- two depositions.  There is not a scintilla --

 2   not a single question asked about that.

 3            MR. CRAIG:  Right.  We didn't ask, Your Honor,

 4   because they admitted in their answer that that was correct.

 5   We alleged that in paragraph 20 of our amended complaint,

 6   and, in response, they admitted that fact.  That's why we

 7   didn't ask him about it because he's already admitted it,

 8   and the defense is -- and the defendant's admission in his

 9   answer is an admissible fact.

10            THE COURT:  Anything else?

11            MR. CRAIG:  That's it.  That's all I have for you,

12   Your Honor.

13            THE COURT:  All right.  Let me hear the

14   defendant's response.

15            MR. GILL:  Your Honor, may I add one thing for the

16   Elzagally plaintiffs?

17            THE COURT:  Go ahead, Mr. Gill.  You have other

18   evidence?

19            MR. GILL:  Yes, Your Honor.  Just one.

20            In the Elzagally case at that time, Your Honor, in

21   the motion to dismiss, personal jurisdiction was

22   specifically raised with the ATS claims that we had.  And at

23   that time, Your Honor had ruled that there was not

24   sufficient contacts -- that that was the purpose of you

25   dismissing the ATS claims and the other Virginia common law
```

8

1   claims that we had brought at that time.

2          THE COURT:  Right.

3          MR. GILL:  But they did raise the personal

4   jurisdiction.  And that's why we didn't ask that question

5   because it was raised, it was dismissed.

6          And the only one thing I'd add is the TVPA --

7   under the TVPA, I mean, all cases will be like this, because

8   in order to prove under TVPA or get a claim under TVPA, it

9   has to be someone outside the U.S. jurisdiction acting under

10  color of authority.  So I think personal jurisdiction is

11  already kind of taken into account in that way by the

12  statute, but it was specifically raised in their ATS claims.

13         THE COURT:  But in terms -- the statute certainly

14  has not abrogated the concept of due process and the

15  requirements that a Court must always have not only subject

16  matter jurisdiction, but personal jurisdiction over the

17  defendant.  Like in the *Samantar* case, Mr. Samantar was

18  living in Fairfax County.  That was a very easy situation.

19  But there has to be some proper basis for the Court

20  exercising its jurisdiction.

21         MR. GILL:  And one other fact, Your Honor.  In

22  discovery earlier, we tried to get from, Field Marshal

23  Hifter, all the times that he had revisited the United

24  States to meet with U.S. government officials, CIA, because

25  there was some allegations.  And then Magistrate Judge

9

```
 1   Nachmanoff denied our request to compel on that, and one of
 2   the reasons was that Hifter had admitted that there is no
 3   dispute as to whether they were acting under color of
 4   authority and for all those reasons.  So since they admitted
 5   that, we backed off on that.  But those issues were raised
 6   at that time, and we did try to find out whether Field
 7   Marshal Hifter has revisited the United States since that
 8   time, and we were prevented from doing so.
 9           THE COURT:  You didn't appeal that decision to the
10   Court; did you?
11           MR. GILL:  Only because they admitted it, Your
12   Honor.  If they admitted -- Judge Nachmanoff asked what was
13   the reason for that, and then we stated it, and it was
14   admitted.
15           But, again, personal jurisdiction, when they
16   answered, we believe, as in other cases, personal
17   jurisdiction was agreed on by the Court and was waived and
18   moving forward.
19           THE COURT:  All right.  Let me hear the
20   plaintiffs' [sic] response.
21           MR. COX:  Thank you, Your Honor.
22           I think the Court has recognized the key issue
23   here on personal jurisdiction.  It was not argued in
24   their -- in the briefs before the Court; it was not taken --
25   they didn't elucidate any facts in the deposition indicating
```

                                                                    10

1    that Mr. Hifter had returned to the United States.  I

2    understand Mr. Gill's argument now, but that was never

3    addressed in the deposition.  There's no evidence here that

4    once he left in 2011, that Mr. Hifter returned to this

5    jurisdiction or availed himself of -- as Your Honor noted,

6    voting here --

7              THE COURT:  I mean, there's no evidence he owns a

8    bank account here.  There's no evidence that he even pays

9    taxes here.  Those are obvious questions.  If he owns a

10   condominium, one would think he is paying taxes.  But it

11   could be a spouse or he subletted it.  There were no

12   questions at all that were asked.

13             Now, the only thing that did not -- and it wasn't

14   certainly raised in the deposition.  The only thing that the

15   plaintiff has argued, which was obviously not brought to our

16   attention in the summary judgment opposition, was that you

17   did in your -- in paragraph 20 of the answer in at least one

18   of these cases admit that he hired a PR firm in Virginia.

19             Do you want to address that issue to see whether

20   that makes any difference?

21             MR. COX:  Your Honor, I'll have to admit that I

22   was not involved in the case at that time as counsel.  I

23   don't know the specifics about him hiring a PR firm within

24   the Commonwealth.  So I don't -- I don't know.  I mean,

25   prior counsel seemed to concede that issue, but it's still,

                                                         11

1    in our opinion, insufficient contacts with this

2    jurisdiction, the fact that he may have had discussions or

3    talked about hiring a -- or had hired a PR firm.

4              So it was not, you know -- also I will note it's

5    not argued in their papers, and I think it's a little bit

6    late at this point, Your Honor, to be raising this.

7              As to Mr. Gill's color of law argument, that's not

8    related to jurisdiction; that's related to the command

9    responsibility issue and whether Mr. Hifter acted under

10   color of law in decisions he made in Libya, not in the

11   United States.

12             THE COURT:  Well, there are multiple questions

13   which could easily have been asked during the deposition

14   that would have made it clear one way or the other whether

15   there was a proper basis for the Court to exercise general

16   personal jurisdiction over the defendant.  But I'm finding

17   under the facts that are before this Court that there is

18   insufficient facts to support that, and so I'm going to be

19   granting the motion for summary judgment solely on that

20   issue.

21             All the other issues that you all have raised are

22   too intermixed with fact for the Court to be able to grant

23   summary judgment.  But the facts, in my view, are not in

24   dispute, and they are, as a matter of law in my view,

25   insufficient to satisfy the Virginia long-arm statute, as

                                                        12

 1  well as Constitutional principles of due process, and, for

 2  those reasons, I'm granting defendant's motions for summary

 3  judgment on that issue, and these three cases will be

 4  dismissed.  Thank you.

 5           MR. CRAIG:  Your Honor, may I be heard briefly?

 6           THE COURT:  Yes.

 7           MR. CRAIG:  Your Honor, as I think the Court is

 8  aware, under the TVPA, there's a somewhat unique provision

 9  about personal jurisdiction that says that the -- because it

10  is often difficult to get personal jurisdiction over foreign

11  actors, that the statute of limitations on the TVPA is

12  expressly tolled until such time as personal jurisdiction

13  could be had over such a defendant.

14           So I believe that because of that provision, to

15  the extent the Court dismisses this case on jurisdictional,

16  it should be without prejudice to -- so if the time in the

17  future comes when Mr. Hifter is subject to jurisdiction of a

18  U.S. court, this case could be rebrought.

19           THE COURT:  Do you want to respond to that?

20           MR. COX:  If it's all right, Your Honor,

21  Ms. Beatty is going to respond.

22           THE COURT:  Yes.  Ms. Beatty.

23           MS. BEATTY:  Your Honor, these cases have been

24  pending for over four years, and they've had over four years

25  to disclose discovery, to work on these issues, to establish

                                                            13

1  personal jurisdiction and to go through all of the evidence

2  of the simple questions that it would take at a deposition

3  to even establish jurisdiction.  Therefore, we would contend

4  that this case be dismissed with prejudice.

5          The difference in the TVPA extraterritorial

6  personal jurisdiction application doesn't change the fact

7  that they've exhausted their case for over four years and

8  exhausted the Court's resources and just wasted judicial

9  economy, Your Honor.

10          THE COURT:  I think under the facts of this

11  case -- it's been around so long, the issue was clearly

12  raised about jurisdiction, and certainly in the third case

13  when general personal jurisdiction specifically was raised,

14  that with prejudice is appropriate.  It would be a waste of

15  judicial resources to have to go through this all over

16  again, especially with a case where, having looked at the

17  rest of the issues you all raised in your summary judgment

18  motions, they are so fact-specific, and the factual issues

19  are so complex, I'm going to do it with prejudice.  And of

20  course the plaintiffs have a right to appeal.  All right.

21          MS. BEATTY:  Thank you, Your Honor.

22          THE COURT:  Thank you.  We'll call the next case.

23          (Proceedings adjourned at 10:18 a.m.)

24

25

14

1        ----------------------------------

2    I certify that the foregoing is a true and accurate

3    transcription of my stenographic notes.

4

5                                 _Stephanie Austin_

6                           Stephanie M. Austin, RPR, CRR

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                              15

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |  |  |
|---|---|---|---|
| AIDA ELZAGALLY, et al. | ) | | |
| | ) | | |
| Plaintiffs, | ) | | |
| | ) | | |
| v. | ) | No. | 1:19 cv 0853 (LMB/JFA) |
| | ) | | |
| HALIFA HIFTER | ) | | |
| | ) | | |
| Defendant, | ) | | |

## NOTICE OF APPEAL

Notice is hereby given that Plaintiffs Aida Elzagally, Abdulhameed Tunalli, Ayah Tunalli, Alaa Tunalli, Abdulrrauf Tunalli, Muhammad Tunalli, Abduladeem Tunalli, Mais Ahmed Mayouf and Abdulhameed Al-Haramah, hereby appeal to the United States Court of Appeals for the Fourth Circuit from the final order [Dkt. No. #280] entered in this action on the 12th of April 2024 granting the Defendant's Motion for Summary Judgement.

Respectfully submitted,

*FMG*

May 7, 2024

Faisal Gill (VSB 93255)
Gill Law Firm
1717 Pennsylvania Ave Suite 1025
Washington DC 20006
fgill@glawoffice.com
310-418-6675

Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of May, 2024, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to counsel of record in this case:

*FMG*
_____

Faisal Gill (VSB 93255)
Gill Law Firm
1717 Pennsylvania Ave Suite 1025
Washington DC 20006
fgill@glawoffice.com
310-418-6675

Counsel for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | |
|---|---|
| **AIDA ELZAGALLY, et al.,** | : |
| | : |
| **Plaintiffs,** | : |
| | : |
| v. | :   **Civil Action No.: 1:19-cv-0853 (LMB/JFA)** |
| | : |
| **KHALIFA HIFTER** | : |
| | : |
| **Defendant.** | : |
| _____ | : |

### DEFENDANT'S NOTICE OF APPEAL

Notice is hereby given that Defendant Khalifa Hifter ("Mr. Hifter") hereby appeals to the United States Court of Appeals for the Fourth Circuit from the final order [Dkt. No. 280] entered in this action on April 12, 2024 that portion of the final order denying Defendant's Motion for Summary Judgment in part.

Dated: May 10, 2024

Respectfully submitted,

KHALIFA HIFTER

By Counsel

/s/ Robert H. Cox
Robert H. Cox (VSB No. 33118)
Madison A. Beatty (VSB No. 98099)
BRIGLIA HUNDLEY, P.C.
1921 Gallows Road, Suite 750
Tysons Corner, Virginia 22182
(703) 883-0880 [telephone]
(703) 883-0899 [facsimile]
rcox@brigliahundley.com
mbeatty@brigliahundley.com

1

## <u>CERTIFICATE OF SERVICE</u>

      I certify that on May 10, 2024, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

<u>/s/ Robert H. Cox</u>        

Robert H. Cox (VSB No. 33118)